SHORT RECORD
NO. 23-8005
FILED 03/07/2023

**No. _____**

*In the*

# United States Court of Appeals

*for the*

# Seventh Circuit

———————————————

JOE EAGLE, MICHAEL KEYS, JAMES ZOLLICOFFER, *and* EVAN FRANKLIN,
*on behalf of themselves and other similarly situated individuals,*

*Plaintiffs-Respondents,*

– v. –

VEE PAK, INC., VEE PAK, LLC d/b/a VOYANT BEAUTY, *and*
STAFFING NETWORK HOLDINGS, LLC,

*Defendants-Petitioners.*

———————————————

On petition for permission to appeal from an order of the
United States District Court for the Northern District of Illinois
Case No. 1:12-cv-9672
Judge John J. Tharp, Jr., presiding

———————————————

## RULE 23(f) PETITION FOR PERMISSION TO APPEAL

———————————————

ELLIOT S. RICHARDSON
MICHELE D. DOUGHERTY
  *Korey Richardson LLP*
  *120 West Madison Street*
  *Suite 520*
  *Chicago, IL 60602*
  *(312) 372-7075*

*Counsel for*
*Staffing Network Holdings, LLC*

MICHAEL B. KIMBERLY
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

JOSEPH K. MULHERIN
  *McDermott Will & Emery LLP*
  *444 West Lake Street*
  *Chicago, IL 60606*
  *(312) 372-2000*

*Counsel for Vee Pak, Inc. and*
*Vee Pak, LLC*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, undersigned counsel for appellant certifies as follows:

1. The full name of every party that the attorney represents in the case:

   <u>Vee Pak, Inc.; Vee Pak, LLC d/b/a Voyant Beauty</u>

2. The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

   <u>McDermott Will & Emery LLP</u>

3. If the party is a corporation:

   i. Identify all its parent corporations:

      <u>VPI Intermediate Holdings Company, LLC; Voyant Beauty, LLC.</u>

   ii. List any publicly held company that owns 10% or more of the party's stock:

      <u>None.</u>

4. Provide information required by FRAP 26.1(b):

   <u>Not applicable.</u>

5. Provide Debtor information required by FRAP 26.1(c) 1 & 2:

   <u>Not applicable.</u>


<u>March 7, 2023</u>                    */s/ Michael B. Kimberly*

<u>March 7, 2023</u>                    */s/ Joseph K. Mulherin*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, undersigned counsel for appellant certifies as follows:

1. The full name of every party that the attorney represents in the case:

   Staffing Network Holdings, LLC

2. The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

   Korey Richardson LLP

3. If the party is a corporation:

   i.   Identify all its parent corporations:

   WJI Industries, Inc.

   ii.  List any publicly held company that owns 10% or more of the party's stock:

   None.

4. Provide information required by FRAP 26.1(b):

   Not applicable.

5. Provide Debtor information required by FRAP 26.1(c) 1 & 2:

   Not applicable.


March 7, 2023                    /s/ *Elliot S. Richardson*

March 7, 2023                    /s/ *Michele D. Dougherty*

# TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Introduction and Summary ...................................................... 1

Question Presented ................................................................. 3

Statement .............................................................................. 4

    A.  Factual background ..................................................... 4

    B.  Procedural background .............................................. 5

Reasons for Granting an Immediate Appeal .......................... 7

    A.  Petitioners are likely to prevail if an appeal is allowed .................................... 8

        1.  The district court erred in applying the *Teamsters* framework ................. 8

        2.  The Fifth and Eleventh Circuits and other district courts within this Circuit have held that class certification is improper in pattern-or-practice discrimination cases like this one ........................... 11

    B.  This is an ideal opportunity to resolve an important question of class action law that is otherwise likely to evade review .............................. 15

Conclusion ......................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum*,
    151 F.3d 402 (5th Cir. 1998) ................................. 13

*Andrews v. Chevy Chase Bank*,
    545 F.3d 570 (7th Cir. 2008) ................................. 12

*Blair v. Equifax Check Serv., Inc.*,
    181 F.3d 832 (7th Cir. 1999) ......................... 8, 15-16

*Bolden v. Walsh Group*,
    282 F.R.D. 169 (N.D. Ill. 2012) ........................... 13

*Chen-Oster v. Goldman, Sachs & Co.*,
    325 F.R.D. 55 (S.D.N.Y. 2018) ............................. 9

*Comcast v. National Association of African American-Owned Media*,
    140 S. Ct. 1009 (2020) ....................................... *passim*

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
    662 F.3d 913 (7th Cir. 2011) ............................... 17

**Cases—continued**

*Driver v. AppleIllinois, LLC,*
739 F.3d 1073 (7th Cir. 2014) ................................................................. 8

*Espenscheid v. DirectSat USA, LLC,*
705 F.3d 770 (7th Cir. 2013) ........................................................... 14-15

*International Brotherhood of Teamsters v. United States,*
431 U.S. 324 (1977) ...................................................................*passim*

*Jackson v. Motel 6 Multipurpose,*
130 F.3d 999 (11th Cir. 1997) ............................................................. 13

*July v. Board of School Commissioners,*
291 F.R.D. 653 (S.D. Ala. 2013) ........................................................ 14

*Lemon v. International Union of Operating Engineers,*
216 F.3d 577 (7th Cir. 2000) ......................................................... 1, 13

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
672 F.3d 482 (7th Cir. 2012) ..................................................3, 7, 16-17

*Messner v. Northshore University HealthSystem,*
669 F.3d 802 (7th Cir. 2012) ..........................................................7, 14

*Newton v. Merrill Lynch,*
259 F.3d 154 (3d Cir. 2001) ................................................................. 16

*Puffer v. Allstate Insurance,*
255 F.R.D. 450 (N.D. Ill. 2009) ......................................................11-13

*Radmanovich v. Combined Insurance Companies of America,*
216 F.R.D. 424 (N.D. Ill. 2003) .......................................................... 13

*Matter of Rhone-Poulenc Rorer,*
51 F.3d 1293 (7th Cir. 1995) .......................................................... 16-17

*Rutstein v. Avis Rent-A-Car System,*
211 F.3d 1228 (11th Cir. 2000) ....................................................... 12-13

*Shady Grove Orthopedic Associates v. Allstate Insurance,*
559 U.S. 393 (2010) ........................................................................11

*Szabo v. Bridgeport Machines,*
249 F.3d 672 (7th Cir. 2001) ................................................................11

*Van v. Ford Motor Co.,*
332 F.R.D. 249 (N.D. Ill. 2019) .......................................................... 15

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ..................................................................... 6, 10

iv

## INTRODUCTION AND SUMMARY

This petition for interlocutory appeal concerns the certification of a sprawling class of at least 13,500 members in an employment-discrimination case arising under Section 1981 of the Civil Rights Act of 1866.

The underlying merits involve allegations that petitioners engaged in a "pattern or practice" of racial discrimination in hiring. Due to the cyclical demand for its services, petitioner Vee Pak utilizes staffing agencies to provide temporary workers at its manufacturing facilities. Plaintiffs allege that it encouraged these staffing agencies, including petitioner Staffing Network, to avoid referring black workers. Whatever the merit to that claim (there is none), individual issues permeate nearly every element of it—questions including whether there was an opening at Vee Pak on the days in which each class member was looking for work, whether they were qualified and willing to take the job in light of its description or location, and whether or to what extent they suffered damages. *See Lemon v. International Union of Operating Engineers*, 216 F.3d 577 (7th Cir. 2000) (liability in pattern-or-practice discrimination cases "depends on an individualized analysis of each class member's circumstances," requiring separate proceedings "to resolve the disparate merits of each individual's case").

In certifying a Rule 23(b)(3) damages class nonetheless, the district court relied principally on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). There, the Supreme Court held that pattern-or-practice claims under Title VII of the Civil Rights Act of 1964, when proceeding on a groupwide basis, should advance in two stages. At the first stage, the factfinder determines whether "unlawful discrimination has been a regular procedure or policy followed by an employer." *Id.* at 360. If the plaintiff prevails at the first stage, the factfinder may presume that the

pattern or practice caused the plaintiff injury and determine at the second stage the "appropriate remedy" as to each individual. *Id.* at 361.

The linchpin of this two-stage procedure is the shifting of the burden at the second stage. According to *Teamsters*, the "proof of the pattern or practice [established in the first phase] supports an inference" of injury and causation, so that "the burden then rests on the employer to demonstrate that [any] individual applicant was denied an employment opportunity for lawful reasons." 431 U.S. at 362. Adopting that approach below, the district court deemed the individualized questions of injury and causation to be presumptively resolved at stage one of the proceedings by common evidence of a pattern or practice alone.

The problems with this approach are many, but perhaps the clearest is that the burden-shifting rule that underlies the bifurcated *Teamsters* class-action framework does not apply to Section 1981 claims. That conclusion is not reasonably debatable. In *Comcast v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), the Supreme Court rejected the notion that a Section 1981 plaintiff's success in proving a pattern or practice permits a court to take "the burden of proving but-for causation from the plaintiff and hand[] it to the defendant as an affirmative defense," as might be permitted in a Title VII case. *Id.* at 1017.

Against this backdrop, this case cleanly presents the question of whether the *Teamsters* bifurcated class-certification framework is an appropriate fit to pattern-or-practice claims arising exclusively under Section 1981 after *Comcast*.

It plainly is not. But the court below disagreed, rejecting petitioners' argument that *Comcast* "foreclose[s] application [of the] *Teamsters* framework" in this case. Order 30. It thus certified a Rule 23(b)(3) class under *Teamsters*, reserving the first

2

stage "for class-wide resolution of liability issues" (Order 31) and the second stage for defendants to rebut the "prima facie showing that [each] class member was not hired due to race" (Order 43). Having relied on this model, including its burden-shifting rule, the district court declined to address manageability or the predominance of individual inquiries into injury and causation, which undoubtedly foreclose class-wide treatment in cases like this one—as numerous other courts have held.

The district court's certification order is a manifest abuse of discretion. Its application of the *Teamsters* framework spurns both *Comcast* and, by enlarging plaintiffs' substantive rights, the Rules Enabling Act. Beyond that, proper resolution of the question presented is critically important to judicial management of pattern-or-practice discrimination claims, which are routinely brought as class actions and are typically very burdensome. At the same time, the question is likely to evade review unless an immediate appeal is permitted, given "the astronomical damages potential" and "enormous pressure on the defendant to settle." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 484 (7th Cir. 2012). The petition accordingly should be granted.

## QUESTION PRESENTED

In a Section 1981 pattern-or-practice case, may the district court certify a class using the two-stage *Teamsters* framework, thus purporting to solve the problems of manageability and predominance by requiring the defendants, at stage two, to rebut a "prima facie showing" on common evidence, at stage one, "that [each] class member was not hired due to race" (Order 43)?

**STATEMENT**

A.    **Factual background**

Petitioner Vee Pak manufactures personal care and drug products at two facilities in Chicago's far western suburbs. Dkt. 572, at 3. It operates as many as 26 manufacturing lines at a time, each customized to the unique specifications of any given product and involving a complex series of stages. *Id*.

Vee Pak utilizes staffing agencies to provide temporary workers at its facilities, including petitioner Staffing Network. Plaintiffs allege that Vee Pak encouraged the staffing agencies to avoid referring black workers. They present statistical models that, they assert, show the number of black workers engaged at Vee Pak's facilities from those agencies was lower than what is statistically predicted. *See* Order 12.

During the relevant period, Vee Pak ordered the number of employees it needed immediately prior to the corresponding shifts. Dkt. 572, at 4. It typically asked the staffing agencies to send a number of workers who were ambidextrous, quick with their hands, and could work in tight areas on the line; and a number of other workers who were charged with moving large cases of product, each of which weighed up to fifty pounds. *Id*. at 4-5. Many of these temporary assignments expressly required experienced workers who could operate machinery and other complex tasks efficiently and without instruction. *Id*. at 5.

A temporary worker's registration with a staffing company, without more, does not demonstrate that he or she was interested in, qualified for, or available for an assignment at Vee Pak. Dkt. 572, at 6. In addition, applicants sometimes failed to return the staffing companies' calls, declined to accept assignments, or failed to appear for assigned jobs for multifarious, individualized reasons. *Id*. For instance, Vee Pak's

4

jobs were fast-paced, physically exhausting, and could involve shifts at undesirable hours. *Id*. Location also was a bar for many workers: The worksites were based in the far western suburbs, had limited parking, and were virtually inaccessible by public transportation. *Id*. at 7.

### B.    Procedural background

Plaintiffs filed suit in 2012, alleging that Vee Pak and three of its staffing companies deliberately limited the referral of black temporary workers to Vee Pak. Plaintiffs settled with two of the staffing companies, leaving as defendants the two Vee Pak entities and Staffing Network (petitioners before this Court). Plaintiffs' remaining claims are brought exclusively under 42 U.S.C. § 1981. *See* Order 12-13.

**1.** After nearly 10 years of litigation, plaintiffs moved to certify a damages class under Rule 23(b)(3). The proposed class comprises at least 13,500 black workers who sought but were denied referrals from the three staffing agencies for jobs at Vee Pak between 2011 and 2015. *See* Dkt. 544-1.[1]

In defending the supposed manageability and superiority of the class device, plaintiffs invoked the *Teamsters* two-stage "paradigm" and explained that "[e]ach class member will rely on the pattern or practice method of establishing liability [at the first stage] to create a rebuttable presumption that he or she is entitled to individualized relief pursuant to the *Teamsters* method of proof [at the second stage]." *Id*. at 39-42 & n.195. Thus, according to plaintiffs, a two-stage damages class action is man-

---

[1]    Plaintiffs did not seek certification of a Rule 23(b)(2) class for injunctive or declaratory relief. Although they asserted in conclusory fashion that the district court was permitted "in the alternative" to certify a Rule 23(c)(4) issue class to resolve "the liability issue" (Dkt. 544-1, at 44), they did not describe the contours of any issue class or devote any argument to defending a Rule 23(c)(4) approach in this case.

ageable because, "[i]f the plaintiff class proves class-wide liability" at the first stage, "the 'burden of proof will shift to the company'" at the second stage to rebut causation and injury. *Id*. at 41 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (Title VII case)).

Petitioners argued in opposition that "the Title VII burden-shifting mechanism from *Teamsters* [does not] permit class treatment" in this case because "Section 1981 forbids following *Teamsters*' burden-shifting" rule in Section 1981 cases. Dkt. 572, at 2 (citing *Comcast*); Dkt. 565, at 19 (similar). In the absence of the burden-shifting framework, "each class member would need to prove there was actually a job opening on the days in which the laborer was looking for work, the class member was not working somewhere else or was otherwise unavailable, and the class member actually suffered damages." *Id*. The guarantee of "thousands of mini-trials" in which the plaintiffs bear the burden of presenting individualized evidence, petitioners argued, defeats the predominance requirement and renders class treatment unmanageable. *Id*. at 2, 16-29; *see also* Dkt. 565, at 19-20, 42-46.

**2.** The district court granted class certification under Rule 23(b)(3), relying on the *Teamsters* two-stage framework for Title VII claims.

The court explained that it was "skeptical that *Comcast* . . . reaches so far as to foreclose application [of the] *Teamsters* framework to establish defendants' liability" in Section 1981 cases. Order 30. Although it took the puzzling view that "the Court need not decide whether *Comcast* forecloses a bifurcated approach to establishing but-for causation," it immediately explained that class certification works only in light of the burden-shifting inherent in the *Teamsters* model: "[I]f a jury finds [in stage one] that (1) defendants operated under a discriminatory policy and (2) every worker was

6

equally qualified for a position at Vee Pak," then "Defendants' liability [will have been] resolved in one centralized proceeding." Order 31. That being so, the Court went on, "the same evidence" presented at stage one "will suffice for each [class] member to make a prima facie showing that the class member was not hired due to race," obviating their individualized burdens to establish causation at stage two. Order 43 (quotation marks omitted) (quoting *Messner v. Northshore University Health-System*, 669 F.3d 802, 815 (7th Cir. 2012) (Clayton Act case)).

Having applied the *Teamsters* burden-shifting rule, the district court accepted plaintiffs' invitation to skip a case-specific evaluation of whether individual issues will predominate on the elements of injury, causation, and damages; and whether trial will be manageable. The court stated without explanation that it was "hopeful that the parties will be able to finagle a method of optimizing the damages inquiry" and "expect[ed] the damages determinations to be tame enough to allow for certification." Order 45-46. But it did not explain or justify that "hope." Instead, it observed that "even if the Court must conduct an individualized damages inquiry as to every class member, 'at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful'" in light of the *Teamsters* model. Order 46 (quoting *McReynolds*, 672 F.3d at 491).

### REASONS FOR GRANTING AN IMMEDIATE APPEAL

This is precisely the kind of case for which Rule 23(f) was adopted. For starters, petitioners are highly likely to prevail if an appeal is allowed: The district court grounded its class certification decision on the *Teamsters* framework, which *Comcast* forecloses for Section 1981 claims like this. Moreover, the case implicates an important and novel legal question, resolution of which "would clarify class action law"

for pattern-or-practice cases moving forward. *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) (citing *Blair v. Equifax Check Serv., Inc.*, 181 F.3d 832, 833 (7th Cir. 1999)). Finally, the costs of continuing litigation and the prospect of substantial liability make the pressure to settle so great that the availability of later review is doubtful. *Blair*, 181 F.3d at 834-35. The Court accordingly should grant the petition and set the case for briefing and argument.

### A.    Petitioners are likely to prevail if an appeal is allowed

#### 1.    *The district court erred in applying the* Teamsters *framework*

The district court relied principally on *Teamsters* to justify its class certification decision. That case adopted a bifurcated class framework that calls for shifting the burden to the defendant at the second phase if the plaintiff makes a prima facie case of liability in the first phase. First, "[a]t the initial, 'liability' stage of a pattern-or-practice suit," the plaintiff "is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy," and instead must only "establish a prima facie case that such a policy existed." 431 U.S. at 360. Second, if the plaintiff succeeds at the first stage in a Title VII case, the second stage is simplified: "The proof of the pattern or practice [in stage one] supports an inference [in stage two] that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy," and the plaintiff therefore "need only show that [he] unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id.* at 362. After that, "the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons" not connected with the pattern or practice of discrimination. *Id.*

8

This burden-shifting framework was integral to the district court's decision to certify plaintiffs' proposed class in this case. In essence, it deemed the individualized questions of injury and causation to be presumptively resolved at stage one of the proceedings by common evidence of a pattern or practice alone.

The court was clear on this point. "Under [the *Teamsters*] approach," it explained, "a class of plaintiffs alleging a pattern or practice of discrimination may submit for class-wide resolution," at stage one, "the question of liability," soup to nuts. Order 29. And the only way for plaintiffs to resolve "liability" at phase one is for them to *prove* a pattern or practice and, in turn, to *presume* injury and causation, leaving only the question of "the scope of plaintiffs' damages" for "individualized proceedings" at stage two. *Id.* Consistent with this theme, the district court went on to explain that class certification was appropriate in this case because "the same evidence" presented at stage one "will suffice for each [class] member to make a prima facie showing that the class member was not hired due to race," eliminating the need for each plaintiff to come forward with individualized evidence of injury and causation. Order 43.[2] As for damages, the Court simply "hope[d]" that "the damages determinations to be tame enough" and certified the class without actually resolving whether or not they would be. Order 45-46.

The district court's certification decision is insupportable. The Supreme Court held emphatically in *Comcast* that the burden-shifting rule underlying the district

---

[2]   Other courts similarly have cited the burden-shifting framework, when it applies, as essential to avoiding individualized proofs in pattern-or-practice cases. *E.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 82 (S.D.N.Y. 2018) (in light of burden-shifting under Title VII, causation and injury become "question[s] of generalized proof" related to the defendant's practices).

court's certification order does not apply to Section 1981 claims. Every Section 1981 "plaintiff bears the burden of showing that race was a but-for cause of its injury" through all stages of the case, meaning that they "must plausibly allege [it] at the outset of a lawsuit" and "prove [it at] trial" if the case proceeds that far. *Id.* at 1014. In contrast, the Court observed, "a Title VII plaintiff doesn't have to prove but-for causation" once he has shown "that discrimination was a motivating factor in the defendant's decision" because, at that point, Title VII takes "the burden of proving but-for causation from the plaintiff and hand[s] it to the defendant as an affirmative defense." *Id.* at 1017. But the Court rejected application of any such "burden-shifting framework" in Section 1981 cases, where the plaintiff-borne burden "remain[s] constant through the life of [the] lawsuit." *Id.* at 1014.

The certification order below cannot be squared with this holding. The district court inexplicably expressed "skeptic[ism]" that *Comcast* "foreclose[s] application [of the] *Teamsters* framework to establish defendants' liability" (Order 30) and concluded that class certification was appropriate because, in phase two, it will fall to petitioners to rebut the prima facie showing of causation in phase one with generalized proof (Order 43). But that is just what *Comcast* forecloses.

Moreover, by giving *Comcast* the brush-off, the certification order violates the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). Under that basic rule, "a class cannot be certified on the premise that" plaintiffs proceeding as a class are entitled to substantive benefits unavailable to individual litigants. *Id.* Yet to allow plaintiffs to avail themselves of a burden-shifting rule that is unavailable to individual 1981 plaintiffs would be to use the class-action

device to "alter[] the rules of decision by which the court will adjudicate [the parties'] rights." *Shady Grove Orthopedic Associates v. Allstate Insurance*, 559 U.S. 393, 407 (2010) (cleaned up). That is plainly impermissible.

> ### 2.     The Fifth and Eleventh Circuits and other district courts within this Circuit have held that class certification is improper in pattern-or-practice discrimination cases like this one

Having applied the *Teamsters* burden-shifting rule to relieve plaintiffs prospectively of their obligation to come forward with individualized showings on injury and causation, the district court declined to evaluate the manageability and predominance problems that doom plaintiffs' bid for class treatment. This and other courts, correctly considering these factors, have denied (or affirmed the denial) of class certification in like circumstances.

**a.** To meet the prerequisites for class certification under Rule 23(b)(3), a plaintiff must demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Szabo v. Bridgeport Machines*, 249 F.3d 672, 676 (7th Cir. 2001). That requirement will rarely be met in complex employment-discrimination cases like this, where "an individualized inquiry into each putative plaintiff's circumstances would be necessary to determine whether employment actions taken toward a particular employee were based on [race] or instead on legitimate, nondiscriminatory reasons." *Puffer v. Allstate Insurance*, 255 F.R.D. 450, 471 (N.D. Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012). Moreover, even where liability is established, "the amount of damages will vary significantly among putative class members." *Id.*

That is the case here: Even if a pattern or practice were successfully established on a class-wide basis, each class member still would need to prove *injury* (that there

was a job opening on the days he was looking for work and that he would have accepted a position at Vee Pak if it had been offered) and *causation* (that the reason he was not offered a position at Vee Pak was discrimination, and not lawful reasons like lack of qualifications). Assuming a given class member could make these individual showings, moreover, each would then have to establish the individual amount of damages, including whether and to what extent damages were mitigated. In short, extensive individualized proceedings would be necessary for each and every class member. *Id.* And "[i]f the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). In this case, they plainly would not.

**b.** It is no answer to say that class certification is appropriate because the question of petitioners' alleged pattern or practice of discrimination is common to all class members. As the Eleventh Circuit has held, a "single common issue" concerning an alleged "practice or policy of discrimination" cannot by itself "predominate[] over all the legal and factual questions affecting only individual members of the class." *Rutstein v. Avis Rent-A-Car System*, 211 F.3d 1228, 1234 (11th Cir. 2000). "Whether [the defendant] maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class." *Id.* at 1235. On the contrary, a litany of "clearly case-specific" questions "all have to be addressed in one way or another in order for each plaintiff to demonstrate" entitlement to relief. *Id.* The notion that liability can be settled conclusively with common proof is thus fantasy. *Id.*

The Fifth Circuit has agreed. In a pattern-or-practice case, the single question of whether there were "[company]-wide racially discriminatory practices or policies" does not predominate over the "distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination." *Allison v. Citgo Petroleum*, 151 F.3d 402, 420 (5th Cir. 1998) (quoting *Jackson v. Motel 6 Multipurpose*, 130 F.3d 999, 1006 (11th Cir. 1997)). To argue otherwise "fails to appreciate the overwhelming number of individual-specific issues in this case" related to injury, causation, and damages. *Id*. Notably, *Lemon* cited *Allison* favorably to support the proposition that "each individual plaintiff pursuing damages claims" in a pattern-or-practice case must separately establish that the defendant's alleged "discrimination caused her personal injury," after which she must "show the magnitude of injury to determine compensatory damages" in individualized proceedings. 216 F.3d at 581.

Other district courts within this Circuit have reached the same conclusion, in conflict with the decision below, on facts logically indistinguishable from those here: "Regardless of whether a pattern or practice of discrimination could be established" with common proof, thousands of "individual determinations . . . with regard to [the defendant's] liability to each potential class member . . . would render [such a] case totally unmanageable as a class action." *Radmanovich v. Combined Insurance Companies of America*, 216 F.R.D. 424, 439 (N.D. Ill. 2003) (Title VII case); *see also, e.g.*, *Bolden v. Walsh Group*, 282 F.R.D. 169, 178-179 (N.D. Ill. 2012) (denying class certification in a Title VII and Section 1981 case "where the difficulties of manageability and lack of efficiency overwhelmed any potential common issue" concerning company policy), *rev'd in part on a different issue*, 688 F.3d 893 (7th Cir. 2012); *Puffer*, 255 F.R.D. at 470 (denying class certification in pattern-or-practice discrimi-

nation case under Title VII for similar reasons). This Court should not tolerate such disparate outcomes on so important an issue as class certification.

    **c.**  Having applied the *Teamsters* framework, the district court broke from these other courts. It deemed injury and causation to be presumptively resolved at stage one of the proceedings by common evidence of a pattern or practice alone, and it therefore did not even consider the impact of plaintiff-specific inquiries into these other elements of liability. We have shown that the district court was wrong on this score, and that injury and causation must be proved plaintiff-by-plaintiff in individualized proceedings, making class treatment improper. Indeed, we submit that is so even under the *Teamsters* framework, apart from *Comcast. See July v. Board of School Commissioners*, 291 F.R.D. 653, 660 (S.D. Ala. 2013) (holding that injury and causation cannot be presumptively resolved under *Teamsters*).

    That said, the district court did acknowledge that stage two of its contemplated class proceeding would be marked by "individualized damages inquiries." Order 44-45. It disregarded that concern, too, reflexively citing *Messner* for the proposition that "the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." 669 F.3d at 815. But if that is the case, it is only where each element of liability actually can be resolved with common proof, leaving *only* damages for later proceedings—as it can be sometimes in antitrust cases like *Messner*, but not in cases like this one.

    And even then "the district court must carefully explore the possible ways of overcoming problems in calculating individual damages." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013). If there is no such way to overcome the problem of individualized damages trials—because, say, "there are [thousands] of

class members each harmed to a different extent (and many not harmed at all)"—then class certification must be denied. *Id.*; *e.g.*, *Van v. Ford Motor Co.*, 332 F.R.D. 249, 289-290 (N.D. Ill. 2019) (denying certification in a Title VII case where "hundreds (if not thousands) of individual hearings would be necessary" to resolve "the proper amount of damages"). It certainly does not suffice to disregard all consideration of individualized damages trials based on the speculative and unexplained "hope" that they will be manageable, as did the district court in this case. *See* Order 45.

### B.    This is an ideal opportunity to resolve an important question of class action law that is otherwise likely to evade review

Errors of this magnitude, concerning pure issues of law, are sufficient in their own right to warrant immediate appellate intervention under Rule 23(f). An interlocutory appeal is all the more warranted because proper resolution of the question presented is a matter of great practical importance in this case and more broadly, and the Court may not have another opportunity to consider it.

**1.** To begin with, this Court's authoritative resolution of the question presented is crucially important to judicial management of pattern-or-practice claims in this circuit moving forward. *See Blair*, 181 F.3d at 835 (Rule 23(f) review is appropriate where "an appeal may facilitate the development of the law").

Such claims are remarkably common, and plaintiffs frequently seek class certification—as the many citations throughout this petition show. The question of whether and how such cases can proceed under the *Teamsters* burden-shifting rubric has substantial implications for the frequency with which they will be brought and certified in the future. If, as the district court below concluded, plaintiffs may invoke the Rule 23(b)(3) class device to shift the burden to defendants to disprove injury and

causation in 1981 suits, the doors will fly open for specious lawsuits seeking "black-mail settlements" once certification is granted, as it often will be. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1298 (7th Cir. 1995). The Court should not countenance such an outcome.

**2.** Interlocutory resolution by this Court of the question presented is also critically important to an orderly and efficient resolution of this particular case. As the Court recognized in another Rule 23(f) appeal, "because class actions are cumbersome and protracted, an early appellate decision on whether a suit can be maintained as a class action can speed the way to termination of the litigation" by relatively more efficient means. *McReynolds*, 672 F.3d at 484 (citing *Blair*, 181 F.3d at 834-835; *Newton v. Merrill Lynch*, 259 F.3d 154, 162-165 (3d Cir. 2001)).

That is assuredly the scenario here. This litigation has now been pending for longer than a decade. And yet the question of how the district court intends to resolve the claims of at least 13,500 class members remains wholly unknown—all we are told is that the judge "expects the damages determinations to be tame enough to allow" for class treatment (Order 46), albeit without a word of explanation concerning why or how. If the case does not settle first, the parties and district court are thus likely to encounter years more burdensome, uncertain litigation—culminating in the head-spinning prospect of 13,500 or more individual trials.

But as we noted at the outset, it is questionable that the case will proceed that far at all, and thus equally questionable that the Court will have an opportunity to review the class certification order absent an immediate appeal. *See Blair*, 181 F.3d at 835 ("[T]he greater the likelihood that it will escape effective disposition at the end of the case, the more appropriate is an appeal under Rule 23(f)."). Rule 23(f) was

adopted in recognition that "the astronomical damages potential of many class action suits" will often "place enormous pressure on the defendant to settle." *McReynolds*, 672 F.3d at 484. This case is no exception—the class certified by the district court is enormous, multiplying petitioners' potential liability by more than *three thousand* times. In truth, just the prospect of *litigating* that many individual claims at stage two may be prohibitively daunting. Regardless, petitioners probably will not "roll the dice" because they "will be under intense pressure to settle." *Rhone-Poulenc Rorer*, 51 F.3d at 1298.

The Court previously have found a "prime occasion for the use of Rule 23(f)" where, as here, the size of the class would risk pressuring the defendant to settle, "prevent[ing] [appellate] resolution of the underlying issues." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011). The pressure here is heightened yet further by the lack of clarity concerning the shape of the second stage of the district court's bifurcated class-action plan. A Rule 23(f) appeal is therefore essential to preserving this Court's ability to weigh in on the important legal issues presented here.

## CONCLUSION

The Court should grant an immediate appeal pursuant to Rule 23(f). Following full merits briefing and argument, it should vacate the class-certification order and remand with instructions to deny class certification.

Dated: March 7, 2023

Respectfully submitted,

/s/ *Michael B. Kimberly*

Elliot S. Richardson
Michele D. Dougherty
   *Korey Richardson LLP*
   *120 West Madison Street*
   *Suite 520*
   *Chicago, IL 60602*
   *(312) 372-7075*

*Counsel for*
*Staffing Network Holdings, LLC*

Michael B. Kimberly
   *McDermott Will & Emery LLP*
   *500 North Capitol Street NW*
   *Washington, DC 20001*
   *(202) 756-8000*

Joseph K. Mulherin
   *McDermott Will & Emery LLP*
   *444 West Lake Street*
   *Chicago, IL 60606*
   *(312) 372-2000*

*Counsel for Vee Pak, Inc. and*
*Vee Pak, LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), undersigned counsel for intervenors certifies that this brief:

(i)    complies with the type-volume limitation of Federal Appellate Rule 5(c)(1) because it contains 4,945 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)   complies with the typeface and type-size requirements of Seventh Circuit Rule 32(b) because it is set in Century Supra in 12.5 points.

Dated: March 7, 2023                    /s/ *Michael B. Kimberly*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2023, I electronically filed the foregoing document with the Clerk by email addressed to USCA7_Clerk@ca7.uscourts.gov, and counsel for all parties were copied on the email.

/s/ *Michael B. Kimberly*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOE EAGLE, MICHAEL KEYS, JAMES ZOLLICOFFER, and EVAN FRANKLIN on behalf of themselves and other similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12-CV-09672 |
| VEE PAK, INC., VEE PAK, LLC d/b/a VOYANT BEAUTY, and STAFFING NETWORK HOLDINGS, LLC, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The claim in this case is straightforward. The plaintiffs, who are African American, allege that Vee Pak, a beauty supply distributor, had a policy that favored hiring Latino workers over African Americans and instructed several staffing agencies to implement that policy when filling temporary positions in its warehouse. They have brought this putative class action, individually and on behalf of other African Americans similarly denied work, against Vee Pak and three staffing agencies that allegedly implemented Vee Pak's discriminatory policy. Two of the staffing agencies have settled the claims against them; Vee Pak and the third staffing agency, Staffing Network, remain in the case. The plaintiffs have moved to certify a class of African American workers who sought, but were denied, work assignments at the three staffing agencies from which they could have been referred to Vee Pak between 2011 and 2015. Vee Pak and Staffing Network oppose certification and have also moved to bar the testimony of Dr. Mark Bendick, a labor economist on whose proffered opinions the plaintiffs rely in their class-certification motion.

Because Bendick's report satisfies the admissibility standards articulated in *Daubert* and Rule 702, the Court denies Defendants' motion to strike Bendick's testimony. The Court finds that the defendants' objections to Bendick's report implicate its probative value, rather than its admissibility. The Court further finds that plaintiffs' proposed class satisfies the criteria of Federal Rule of Civil Procedure Rule 23. A class action is the most efficient way to determine whether a company-wide discriminatory policy caused the defendants to disfavor African Americans. Accordingly, the Court certifies the class with an amended definition.

## BACKGROUND

### A. Vee Pak Temporary Staffing Procedures

Vee Pak,[1] a company located in Countryside and Hodgkins, Illinois, operates manufacturing facilities in which workers fill and cap bottles and tubes for personal-care and drug companies. Due to cyclical demand for its clients' products, Vee Pak hired temporary workers through staffing agencies Staffing Network Holdings LLC ("Staffing Network"), Personnel Staffing Group, LLC d/b/a Most Valuable Personnel ("MVP"), and Alternative Staffing, Inc. d/b/a ASI ("ASI") to fulfill client orders during the class period.[2]

During the class period, Vee Pak laborers worked in two shifts, one running from 5:30 a.m. to 3:30 or 4:30 p.m. and one running from 3:30 or 4:30 p.m. to midnight or 2:00 a.m. Nearly all of Vee Pak's temporary workers were assigned to Vee Pak's Countryside manufacturing facility in the far western side of the Chicago metropolitan area. Some staffing-agency employees testified that workers would sometimes decline assignments to Vee Pak. Workers' hesitance was due in part to the time and difficulty required to travel to Vee Pak from Chicago, the low wages, and the grueling nature of the temp positions, which required lifting and standing for long hours.

The parties dispute the level of skills and experience that Vee Pak required of its workers. According to testimony that plaintiffs cite, Vee Pak's production-floor jobs required no formal training or education. All necessary skills could be learned on the job through training. Vee Pak

---

[1] Nominally, there are two Vee Pak defendants: Vee Pak, Inc., and Vee Pak LLC, d/b/a Voyant Beauty. Vee Pak LLC is named only as Vee Pak's successor and its liability, if any, is entirely derivative of that of Vee Pak, Inc. Because of the derivative nature of Vee Pak LLC's liability, no further mention of Vee Pak LLC is required.

[2] As noted in Section G, *infra*, the proposed class period spans from January 1, 2011, up through and including December 31, 2015 for Staffing Network and ASI, and from January 1, 2011, up through and including October 21, 2013 for MVP.

did not require its employees to submit criminal background checks, credit tests, or drug tests. For its part, Vee Pak presents testimony that its managers instructed staffing-agency workers to send experienced, or "regular" workers—workers who had consistently worked at Vee Pak in the past—to help run the production lines. These workers, according to Vee Pak, knew how to do different jobs more efficiently and effectively without supervision, and reduced Vee Pak's availability for less-experienced workers. According to testimony from a Staffing Network employee, dispatchers assigned workers who had prior warehouse experience to Vee Pak, worrying that employees who had never worked in a warehouse could not handle long, demanding shifts.

Plaintiffs present evidence that Vee Pak used the term "regular" worker as a code word for its preferred type of worker: one who is Latino, rather than African American. Some staffing-agency management understood "regular" to mean non-African American. According to plaintiffs, Vee Pak kept a list of "regulars" that it preferred to be assigned to shifts. As certain staffing-agency employees testified, almost all the workers on Vee Pak's list of "regulars" happened to be Latino. Vee Pak's Executive Director, Tom Zwartz, however, stated in an email that Vee Pak "do[es] not order specific individuals, and . . . do[es] not provide long term assignments to specific individuals," but instead requests individuals "with previous experience at Vee Pak." Dec. 2, 2015 Email from Tom Zwartz, ECF No. 585-2. Zwartz later confirmed that his email concerning Vee Pak's assignments of specific individuals reflected official policy.

Unlike the disagreement about worker qualifications and eligibility, the parties dispute little about the logistics of scheduling. All three staffing agencies referred workers to Vee Pak in a similar manner. Vee Pak's master schedulers determined the number of laborers needed each shift, and Vee Pak would communicate those needs to the staffing companies each day. Until

2013, Vee Pak management called dispatchers directly to communicate staffing needs. After 2013, Vee Pak submitted its orders by email. Workers registered for work at the staffing agencies using sign-in sheets. At Staffing Network and ASI, workers would also fill out an application. Dispatchers then assigned the workers to a client company either in person or by calling the workers directly. If a position was available, then a worker would be assigned to a client company like Vee Pak.

During some portion of the class period, some staffing agencies would transport workers to client companies, including to Vee Pak, by van, either directly from the workers' homes or from the staffing agencies. Some workers had to travel directly to the client using their own vehicles or via public transportation. The parties dispute the extent and availability of van transportation at each agency.

As detailed below, multiple staffing-agency employees testified that they were given explicit instructions not to assign African American workers to Vee Pak. Some workers who did receive assignments initially, moreover, were turned away at Vee Pak's door. When workers could not comply with the demands of Vee Pak's manufacturing job or did not follow the instructions included with Vee Pak's training materials, they were designated "Do Not Return," or "DNR." Some testifying staffing-agency employees observed that workers whom Vee Pak designated DNR were disproportionately African American. Other staffing-agency employees testified that Vee Pak turned away African American laborers that the staffing agency brought to Vee Pak.

### B. Testimony of MVP Employees

Until 2015, MVP operated an office in Cicero, from which it would staff temporary workers to clients, including Vee Pak. MVP referred workers to Vee Pak from 2008 until October 2013.

MVP dispatcher Yessenia Saucedo testified about Vee Pak's and MVP's hiring practices. According to Saucedo, her supervisors and other dispatchers instructed her not to send African American workers to Vee Pak because Vee Pak would send them back.

Other MVP employees testified that MVP also generally avoided referring African American workers to various non-Vee Pak clients. MVP supervisors told dispatchers and onsite employees not to send African American workers to certain clients, sometimes openly, and sometimes using certain code words, like "bilingual" to refer to Latinos and "lazy" or "not bilingual" to refer to African Americans. MVP dispatcher Saucedo testified that, following supervisors' instructions, she falsely told African Americans that MVP was not giving out applications, while making applications available to Latino workers. Another dispatcher, Pamela Sanchez, testified that she was similarly trained to withhold applications from African American workers.

### C.  Testimony of Staffing Network Employees

Staffing Network provided workers from its Cicero and Burbank offices to Vee Pak from 2009 to 2015. Most of these workers were referred from Staffing Network's Burbank office, the location of which changed during the class period. According to Staffing Network employees, Vee Pak's needs for workers fluctuated and was based on the type of work available at the time. Depending on the number of workers Vee Pak needed, Staffing Network would send workers from Vee Pak's list of "regulars," then "back up" workers (*i.e.*, workers ones that had previously worked at Vee Pak but not on the "regulars" list), then new applicants, in that order.

Staffing Network branch manager Judy Cruz testified that Staffing Network managers instructed her to refer only Latino workers to Vee Pak when she started working there in 2000. Although Cruz testified that she did not follow those instructions, another Staffing Network employee, Paloma Martinez, testified that Cruz condoned the policy after the employee and

African American workers themselves raised concerns about Vee Pak's racial discrimination. Another Staffing Network witness, who was the branch manager before the class period, testified that Cruz had told him directly that Vee Pak only wanted Spanish-speaking people.

Other Staffing Network employees testified about Vee Pak's discriminatory practices. Former branch manager Dennis Medina testified that in 2007, a Vee Pak supervisor, Staffing Network's president, and another Staffing Network branch manager all told him not to send African Americans to Vee Pak. When Medina attempted to voice disagreement with this policy, Staffing Network management told him to maintain the status quo. This practice appeared to continue beyond Medina's tenure. A Staffing Network dispatcher, Adriana Armendariz, testified that in 2013 and 2014, a branch manager told her to tell a local organization to stop sending African Americans because Vee Pak wanted only Latino workers. Armendariz testified that she would try to send African American employees to Vee Pak despite instructions to the contrary.

Dispatcher Martinez testified that many other employees told her not to send African Americans to Vee Pak, and that a Vee Pak supervisor confirmed these rumors about Vee Pak's preferences. The Vee Pak supervisor told Martinez, in Spanish, that he didn't "want those black people," calling African Americans "lazy." Martinez Dep. at 32-35, ECF. No. 544-27. Martinez stated that she and other employees would defy these instructions and continued to refer African Americans to Vee Pak and other employers. Martinez further testified that employees "knew better" than to follow racist policies because Staffing Network provided them with antidiscrimination training. Martinez Dep. at 52-54, ECF. No. 565-5.

### D. Testimony of ASI Employees

ASI provided referrals to Vee Pak from its Cicero office. ASI's Chairman, Steven Swerdloff, testified that Vee Pak supervisors explicitly told him that they only wanted Latino workers. Vee Pak shift supervisor Juan Montoya told Swerdloff that Vee Pak wanted "young,

7

good-looking Hispanic females." Swerdloff Dep. at 107, ECF No. 544-4. Another Vee Pak

supervisor told Swerdloff that he "wanted Hispanic individuals because the African-Americans

never stayed." *Id.* at 108. Swerdloff testified that he followed Vee Pak's discriminatory

instructions for fear of losing its business.

ASI employees at other levels of management also described discrimination at the

agency. An ASI dispatcher testified that Montoya threatened to take his business elsewhere if

ASI did not provide Vee Pak with "his kind of people." Gonzalez Dep. at 26, ECF No. 544-29.

The dispatcher reported these comments to Swerdloff, who told her to comply with Montoya's

instructions. ASI's President during the class period, Kyle Carstensen, testified that Montoya

asked "[w]hat [he was] supposed to do with all [these] people" after observing that a large

number of African American workers referred from ASI checked in at Vee Pak. Carstensen Dep.

at 153-54, ECF No. 544-31. An ASI Office Manager, Julie Tracey, also testified that she

believed ASI was following a discriminatory practice to please Vee Pak.

### E.  Named Plaintiff Testimony

Joe Eagle and Michael Keys are African American workers who seek to represent the

Staffing Network subclass. Eagle first sought work at Staffing Network in March 2011. During

his first visit, he completed an application and was told to return the next morning. This began a

pattern of Eagle arriving at Staffing Network early in the morning, signing in, and waiting for

hours to no avail. While waiting, Eagle often observed that Staffing Network assigned Latino

workers, who arrived at Staffing Network in vans that the staffing agency provided, to Vee Pak.

Eagle did not, however, observe any African American workers on a van destined for Vee Pak.

Eagle's work history and testimony reflects that from March to October 2011, he received some

work assignments from other Staffing Network clients, though he was never assigned to Vee

Pak. Eagle found full time employment in 2012.

8

Keys sought work from Staffing Network around the same time as Eagle, in September 2011. Even though Staffing Network told Keys that it only accepted new applications two days a week, Keys observed new Latino workers successfully obtain work on other days of the week. Like Eagle, Keys testified that he was consistently among the first workers to sign in at Staffing Network, but that the agency did not give him an assignment for two weeks. Like Eagle, Keys also testified that Staffing Network assigned him to a few of its clients but never to Vee Pak. Keys' work history records reflect that Staffing Network sporadically assigned him work between September 2011 and January 2012. Also like Eagle, Keys observed Staffing Network sending out Latino workers while he was waiting for work. He discussed with other African American workers his and their sense that they were not receiving assignments from Staffing Network at the same rate as Latino workers. Keys stopped looking for work at Staffing Network in January 2012, after he started attending vocational school and college.

James Zollicoffer testified that he experienced similar treatment to Eagle and Keys at Staffing Network, although outside of the class period (in 2009 and 2010). Seeking to represent the MVP subclass, Zollicoffer also testified to MVP's discriminatory treatment during the class period. That testimony parallels his, Eagle's and Keys' testimony about Staffing Network. After Zollicoffer moved to Chicago in the summer of 2009, he sought work at MVP's Cicero office. The first time he came into that office, he signed in and was told to come back the next day. Although Zollicoffer returned to the office early the next morning, Staffing Network did not assign him work. Zollicoffer testified that on multiple occasions in 2009, he would travel to MVP's Cicero office during the early morning hours on foot, seeking assignment for temporary work. He further testified that he observed MVP assign Latino workers to clients on days when he was waiting for work for multiple hours. Zollicoffer unsuccessfully sought work from MVP

again in 2012 and 2013, visiting the office in 2013 and calling the office a couple of times in those years.

Evan Franklin testified to similar treatment from ASI. She first sought placements at ASI's Cicero office in September 2014. Franklin continued to seek assignments from ASI on numerous occasions, indicating that she was available and that she had no work limitations. When Franklin was actively seeking work, she would call ASI or visit the office. Like the other plaintiffs, Franklin received sporadic work placements over a period of several months, but was never placed at Vee Pak. And like the other plaintiffs, she observed that ASI assigned Latino workers, but not African Americans, to work when she visited the ASI offices in person.

### F.  Bendick Declaration

Plaintiffs have submitted the testimony of Dr. Marc Bendick, Jr., Ph.D., to supplement the witness testimony concerning MVP's hiring practices. Bendick performed a statistical analysis of the relevant labor market that purports to find a shortfall of staffing-agency placements of African American workers at Vee Pak. Specifically, Bendick compared his expected representation of African Americans eligible to work at Vee Pak to Vee Pak's actual hiring practices. Analyzing each staffing agency separately, Bendick first determined the expected representation of Non-Hispanic African Americans ("NHAA"s), measured by the expected proportion of laborer pay that each staffing agency would invoice to Vee Pak.

To find the expected representation of NHAAs, Bendick first determined the "reasonable recruitment area," or relevant labor market, for each staffing agency. From staffing-agency invoices, Bendick obtained the addresses of all the workers whom each staffing agency employed during the class period, whether those workers were assigned to Vee Pak or another client. Bendick then located each address in a Public Use Micro Data Area ("PUMA"), the smallest continuous geographic unit containing an average of 100,000 people for which the U.S.

census bureau releases data. Bendick followed Census bureau data practice by using PUMAs based on the 2000 decennial census for all census data collected before 2012 and PUMAS based on the 2010 decennial census for all census data collected beginning in 2012 or later.

Next, for both the 2000 and 2010 decennial census PUMAS, Bendick ordered each PUMA in descending order, beginning with the PUMA with the highest number of addresses and ending with the PUMA with the lowest number of addresses. Bendick included in his analysis only the PUMAs that accounted for 95 percent of the addresses that he collected; he stopped counting PUMAs once 95 percent of addresses were accounted for. The remaining PUMAs constituted each staffing agency's reasonable recruitment area.

Bendick then determined the percentage of all the workers living in each PUMA who were likely to be qualified for and interested in Vee Pak referrals. To do that, Bendick counted individuals who answered in the yearly census that they were in the Civilian Labor Force (*i.e.*, actively seeking work), had no college degrees, and earned less than median earnings for the Chicago metropolitan area.[3] Bendick then calculated the percentage of those workers that were NHAAs. According to Bendick, this number gave him the expected representation of NHAAs that would be interested in working for Vee Pak in each PUMA for each year. After adding up these percentages for each class-period year using both the 2000 and 2010 PUMAs, Bendick weighted the proportion of data collected under each type of PUMA. Following standard statistical practice, Bendick calculated a confidence interval, or range in which a figure can be considered accurate with 95 percent certainty, for each of the figures reflecting NHAA representation.

---

[3] The Census Bureau's American Community Survey only releases data reflecting five-year periods each year. To analyze each class period year, Bendick used the census data set for which the year was the median. For example, in 2011, the relevant census data that Bendick examined was the data set spanning 2009-2013, which was issued in 2013.

Finally, Bendick determined the actual percentage of workers assigned to Vee Pak from the staffing agencies who were NHAAs. Because the workers' races were not provided with the invoices from which Bendick procured the addresses, he employed a "geocoding" technique to estimate actual race representation for each agency. Through geocoding, Bendick used Census data to determine the probability that a person living in an address within a Census block was a certain race (based on the racial demographic of the block). Bendick then applied the probability that a worker was a certain race to the pay invoiced for that worker. Using that number, Bendick estimated the percentage of pay that each staffing agency invoiced to Vee Pak which was attributable to NHAAs.

To determine whether there was a shortfall in Vee Pak's hiring of African Americans, Bendick calculated the difference between the actual representation and the expected representation of African Americans for each year (as measured by percentage of worker pay). Bendick found a 20.7% shortfall in MVP NHAA worker pay, a 29.4% shortfall in Staffing Network NHAA worker pay, and a 27.4% shortfall in ASI NHAA worker pay during the class period. Bendick contends that the shortfall for the three agencies was "statistically significant beyond a shadow of a doubt." Bendick Decl. ¶ 9(e), ECF No. 570-2. The number of standard deviations, or a measure of how far a value set differs from an expected value, for all five years, is 177. According to Bendick, the probability of observing such a shortfall by chance is less than one in a trillion.

### G.  Procedural History

Plaintiffs originally sued Vee Pak, ASI, MVP, and Staffing Network in 2012, alleging that the defendants violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by engaging in racially discriminatory hiring practices. Since then, some of the named plaintiffs have changed, and plaintiffs are no longer pursuing a claim based on defendants' violation of

12

Title VII. Beyond that, plaintiffs' allegations remain largely the same as they were at the start of

the lawsuit. In 2014, this Court denied defendants' motion to strike class allegations and to

dismiss the complaint, holding that the proposed classes facially met the requirements of Rule

23. *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014). This Court approved a

settlement between plaintiffs and ASI in 2018, holding that the proposed ASI settlement class

also met Rule 23's requirements. Order of Final Approval of Partial Class Settlement between

Plaintiffs and Defendant Alternative Staffing, Inc. Only, ECF No. 355; *see also Lucas v. Vee*

*Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *1 (N.D. Ill. Dec. 20, 2017) (granting

preliminary certification to ASI settlement class).

This Court has also recently issued a preliminary settlement approval order between

Plaintiffs and Personnel Staffing Group, the company doing business as MVP. Preliminary

Approval Order of Partial Settlement with PSG, ECF No. 637. That order was issued in

conjunction with Judge Ellis's recent preliminary approval between Personnel Staffing Group

and plaintiffs in *Zollicoffer v. Gold Standard Baking*, No. 13-cv-01524. In that case, a class

represented by Zollicoffer alleged that MVP and another client company engaged in similar

discriminatory hiring practices. Judge Ellis certified that class in 2020. *Zollicoffer v. Gold*

*Standard Baking, Inc.*, 335 F.R.D. 126, 133 (N.D. Ill. 2020). A final approval hearing in this case

is scheduled on April 7, 2023.

Plaintiffs move to certify three subclasses pursuant to the below definitions, with the

following named plaintiff representatives:

> Staffing Network subclass (represented by Joe Eagle and Michael Keys):
> African American laborers who sought work assignments at Staffing
> Network from which they could have been referred to Vee Pak, but on one
> or more occasions were not assigned to work at Vee Pak during the period
> of January 1, 2011, up through and including December 31, 2015.

<u>MVP subclass (represented by James Zollicoffer):</u> African American laborers who sought work assignments at MVP from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011, up through and including October 21, 2013.[4]

<u>ASI Subclass (represented by Evan Franklin):</u> African American laborers who sought work assignments at ASI from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011, up through and including December 31, 2015.

## DISCUSSION

Rule 23 requires the Court to perform a "rigorous analysis" when deciding whether to certify a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). At the class-certification stage of litigation, the Court must thread the needle between two countervailing considerations. On one hand, "Rule 23 does not set forth a mere pleading standard," and a party seeking class certification "must be prepared to prove" that the proposed class meets all of the Rule's prerequisites. *Id.* at 350. The class-certification inquiry may therefore overlap somewhat with the merits. *Id.* at 351. On the other hand, this Court may only examine the merits to the extent that they are relevant to Rule 23's requirements; the class-certification stage is not the time for "free-ranging merits inquiries." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).

When faced with a challenge to expert testimony at the class-certification stage, the line between merits inquiries and proof of certification blurs. To guide district courts, the Seventh Circuit has held that "a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class-certification motion" when that report is

---

[4] Through discovery, the plaintiffs concluded that the last date that MVP issued checks to laborers for Vee Pak assignments was October 21, 2013. Because MVP stopped assigning workers to Vee Pak on that earlier date, the end of the MVP class period differs from the Staffing Network and ASI class periods.

"critical" to certification. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010). Courts must err on the side of addressing expert testimony first; if any information is even relevant to any of Rule 23 requirements, a court must address a challenge to an expert's reliability. *Id.; see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012). Here, Defendants move to strike Dr. Bendick's declarations and testimony. His report purports to establish a statistical shortfall between the expected and actual representation of African Americans in referrals to Vee Pak. Such information is undoubtedly relevant to the question of whether the defendants enforced a discriminatory policy; the policy's expected effect is probative of its existence. The Court therefore concludes—and the parties agree—that it should resolve the defendants' motions to strike Dr. Bendick's expert report before addressing class certification.[5]

## I.    Motions to Strike Dr. Bendick's Declaration and Testimony

Both the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 govern the admissibility of expert witness testimony. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017). Pursuant to that authority and its role as a gatekeeper of evidence, the Court must determine "whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a

---

[5] In a sur-reply to the class-certification motion, the defendants also objected to the plaintiffs' introduction of the Declaration of Christopher Williams and its supporting summary exhibits in their reply brief. The Court will not, however, consider Vee Pak's Federal Rule of Evidence 1006 objections at this juncture. The Williams Declaration is not "critical" to certification; indeed, the Court did not consider it when determining whether to certify the class. *Am. Honda Motor Co.*, 600 F.3d at 815. The defendants may reassert these arguments should the plaintiffs seek to introduce the declaration and supporting summaries as evidence during a later stage of litigation. At this point, however, the Court finds it premature to resolve this admissibility issue.

fact in issue." *Id.* at 779 (cleaned up). The first and third inquiries are not at issue in this case; the defendants do not meaningfully contest Bendick's qualifications, and his findings of a shortfall in hiring African Americans, if reliable, would render it more likely that a discriminatory policy existed.[6] Like the parties, the Court therefore focuses its inquiry on the reliability of Bendick's methodology.

Rather than scrutinizing the accuracy of the expert's conclusions, the Court evaluates "the soundness and care" of the expert's analysis. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). "Reliability . . . is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). The proponent of the testimony bears the burden of showing that its proffered testimony meets the admissibility requirements by a preponderance of evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Reliability is a flexible inquiry and is not geared toward any fixed evaluative factors. *See Gopalratnam*, 877 F.3d at 780.

Bendick's basic methodology is not controversial. "Studies in employment discrimination cases typically begin by defining the relevant labor market, and then ask what the results would be for the salient variable . . . if there were no discrimination." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 424 (7th Cir. 2000). That is exactly what Bendick did here. Bendick determined the expected representation of African Americans at Vee Pak by defining the relevant labor market. To do so, he determined the percentage of persons in the reasonable recruitment area

---

[6] In its reply brief, Staffing Network points out that, contrary to plaintiffs' representations, some courts have previously excluded Dr. Bendick's testimony. But the Court does not construe this passing reference as a meaningful challenge to Bendick's qualifications.

who fit certain criteria. Of those persons, Bendick calculated the percentage that were African American. Next, Bendick compared that expected representation to the actual representation at Vee Pak. He then computed the "[t]he 'standard deviation' from the expected norm and indicate[d] how likely it is that race played no part in the decisionmaking" (in this case, extremely unlikely). *Id.* Nevertheless, the defendants argue that Bendick's methodology was unreliable because he failed to consider certain factors it claims were critical to his analysis. The Court considers those arguments in turn.

### A. Consideration of Workers' Commuting Distance

The defendants' principal qualm with Bendick's statistical analysis is his purported failure to consider the commuting distance, and associated costs, of workers' commutes when defining the defendants' reasonable recruitment area. In selecting the PUMAs that constituted his reasonable recruitment area, Bendick used the addresses of employees who had been staffed at any of ASI's, MVP's, or Staffing Network's employer partners during the class period, regardless of whether they had ever been staffed at Vee Pak. Because Bendick's analysis included workers who did not embark upon the commute to Vee Pak, Defendants argue that Bendick wholly failed to consider workers' actual commuting distance, rendering his methodology unreliable.

Courts have repeatedly recognized that "the selection of the variables to include in a regression analysis is normally a question that goes to the probative weight of the analysis rather than to its admissibility." *Manpower*, 732 F.3d at 808 (collecting cases). While reaffirming this general principle, the Seventh Circuit has recognized that one variable is "crucial" to defining a market from which an employer would be expected to draw workers. *See E.E.O.C. v. Chicago Miniature Lamp Works*, 947 F.2d 292, 303 (7th Cir. 1991). An expert must consider a worker's interest the job, which is often informed by the difficulty of a worker's commute, when defining

a relevant labor market. *See id.* at 302; *accord Bennett v. Roberts,* 295 F.3d 687, 697 (7th Cir.

2002); *Bolden v. Walsh Grp.*, No. 06 C 4104, 2012 WL 1079898, at *2 (N.D. Ill. Mar. 30, 2012).

For that reason, courts have rejected statistical analyses that draw a labor market in an arbitrary

manner without factoring in workers' commuting distance. *See Miniature Lamp Works*, 947 F.2d

at 302; *Bennett*, 295 F.3d at 697; *Bolden*, 2012 WL 1079898, at *2. The defendants argue that

Bendick's construction of his reasonable recruitment area analysis is an example of such

arbitrary line-drawing.

The Court disagrees that Bendick drew his reasonable recruitment area arbitrarily. In

*Miniature Lamp Works* and *Bennett*, the plaintiffs' experts drew their labor markets based on

nothing more than educated guesses. *Miniature Lamp Works*, 947 F.2d at 301-02 & n.8

("boundaries of the relevant labor market were arbitrarily limited to the City of Chicago" and

"considerations of applicant preference were totally ignored"); *Bennett*, 295 F.3d at 697

(rejecting whole state as relevant labor area based on expert's unverified assertion that "it

seemed reasonable to expect that the School District would hire applicants from within the

state"). By contrast, Dr. Bendick drew his reasonable recruitment area based on staffing-agency

invoices, which meant that every data point constituting his recruitment area stemmed from a

real person who embarked upon a commute to a staffing agency implicated in this case. Bendick

also understood that staffing agencies often provided vans for workers, which supported his

choice of data. His reasonable recruitment area may have been somewhat overinclusive,

especially given defendants' evidence about the sporadic availability of van transportation, but

that does not mean that it was arbitrarily drawn. That Bendick's choice to define the reasonable

recruitment area using the addresses of staffing-agency workers "could be challenged as

incomplete or faulty does not make it any less grounded in real data." *See Manpower*, 732 F.3d at 809.

Bendick also culled the far-away outliers from his data set by cutting off PUMAs once he accounted for ninety-five percent of worker addresses, a procedure he testified was "typical" among economists, professional peers, and the reference works that he consulted. Bendick Decl. ¶ 17 n.14, ECF No. 570-2; Bendick Dep. at 169-70, ECF No. 568-2. Defendants argue that Bendick's choice of ninety-five percent (as opposed to some other number), rendered his whole analysis arbitrary, but Bendick explained why he chose that number. The point of the cut-off, moreover, was to render the data set ***more*** accurate by narrowing the area from which employers "usually" draw workers *See Zollicoffer*, 335 F.R.D. at 150 ("Including the PUMAs that account for less than 5% of referrals would do little to define the area from which an employer usually draws workers.")[7]. No statistical analysis, especially one that measures a geographic area as nebulous as a labor market, can perfectly define where an employer "usually" recruits. As Bendick testified, he had to "draw a line somewhere" and in doing so, he relied on professional consensus. Bendick Dep. at 173, ECF No. 568-2. Whether he drew that line correctly is a matter for the jury, not the Court to determine. *Manpower*, 732 F.3d at 809.

The Court further disagrees that Bendick entirely failed to consider commuting distance in this analysis. Instead of disregarding distance altogether, Bendick described why considering distance as a matter of mileage from Vee Pak was not an appropriate proxy for interest in temporary work. First, Bendick explained that any account of commuting times without considering race would underestimate the willingness of African Americans to accept positions

---

[7] The defendants in *Gold Standard Baking* also moved to strike Bendick's expert testimony, although on different grounds. *Zollicoffer*, 335 F.R.D. at 145-52. Judge Ellis denied that motion, reasoning that his estimates were sufficiently reliable for the court to consider as part of plaintiffs' class-certification motion. *Id.* at 152.

with far-away employers. In support, Bendick referenced his own independent research, which examines the disproportionately long commuting times of African Americans to staffing agencies located in Chicago. He also explained, citing the "professional standard" codified in the Office of Federal Contract Compliance Programs' regulations, that considering distance from Vee Pak would bake racial inequities into the analysis. Bendick Decl. ¶¶ 13 n.10, 26, ECF No. 570-2 (quoting 41 CFR § 60-2.14(e)). Assuming plaintiffs' allegations of racial discrimination are true, if Bendick based his findings only on PUMAs reflecting addresses of Vee Pak employees, those addresses would be disproportionately drawn from areas in which African Americans do not live. *See* 41 CFR § 60-2.14(e) ("[A] contractor may not draw its reasonable recruitment area in such a way as to have the effect of excluding minorities or women."); *see also Mister v. Illinois Cent. Gulf R. Co.,* 832 F.2d 1427, 1433-34 (7th Cir. 1987) (noting that "[d]iscrimination itself produces a statistical finding of no discrimination" if model based on distance ignores differences in racial demographics in different areas).

Finally, Bendick explained that accounting for a worker's commute would also require the introduction of too many variables, such as cost, travel time, and the availability of public transportation and ridesharing. Merely considering distance as a matter of mileage, according to Bendick, would reduce, rather than increase accuracy, so excluding the variable altogether would render more reliable results. In his rebuttal declaration[8], Bendick provided examples in which staffing-agency workers living in PUMAs that were located further from Vee Pak supplied fewer

---

[8] Defendants also argue that Bendick's rebuttal improperly advances plaintiffs' "case in chief." Staffing Network Memo in Supp. of Mot. to Strike at 13-14, ECF No. 568; Vee Pak Memo in Supp. of Mot. to Strike at 26-27, ECF No. 570. The Court disagrees. The Court already gave Plaintiffs leave to file Bendick's rebuttal because it found that the report responded to defendants' experts' report. Order Granting Plaintiff's Leave, ECF No. 540. Bendick's rebuttal attempted to address the flaws in defendants' experts' criticisms and apply those criticisms to his own analysis, both proper issues to address in a rebuttal.

wages invoiced to Vee Pak than ones that were closer to Vee Pak (and vice versa). With specific examples, Bendick explained why measuring distance as a matter of milage is an inartful measure of worker interest in Vee Pak.

Far from basing his opinion "only on his *ipse dixit*," Bendick connected the data he employed (or in this case, declined to employ), to the opinion he offered. *Manpower*, 732 F.3d at 806 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Instead of "totally ignor[ing]" worker interest as measured by distance from Vee Pak, Bendick backed up his reasoning with facts and data. *Cf. Miniature Lamp Works*, 947 F.2d at 301. To be sure, none of Bendick's explanations for rejecting the incorporation of distance from Vee Pak in his analysis are ironclad. As the defendants' experts show, Bendick's analysis includes PUMAs from which workers would have to embark upon unreasonably long commutes. But Bendick's explanation for his choices is nonetheless rationally related to his opinion, rendering his opinion admissible, notwithstanding an opposing expert's disagreement. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000). Defendants may attack Bendick's explanations for his exclusion of distance on cross examination, but it is not for the Court to reject them at this stage. *See Schultz*, 721 F.3d at 432.

The defendants' experts offer competing variables that they claim would better account for workers' interest in Vee Pak as measured by their commuting costs. That defendants' experts thought of other methodologies does not render Bendick's methodology automatically unreliable. "[I]t is often the case that experts reach conflicting conclusions based on applying different but nevertheless reliable methodologies to a set of partially known facts." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 847 (7th Cir. 2017). Tellingly, none of the defendants'

experts cite to any professional consensus or reference point that guides how an expert must determine a worker's interest in the labor market.

For example, Vee Pak's experts Dr. Edward Anderson and Dr. Catherine Massey measured the expected "intensity of interest" in commuting to Vee Pak and to each staffing agency in each PUMA. Anderson and Massey Decl. ¶ 30 & n.12, ECF No. 570-6. This "intensity" was based on ACS survey response data and measured by the percentage of respondents who expected to choose a commute from the centroid of a PUMA to Vee Pak or the relevant staffing agency as compared to alternative work or a current job. Although Anderson and Massey reference undefined "economic principles" that "require" the inclusion of their chosen variables in the analysis, that does not give the Court a sufficient basis to conclude that their method is the economic gold standard, or even that it is more reliable than Bendick's. *Id.* ¶ 23. Anderson and Massey's testimony certainly does not go so far as to show that Bendick's exclusion of the variables that they chose was based on mere say-so or speculation. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

To this point, Bendick explained in his rebuttal why he thought Anderson and Massey's approach was wrong—namely, that it failed to incorporate racial differences in willingness to travel and excluded unemployed people, the very people most likely to seek temporary work, from the analysis. The Court is thus left with a battle of expert conclusions, one that the defendants cannot win using *Daubert* as a weapon. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1055 (N.D. Ill. 2022) (denying *Daubert* motion, where "both sides offer[ed] seemingly reasonable arguments, supported by testimony from well qualified and respected economists, concerning why [their conclusions were] appropriate"). Without a firm basis for concluding that Bendick **must** account for certain factors that pertain to a worker's

22

commute to render his methodology reliable, defendants' attacks on his methodology ring hollow.[9]

## B. Other Factors

Defendants' remaining criticisms of Dr. Bendick's analysis focus on the quality of the data that Bendick used and other variables that Bendick omitted. As discussed below, all of these arguments implicate the weight, rather than the admissibility, of Bendick's testimony.

The defendants argue that Bendick used data from the wrong agency offices in his analysis. According to Staffing Network, Bendick included data from Staffing Network's Cicero office, even though witness testimony reflects that Staffing Network almost never sent workers from that office to Vee Pak. And Vee Pak argues that Bendick erroneously included workers from ASI's Aurora office in his model even though ASI's President testified that workers were not sent to Vee Pak from that office either. Plaintiffs counter that exclusion of this data either would not have made a difference in Bendick's analysis (Aurora) or would have incorporated racial discrimination into the analysis by excluding an office located near a predominantly African American neighborhood (Cicero). These arguments are precisely the type that are well

---

[9] To be clear, the Court does not impose upon defendants the burden of presenting a competing statistical model to refute Bendick's conclusion. The plaintiffs make much of *Mister v. Illinois Central Gulf Railroad Company,* 832 F.2d 1427 (7th Cir. 1987). In that case, a plaintiff class of African American railroad workers established, through statistical evidence, a high probability of disparate treatment in violation of Title VII. *Id.* at 1429. The Seventh Circuit held that the defendant did not meet its burden of proving, at trial, that its ***own*** race-neutral explanation for hiring, that it wanted to hire workers close to the railroad, explained the disparity. *Id.* That case does not, as the plaintiffs argue, state that a party moving to strike an expert bears the burden to show that an omitted variable accounts for an opposing expert's result. Indeed, the Seventh Circuit has squarely held, after *Mister,* that a defendant "need not in include in its own statistical analysis variables that it asserts are missing from the plaintiff's analysis." *Miniature Lamp Works*, 947 F.2d at 301. The Court's point is rather that the variable that defendants assert is crucial—measuring the relative cost of workers' commute to Vee Pak—was not ignored, but rather considered, in Bendick's analysis.

suited for a jury's consideration; "[w]hether [the expert] selected the best data set to use . . . is a question for the jury, not the judge." *Manpower*, 732 F.3d at 809.

Defendants' arguments that Bendick used the addresses of workers from the wrong time periods to build his PUMAs are similarly unpersuasive. Staffing Network argues that Bendick included some data from residents working at Staffing Network outside the class period in fashioning his PUMAs. It also challenges Bendick's use of addresses of workers who were invoiced late in the class period when determining the reasonable recruitment area for earlier years. Those choices may be questionable, but they are matters of data selection and do not bear upon admissibility. Indeed, Judge Ellis rejected almost identical arguments in the *Gold Standard Baking* case. Although Judge Ellis recognized defendants' valid criticisms about Bendick's failure to vet the data files that counsel provided, she noted that those "critiques go to the weight of Dr. Bendick's analysis, not its admissibility." *Zollicoffer*, 335 F.R.D. at 148-49.

Finally, the defendants argue that in fashioning the expected representation of African Americans in each PUMA, Bendick failed to consider a host of factors that would influence a worker's interest in Vee Pak. Bendick erred, they argue, in assuming that every worker with a certain level of education in the work force making below the median income would be interested and available for a job at Vee Pak. For instance, Staffing Network argues, that individuals with certain occupations making less than a median income, such as nurses and librarians, would not consider low wage temporary work at Vee Pak desirable, citing its expert, Dr. Paul White.[10] Similarly, Vee Pak argues that Bendick should have incorporated other factors

---

[10] Notably, White did not explain whether "restrict[ing] the population to occupations that may be more likely to be interested in a laborer job" is an accepted methodology or whether it is standard practice to do so. White Decl. at 24-25, ECF No. 568-10. He simply opined that Bendick's expected representation included occupations that would be unlikely to be interested in Vee Pak. *Id.* at 3.

such as a worker's access to and availability of public transportation, the cost for gas or bus tickets, and employees' shift preferences.

It can be argued, to be sure, that Bendick's data inflates the number of workers who might be interested in a temporary position in Vee Pak's warehouse, but that argument is also best reserved for a jury.[11] Even though Bendick's estimate of each PUMA's expected representation of NHAA's is, to put it mildly, "rough," the Court must "let the jury determine how the uncertainty about [the expected representation of African Americans in each PUMA] affected the weight of [Bendick's] testimony." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766-67 (7th Cir. 2013). Defendants' criticisms challenge Bendick's choice of variables in determining worker interest, a choice that, again, concerns the probative value rather than the admissibility of testimony. *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of City of Chicago*, No. 12 C 10311, 2020 WL 914881, at *16 (N.D. Ill. Feb. 25, 2020).

This is so even considering the Seventh Circuit's emphasis on the interest of potential applicants in a labor-market analysis. *See, e.g.*, *Bennett*, 295 F.3d at 697. An expert cannot wholly ignore an applicant's interest in the job, but Bendick did not do so, and nothing in the caselaw dictates a formula an expert must follow or which specific individual variables an expert must use. For instance, the court in *E.E.O.C. v. Consolidated Service Systems*, 777 F. Supp. 599,

---

[11] The defendants' criticisms of Dr. Bendick's interest criteria also overstate the significance of the criteria used to define the pool of people in each PUMA who were interested in temporary work at Vee Pak. Those criticisms address only the effect of the criteria used on the ***total number*** of persons interested in Vee Pak rather than on the ***percentage*** of NHAAs within that group. Further, to the extent that the defendants complain that Dr. Bendick's criteria are overinclusive, they may understate the degree of discrimination. The defendants complain, for example, that Bendick's pool is too broad because it would include "nurses and librarians" who presumably would not be interested in temporary work at Vee Pak. But if, hypothetically, "nurses and librarians" are disproportionately white, excluding them from the criteria used to determine the pool of interested workers would increase the expected percentage of "interested" NHAAs in each PUMA, consequently increasing the delta between expected and actual representation of NHAAs at Vee Pak.

606 (N.D. Ill. 1991), *aff'd*, 989 F.2d 233 (7th Cir. 1993), found an expert's statistical evidence lacking where the expert "failed to take into account those persons who would not desire a position at Consolidated given the particular working conditions offered."[12] But here, Bendick did consider the desirability of a position at Vee Pak, reasonably if imperfectly, by limiting the pool of expected representation through median income, position in the labor force, and level of education.

It would be impossible for an expert to include every conceivable variable pertaining to worker interest—such as the vagaries of public transportation schedules or workers' level of comfort with waiting alone at a bus stop—in a labor market analysis. This impossibility does not, as defendants imply, mean that a labor market that considers workers' interests can never be reasonably approximated. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("[I]t is clear that a regression analysis that includes less than 'all measurable variables' may serve to prove a plaintiff's case."). Instead, as long as an expert uses a reliable methodology, whether the expert used the right variables and the conclusions that can be drawn from those limited variables is a question for the jury. *Smith v. Ford Motor Co.,* 215 F.3d 713, 718-19 (7th Cir. 2000).

In sum, Bendick considered African Americans' potential interest in the job, drew his relevant labor market based upon real data, and applied a regression methodology that courts have repeatedly endorsed. Although his results are not bulletproof, the Court finds that any deficiencies can be addressed on cross examination. Defendants' motion to strike Bendick's testimony is therefore denied.

---

[12] The Court notes, moreover, that *Consolidated Systems* tested the sufficiency of evidence after a bench trial, rather than ruling on the admissibility of evidence on a *Daubert* motion. 777 F. Supp. at 609-10. The Court does not imply, by ruling Bendick's declaration admissible, that it would sufficiently or even substantially prove plaintiffs' case on the merits.

## II.    Motion for Class Certification

To certify a class, the Court must first consider whether it meets the requirements of Rule 23(a). That section requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In interpreting the requirement that a class be "defined," Courts have added that a class must be ascertainable, or "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). If a proposed class meets Rule 23(a)'s prerequisites, a court must examine whether one of Rule 23(b)'s provisions is satisfied. Here, plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23(c)(5) further provides that, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23]." Plaintiffs accordingly seek certification of each proposed subclass under Rules 23(b)(3) and (c)(5).

### A.    Rule 23(a) Requirements

#### 1. Numerosity

Defendants do not dispute that the proposed subclasses satisfy Rule 23(a)'s numerosity requirement. Plaintiffs estimate that the MVP class will have 2,896 members, the Staffing Network class will have 5,889 members, and the ASI class will have 4,791 members. Those numbers far exceed the threshold that courts have held would make "joinder impracticable." Fed. R. Civ. P. 23(a)(1); *see, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9

27

(7th Cir. 1969) (forty people sufficiently numerous); *Phillips v. Waukegan Hous. Auth.*, 331 F.R.D. 341, 350 (N.D. Ill. 2019) (same). The Court finds the numerosity requirement satisfied.

## 2. Commonality

Rule 23(a) next requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting cases). Plaintiffs allege that employees at the staffing-agency offices declined to assign African Americans, adhering to the same assignment practices and pursuant to discriminatory policies over which the employees had no discretion. *See Lucas*, 2017 WL 6733688, at *5. When this Court preliminarily approved the ASI settlement class and when it denied the defendants' motion to strike class allegations, it held that the question of whether a discriminatory policy of steering African Americans away from Vee Pak existed satisfies the commonality requirement. *Id.* ("A company-wide discriminatory practice that was applied to all class members is sufficient to establish commonality."); *Lucas*, 68 F. Supp. 3d at 881 ("[A discriminatory] policy would be a common cause of all the class members' injuries."). Judge Ellis concluded the same in the *Gold Standard Baking* case. *Zollicoffer*, 335 F.R.D. at 157. The defendants' arguments here do not persuade the Court to conclude otherwise.

Defendants argue that the Supreme Court's recent holding in *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), changes the calculus of this Court's previous decisions in this case and Judge Ellis's decision in *Gold Standard Baking*.[13]

---

[13] This Court decided to certify ASI before the Supreme Court issued *Comcast*, and the parties did not brief the impact of *Comcast* before Judge Ellis in the *Gold Standard Baking* case.

In *Comcast*, the plaintiffs argued that at the pleading stage of a § 1981 case, they needed only to allege that racial discrimination was a "motivating factor" rather than the "but-for" cause of the defendant's challenged decision. 140 S. Ct. at 1014. The Supreme Court rejected that argument, holding that plaintiffs alleging discrimination under § 1981 "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Id.* at 1019. This burden, the Court held, "remains constant" throughout the lawsuit. *Id.* at 1014-15.

According to the defendants, *Comcast* precludes § 1981 plaintiffs, like the ones in this case, from proceeding under the framework that the Supreme Court established in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Under that approach, a class of plaintiffs alleging a pattern or practice of discrimination may submit for class-wide resolution the question of liability, or whether the defendants indeed operated under a discriminatory policy. *Teamsters*, 431 U.S. at 360-61. Courts then determine the scope of individual relief in later, individualized proceedings in which the defendant would bear the burden to show that "the individual applicant was denied an employment opportunity for lawful reasons." *Id.* at 361. The plaintiffs propose a similar approach in this case: a class-wide action to determine whether the defendants had a policy of steering African American workers away from Vee Pak, followed by later, individualized proceedings to determine the scope of plaintiffs' damages.

After *Comcast*, the defendants contend, a *Teamsters*-based approach to § 1981 cases impermissibly shifts the burden of proof to them. The defendants argue that because each individual plaintiff must prove that the employer would still have hired that plaintiff if not for her race, the question of the defendant's liability does not rise and fall with proof of a common policy. And defendants argue that they cannot bear the burden of proving that they still would

have hired the plaintiffs at the second step of the *Teamsters* framework; that burden falls to plaintiffs.

The Court is skeptical that *Comcast*, a case about mixed-motive pleading standards for § 1981 cases, reaches so far as to foreclose application *Teamsters* framework to establish defendants' liability. *Cf. Chicago Tchrs. Union, Loc. 1, Am. Fed'n of Tchrs., AFL-CIO v. Bd. of Educ. of City of Chicago*, No. 12 C 10311, 2021 WL 1020991, at *16 (N.D. Ill. Mar. 17, 2021) (applying *Teamsters* framework to § 1981 claim post-*Comcast*). After all, when the Supreme Court decided *Teamsters*, a Title VII case, in 1977, the "but-for" standard, rather than the "motivating factor" standard, governed such claims. *Comcast*, 140 S. Ct. at 1017 (explaining that the Supreme Court introduced the motivating factor standard in 1989). The Court in *Teamsters* was not concerned that its burden shifting framework could run afoul of Title VII's then existing but-for causation standard.

Regardless, the Court need not decide whether *Comcast* forecloses a bifurcated approach to establishing but-for causation. Proving this case at trial will not require any burden shifting to establish the defendants' liability. Apart from the common question of the existence of a discriminatory policy, the other important common question in this case is whether there were any real qualifications for the positions open at Vee Pak. Plaintiffs assert, and have provided some evidence to show, that the answer to that question is no: the work available at Vee Pak was unskilled and required no prior experience. And any of Vee Pak's claims that they desired "experienced" or "regular" workers, Plaintiffs, assert, were merely pretexts for racial discrimination.[14]

---

[14] Of course, the defendants vigorously maintain that a workers' level of experience mattered to Vee Pak and have provided their own evidence to refute plaintiffs' claims. Vee Pak's allegedly pretextual labeling of workers as "experienced" or "regulars," however, is part of the

Thus, if a jury finds true plaintiffs' claims that (1) defendants operated under a discriminatory policy and (2) every worker was equally qualified for a position at Vee Pak, it is no defense to liability to assert that a plaintiff was not hired due to that plaintiff's qualifications. Defendants' liability can be resolved in one centralized proceeding. As the Court previously noted when preliminarily certifying the ASI settlement class, there may be a need for subsequent individualized inquiries to determine which class members were actually adversely affected by the discriminatory practice. *Lucas*, 2017 WL 6733688, at *5. "Plaintiffs need not prove that every member of the proposed class has been harmed before the class can be certified;" if each member of the class could have been harmed by a class-wide policy, certification is appropriate. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015). Because plaintiffs' proposed class would allow for class-wide resolution of liability issues under any reading of *Comcast*, defendants' arguments about the effect of that case are unpersuasive.

The defendants also argue that plaintiffs have not proffered "significant proof" of a uniform, general policy that would link their claims of discrimination together. *Wal-Mart*, 564 U.S. at 353. At the class-certification stage, plaintiffs must offer more than allegations about a discriminatory practice. *See id.* at 350. Instead, they must offer evidence to show that the existence of the policy in the case is "*capable of proof at trial* through evidence that is common to the class." *Bell*, 800 F.3d at 375 (quoting *Messner*, 669 F.3d at 818). For example, evidence that company decisionmakers impute their own biases when making discretionary employment

---

discriminatory policy that plaintiffs claim defendants perpetuated. As discussed below, the plaintiffs need not definitively prove that the policy existed to show that the requirements for class certification are met. At this stage, plaintiffs need only show that they could prove their case using common evidence. *See Messner*, 669 F.3d at 817. True, even absent a discriminatory policy that used experience as a proxy for race, individual plaintiffs could argue that they were subject to discrimination. But such individual claims rooted in idiosyncratic discrimination "would be based on an entirely different legal theory." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015).

decisions is not "significant proof" of such a policy. *See Walmart*, 564 U.S. at 356-57. Because

the plaintiffs in *Wal Mart* offered only proof that employers' actions were discretionary, it would

be impossible to rely on that evidence to show that the company engaged in discriminatory

conduct. *Id.* at 357. By contrast, if plaintiffs offer enough evidence to show that questions

common to the class exist, they need not prove the "truth of their allegation that [the defendant]

has an unofficial policy." *Bell*, 800 F.3d at 374, 377 (noting that district court must resolve only

material factual disputes that **bear on the requirements for class certification**") (emphasis in

original).

     The plaintiffs have satisfied their burden here. Employees at all three staffing agencies

testified to the defendants' discriminatory practices. This testimony included first-hand accounts

of discriminatory conduct at all levels of management, including that Vee Pak told staffing-

agency managers not to refer African Americans, that staffing-agency employees perpetuated

these policies, that staffing agencies used derogatory code words to refer to African American

workers, and that the few African Americans who did manage to by-pass the staffing agencies

were turned away at Vee Pak's door. Some of these employees testified that Vee Pak shift

supervisors directly and repeatedly instructed them not to send African Americans to Vee Pak.

The named plaintiffs, moreover, testified to the staffing agencies' passing them over for jobs due

to their race. The testimony about specific mechanisms of discrimination, from the upper

echelons of staffing-agency management to the staffing-agency dispatchers to the employees

facing the effects of discrimination, undoubtedly speaks to the existence of a discriminatory

policy among the defendants. *See id.*, 800 F.3d at 375 (testimony from company branch

managers about discriminatory policy constituted enough evidence to satisfy commonality

requirement).

The defendants protest that plaintiffs' anecdotal evidence is not substantial enough, citing *Wal-Mart*. In that case, 120 employees' testimony about their own experiences of discrimination was not enough to establish a wide-ranging policy spanning 3,400 stores employing millions of workers in all fifty states. *Wal-Mart*, 564 U.S. at 358. Without any testimony that gave color to the alleged policy, the employees' scattered testimony about the discrimination they suffered was of course not enough to form the "glue" holding together the alleged reasons for the discrimination. *Id.* Here, the plaintiffs furnish testimony from defendant employees, some of whom were in managerial positions, about the discriminatory practices and the uniform ways in which they were implemented. This testimony stands ***in addition*** to the testimony of the named class members and proposed class members about their own experiences of discrimination. Class members' testimony about their personal experiences of discrimination was not enough, standing alone, to establish a discriminatory policy in *Wal-Mart*, but first-hand accounts about the policy's contents and implementation would, if true, allow a jury to find a policy existed in this case.

Defendants also argue that some of the witness testimony predates the class period and is irrelevant to the existence of a policy during the alleged period. Outside-the-class period evidence alone would not suffice to show that discriminatory conduct common to all class members occurred within the class period. Combined with other within-class-period testimony, however, testimony about a policy that began before the class members' claims accrued and persisted throughout the class period is relevant. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-13 (2002) (evidence of discriminatory policy outside of statute of limitations relevant as "background evidence to support a timely claim"). For similar reasons, the Court finds unpersuasive the defendants' arguments that one staffing agency's practices of steering

workers away from Vee Pak are irrelevant to another agency's same practices. And the staffing agency's discriminatory policies at the behest of non-Vee Pak clients are also relevant. Plaintiffs allege that Vee Pak asked staffing agencies not to refer African Americans and that staffing agencies followed those discriminatory policies. Although not dispositive, that one staffing agency or client perpetuated this discriminatory policy renders it more plausible that the policy extended to other agencies or other clients.

The defendants' remaining objections to plaintiffs' witness testimony rest on disputes about witness credibility and the sources of the witness's knowledge. For example, some staffing-agency employees who testified about Vee Pak's discriminatory instructions, such as Cruz, Martinez, and Armendariz, also testified that they did not follow those instructions. But plaintiffs have offered testimony that casts doubt upon those statements. *See* Medina Dep. at 43, ECF No. 544-25 (testifying that Cruz told him that he could not refer African American workers to Vee Pak); Martinez Dep. at 45, 54-55, 70-71, ECF No. 544-27 (describing Staffing Network's practice of hiring "regulars," and testifying that, although Cruz did not want her to "find more Latinos," that Cruz knew about the policy and told her "there's nothing we can do"); Armendariz Dep. at 39-44, ECF No. 551-1 (noting same "regulars" policy and noting regulars were predominately Latino). The Court cannot resolve a textbook credibility dispute by reading deposition transcripts. At the class-certification stage, courts may not "weigh[ ] . . . evidence to determine whether the plaintiff class will prevail on the merits." *Bell*, 800 F.3d at 377.

It is true that a court must sometimes delve into the merits when considering class certification. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir.2001). Such inquiries are only appropriate, however, to the extent they are necessary to determine whether the class certification **requirements** are met (in this case, whether the issue can be resolved on a

class-wide basis through evidence common to the class). *See Bell*, 800 F.3d at 376-77; *see also Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). The plaintiffs have presented enough evidence to show that the resolution of defendants' claims of discrimination will rise and fall with the truth of witness testimony about the existence of a discriminatory policy. In other words, if a jury does not believe the witness testimony about the policy, the "certified class can go down in flames on the merits." *Schleicher*, 618 F.3d at 685. The plaintiffs' have proffered enough witness testimony to support a legal theory common to the entire class; that is precisely what the Supreme Court meant by "significant proof" in *Wal-Mart*.

The plaintiffs, moreover, have corroborated their anecdotal evidence with Dr. Bendick's statistical analysis, which as explained above, the Court deems admissible. As this Court has previously explained, a statistical analysis alone does not provide an answer to the cause of a racial disparity. *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States of Am.*, 34 F. Supp. 3d 896, 909 (N.D. Ill. 2014). But such an analysis "may go a long way to establishing that there *is* a race-based disparity, ruling out the possibility that an observed disparity is simply the product of chance." *Id.* Bendick's analysis, therefore, renders it more likely that **something** caused a racial disparity, and witness testimony suggests that a discriminatory policy was that something. *Id.* Using that evidence—which is common to every member of the class—the plaintiffs seek to prove their case. A jury does not have to find Bendick's numbers convincing, and the defendants may rely, on the merits, on all of the deficiencies that they raised in their *Daubert* motion. Similarly, a jury does not have to find convincing the testimony of plaintiffs' witnesses. In any event, however, a jury can weigh this evidence and decide whether all of the plaintiffs win or lose. As Judge Ellis put it, "the statistical evidence and anecdotes together provide 'significant proof' of a 'uniform employment practice'

that caused a common injury to the class." *Zollicoffer*, 335 F.R.D. at 157 (citing *Walmart*, 564 U.S. at 353-55). Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the named plaintiffs'] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Factual differences between the plaintiffs do not destroy typicality as long as plaintiffs proffer similar legal theories. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). It is the legal theories supporting those injuries that must be typical of plaintiffs' claims; the plaintiffs may have claims typical of other class members even if the extent of class members' injuries differs. *See id.* at 232-33.

Here, named plaintiffs Zollicoffer, Eagle, Keys, and Franklin, allege that they were denied work after waiting unsuccessfully for assignments and that the staffing agencies gave work to Latino laborers instead. They allege that defendants similarly denied class members work opportunities at Vee Pak due to their race pursuant to a discriminatory policy. That is, the named plaintiffs have alleged the same injury as the proposed class members: racial discrimination. The named plaintiffs also assert the same legal theory as the proposed class members, that defendants violated § 1981. Plaintiffs have therefore satisfied the typicality requirement. *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of the City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill. 2015) (typicality satisfied where "all of the proposed class representatives base[d] their claims on the same legal theory: racial discrimination").

Defendants nonetheless argue that the named plaintiffs have not accrued the same injuries as the proposed class members. Staffing Network argues that named plaintiffs' injuries are atypical because the staffing agencies eventually assigned Eagle and Keys to customers other than Vee Pak. This argument confuses the kind of injury that named plaintiffs allege with the extent of their injuries. *See Pruitt v. Pers. Staffing Grp., LLC*, No. 16-CV-5079, 2020 WL 3050330, at *8 (N.D. Ill. June 8, 2020) ("Defendants' argument about the short amount of time the Named Plaintiffs actually sought assignments at MVP and their availability to take assignments from MVP may go to the Named Plaintiff's damages, but those are not defenses to claims of racial discrimination."). Regardless of the extent of pecuniary losses that named plaintiffs may have ultimately incurred, all the named plaintiffs allege that they were denied a job due to racial discrimination. *Zollicoffer*, 335 F.R.D. at 157 (rejecting defendants' contention that Zollicoffer suffered atypical injuries because he was "unavailable to work for significant segments of the class period"). Defendants' argument that some of the named plaintiffs only sporadically sought assignments during the class period are similarly relevant only to the extent of plaintiffs' harms. The named plaintiffs and proposed class members therefore all suffered a typical injury.

Vee Pak argues that Franklin cannot serve as a named plaintiff for ASI because she was denied a job in 2014, a period after which, defendants claim, ASI took steps to correct discriminatory practices. In support, defendants cite the testimony of Steven Swerdloff, ASI Chairman who testified that ASI threatened to drop the Vee Pak account after a lawsuit challenged its discriminatory practices. But Swerdloff did not give a clear answer as to whether ASI made those changes in 2013, 2014, or 2015. Swerdloff 30(b)(6) Dep. at 103, ECF No. 573-9 ("I think it would have to be around 2015, '14 '15 . . . somewhere in there."). Plaintiffs, in turn,

argue that ASI continued to discriminate against African Americans well beyond 2014. Swerdloff had previously testified that Vee Pak continued to ask ASI to discriminate against African Americans until 2015. And an ASI employee testified that a Vee Pak employee told her in no uncertain terms to turn Black employees away in the same month that Franklin applied for work, September 2014. Plaintiffs have proffered enough evidence to show that Vee Pak's alleged discriminatory policy continued when Franklin sought work from ASI. Franklin corroborates this testimony through her statements that she sought and did not receive work from ASI during the same period. Because Franklin testified that defendants injured her in the same manner—through a discriminatory policy—as proposed class members during the relevant period, her injuries are typical. Defendants' attacks on typicality of injury do not persuade the Court.

### 4. Adequate Representation

Defendants next challenge the adequacy of named plaintiffs' representation.[15] Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Typicality and adequacy operate in tandem; a named claimant who suffers injuries typical of the class will presumably be incentivized to vindicate its effort. *See Amchem*, 521 at 626 n.20. Therefore, to meet the adequacy requirement, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up). The rationale animating the adequacy requirement is to ensure that the named plaintiffs will vigorously advocate for a positive outcome for class claimants. *See Lacy v. Cook County*, 897 F.3d 847, 866-67 (7th Cir. 2018).

---

[15] Rule 23(a)(4) also requires that class counsel be adequate representatives for the class. Defendants do not challenge the adequacy of class counsel. This Court continues to find that "class counsel are experienced and competent employment discrimination and class action plaintiffs' attorneys" and are therefore adequate representatives. *Lucas*, 2017 WL 6733688, at *7.

Staffing Network argues that Eagle and Keys cannot represent the Staffing Network class because they lack a sufficient interest in the case.[16] In support, they repeat their arguments contesting the typicality of their injuries: because Eagle and Keys obtained alternative employment, Staffing Network argues, they did not suffer an injury, and have an insufficient stake in this case's outcome. Staffing Network cites *Culver v. City of Milwaukee*, in which a named plaintiff who sought permanent employment alleged that the defendant discriminatorily refused to hire him and other proposed class members. 277 F.3d 908, 910 (7th Cir. 2002). That plaintiff could not serve as an adequate class representative because, among other things, he had found a new, permanent position shortly after his "perfunctory" efforts to seek employment with defendant. *Id.* at 912. *Culver*, however, is inapposite; that Eagle and Keys sought temporary work meant that they were subject to repeated occurrences of racial discrimination. Even if they found other employment or stopped seeking work during the class period, Eagle and Keys both suffered injuries, and the extent of those injuries is a damages question. *Pruitt*, 2020 WL 3050330, at *8. Moreover, unlike *Culver*, who stopped seeking any relief from defendants and agreed his case was moot, Eagle and Keys both continue to seek recovery for injuries they suffered. 277 F.3d at 912. Like the proposed class members, Eagle and Keys have an interest in recovering damages for the discrimination they repeatedly suffered. Therefore, the Court finds that they are adequate class representatives.

Vee Pak, in turn, contests the adequacy of Zollicoffer as a class representative for MVP and Franklin as a class representative for ASI. According to Vee Pak, Zollicoffer and Franklin

---

[16] Staffing Network also argues that Zollicoffer would not be an adequate representative for the Staffing Network class. Plaintiffs, however, do not propose Zollicoffer as a class representative, but rather submit his testimony as additional evidence of Staffing Network's discriminatory policy. The Court therefore declines to address any arguments about Zollicoffer's ability to represent the Staffing Network class.

are insufficiently informed about the instant litigation to adequately pursue class members'

interests. "[A]n adequate class representative must maintain only an 'understanding of the basic

facts underlying the claims, some general knowledge, and a willingness and ability to participate

in discovery.'" *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007)

(quoting *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396, (N.D. Ill. 2006)). Vee Pak argues

that Franklin has not met those minimal requirements because she lacks personal knowledge

about Vee Pak and was unfamiliar with certain Vee Pak employees that counsel listed in her

interrogatory responses. As for Zollicoffer, Vee Pak emphasizes that Zollicoffer testified to

having no knowledge of Vee Pak, including what it did, where it was located, whether staffing

agencies assigned workers to Vee Pak or why he was suing Vee Pak, "leav[ing] that up to [his]

attorney." Zollicoffer Dep. at 26-28, ECF No. 573-31.

Courts have emphasized that the bar for class representatives' knowledge about the

litigation subject is modest. *See, e.g.*, *Wahl*, 243 F.R.D. at 298; *Murray v. New Cingular Wireless

Svc., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005); *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D.

Ill. 1999); *see also Zollicoffer*, 335 F.R.D. at 160 (collecting cases). On the other side of the

spectrum, the instances where class members have been deemed inadequate representatives are

particularly egregious. For example, class members cannot get away with submitting false

discovery responses by feigning lack of knowledge about their responsibilities. *See Physicians

Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1025-26 (N.D. Ill.

2017). And a named plaintiff cannot be "less than willing to participate in discovery fully and in

good faith." *Pruitt*, 2020 WL 3050330, at *6. Otherwise, "[f]or a plaintiff who wishes to be a

class representative, "(g)eneral knowledge [of the case] and a participation in discovery are

enough." *Sebo*, 188 F.R.D. at 316 (quoting *Kriendler v. Chemical Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1159 (N.D. Ill. 1995)).

Franklin and Zollicoffer clear that modest bar. Franklin testified that she continuously sought work from ASI, was repeatedly denied assignments, and observed that African Americans waited for work at ASI offices while ASI sent Latino workers out on assignments. Franklin read case materials, responded to all discovery requests, and explained that she understood the substance of the lawsuit: that African Americans were denied work assignments due to their race. Similarly, Zollicoffer testified that when he applied for temporary work at MVP, he observed that MVP selected Latino workers while he was denied work. Zollicoffer acquired "general knowledge" about the case: he understood that he was suing MVP and that his lawsuit was about work-related discrimination against Black people. *Sebo*, 188 F.R.D. at 316. The fact that named plaintiffs do not know much about Vee Pak or its employees does not raise eyebrows. It is enough that the named plaintiffs know that they were passed over for work at an agency due to their race. There would be no way for them to ascertain, through personal knowledge, that Vee Pak or its employees was the ultimate source of discrimination. *Zollicoffer,* 335 F.R.D. at 159 (noting that named plaintiffs' "lack of knowledge [about GSB] is at least mitigated by the fact that they never worked at GSB, and so have no personal knowledge about GSB's conduct").

Certainly, the named plaintiffs' minimal knowledge about this litigation and their maximal deference to their attorneys warrants consideration. And the Court recognizes that Judge Dow has deemed inadequate a named plaintiff with a lack of subject-matter knowledge or knowledge about other defendants in a similar case against MVP. *Pruitt*, 2020 WL 3050330, at *6. But as Judge Ellis noted in the *Gold Standard Baking* case, the named plaintiffs' actions have shown that they are committed to vigorously pursuing their claims against defendants. As in his

case against *Gold Standard Baking*, Zollicoffer has been involved in this case for "several years," has "completed discovery requests, submitted to multiple depositions, completed interrogatories, and stayed in contact with [his] counsel." *Zollicoffer*, 335 F.R.D. at 160. The same goes for Franklin. And as in *Gold Standard Baking*, the reality of this case bears upon the Court's findings. The Court declines to deny certification of this more-than-decade-long litigation solely because the named plaintiffs—low wage workers who understandably lack legal knowledge—do not know enough about a defendant that discriminated against them through another agent. *See id.* The Court therefore finds that the named plaintiffs are adequate representatives.

### B.    Rule 23(b)(3) Requirements

#### 1. Predominance

To meet the requirements of a 23(b)(3) class, plaintiffs must show that the common questions it identifies predominate over individual claims. Importantly, predominance does not require that individual questions be absent; "[t]he rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815. Plaintiffs demonstrate predominance "if 'a failure of proof on the [common questions] would end the case' and the whole class 'will prevail or fail in unison." *Bell*, 800 F.3d at 376 (quoting *Amgen*, 568 U.S. at 460). The key question to ask when considering predominance is whether "adjudication of questions of liability common to the class will achieve economies of time and expense." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015).

As with commonality, this Court has already found when preliminarily certifying the ASI's settlement class, that the common issues in this case predominate over individualized inquiries. The Court continues to find that the existence of a staffing agency's company-wide

policy of steering African American workers away from Vee Pak is a key part of every class member's discrimination claim. *Lucas*, 2017 WL 6733688, at *7. "Although individualized issues may impact the amount of damages each class member is entitled to, that does not 'undermine the fact that the fundamental question that predominates is a common question.'" *Id.* (quoting *Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 223-24 (N.D. Ill. 2014)). It would clearly save resources to litigate in one proceeding the questions of whether a common discriminatory policy existed and whether Vee Pak required that its workers have any qualifications, rather than having to make that determination in hundreds of cases. *See Chicago Tchrs. Union*, 797 F.3d at 444.

Defendants argue otherwise, again invoking *Comcast*. According to the defendants, individualized inquiries as to liability cannot, by definition, predominate when a plaintiff must prove that discrimination was a but-for cause of an employer's decision. 140 S. Ct. at 1014. As explained in the commonality section, that is wrong, at least in the context of this case. If plaintiffs show that a discriminatory policy existed and that jobs at Vee Pak required essentially no qualifications, "the same evidence will suffice for each [class] member to make a prima facie showing" that the class member was not hired due to race. *Messner*, 669 F. 3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Defendants also argue that the *Teamsters* presumption of liability once a discriminatory policy is proven is only available in Rule 23(b)(2), rather than in Rule 23(b)(3), class actions. Because plaintiffs in Rule 23(b)(2) class actions seek only equitable relief, the argument goes, a district court following *Teamsters* would not have to make the kind of particularized injury determinations inherent in damages actions. That argument understates the individualized inquiries that the Court in *Teamsters* envisioned. The district court in *Teamsters* was not simply

43

instructed to hand plaintiffs certificates stating they were victims of discrimination after a discriminatory policy was found; instead, the Court recognized that the district court had to make "a substantial number of individual determinations" with respect to the scope of the remedy in step two. *Teamsters*, 431 U.S. at 371-72. That process would "necessarily involve a degree of approximation and imprecision." *Id.* at 372. Such individualized inquiries are similarly present when determining the scope of a plaintiff's injuries and measuring them in the form of damages. The Court sees nothing inherent in individualized damages inquiries that would foreclose its application to a *Teamsters*-like framework, especially when *Teamsters* also envisioned individualized inquiries in fashioning equitable remedies.

Plaintiffs' argument, moreover, ignores Seventh Circuit precedent. The Seventh Circuit has never held that classes of plaintiffs seeking damages in employment discrimination cases cannot be certified under Rule 23(b)(3) because those cases raise too many individualized inquiries. To the contrary, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (collecting cases). In particular, if an employment practice "is determined to be discriminatory, individualized remedies and damages may have to be determined for each plaintiff or perhaps for subclasses of plaintiffs," but that does not preclude certification. *Chicago Tchrs. Union*, 797 F.3d at 444. The Court finds that predominance is satisfied.

### 2. Superiority and Manageability

Under Rule 23(b)(3), a claimant must also show that a class proceeding is superior to another approach. If "resolving Plaintiffs' claims through a class action would be more efficient than proceeding with hundreds of individual suits," this requirement is satisfied. *Porter v. Pipefitters Ass'n Loc. Union 597*, 208 F. Supp. 3d 894, 912 (N.D. Ill. 2016)

As this Court has held previously when preliminarily certifying the ASI class, "separate lawsuits by the individual class members "would needlessly require multiple courts to resolve the same liability issues." *Lucas*, 2017 WL 6733688, at *8. The Court adheres to that assessment. It would be extremely inefficient for the Court to determine, in separate individualized proceedings, whether the defendants engaged in a discriminatory policy that applied to all class members. *See Chicago Teachers Union*, 797 F.3d at 444. And as the Court has also previously noted, a class action device is superior when, as here, class members' individual claims are too small to incentivize class members or their counsel to vindicate them. *Lucas*, 2017 WL 6733688, at *8. This is so even considering, as defendants argue, that various types of damages and attorney's fees are available in § 1981 cases. Proving the existence of an unwritten rule is no easy feat. Class counsel have gone to great lengths during this years-long litigation, deposing scores of witnesses and engaging an expert, to unearth evidence of a discriminatory practice. Defendants cannot seriously contend that individual recovery on a § 1981 action—even with no backpay damages cap—would sufficiently incentivize an individual plaintiff to pursue such a difficult task.

Finally, the defendants argue that individualized damages inquiries will render this case unmanageable. The Court rejects that argument again. First, the Court is hopeful that the parties will be able to finagle a method of optimizing the damages inquiry, should the defendants' liability be established. "Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts." *Arreola v. Godinez*, 546 F.3d 788,

801 (7th Cir. 2008).[17] Of course, a district court may always, pursuant to its discretion, decide that when individualized issues common to a class are resolved, the remaining damages determinations become unruly. *See Riffey v. Rauner*, 910 F.3d 314, 319 (upholding district court's decision not to certify class of union workers seeking dues refunds after liability issue was resolved by Supreme Court). But at this point, especially since plaintiffs claim that assignments to Vee Pak were regularly available and did not depend on eligibility requirements, the Court expects the damages determinations to be tame enough to allow for certification.

In any event, even if the Court must conduct an individualized damages inquiry as to every class member, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012). The class members' claims involve the same practice by all of the defendants—the failure to assign African Americans work at Vee Pak due to their race. Plaintiffs' allegations survive only if plaintiffs prove that defendants acted pursuant to an unlawful discriminatory policy The Court sees no downside to determining, on a class-wide basis, whether that practice existed. *Id.* Plaintiffs have therefore satisfied the requirements of Rule 23(b)(3).

## C.    Ascertainability and Class Period

In addition to meeting Rule 23's explicit requirements, a class must be ascertainable. *Mullins*, 795 F.3d at 657. To satisfy this requirement, the class must be defined clearly, using objective criteria that are not based upon success on the merits. *See id.* at 659-60. Vee Pak argues

---

[17] The Court maintains its optimism even though the plaintiffs have not yet determined whether a formulaic mitigation offset to damages in this case is possible. *See* Order, Jan. 16, 2018, ECF No. 297. The Court's facilitation of a damages determination at the parties' behest and its rejection of one method of calculating damages does not change the fact that it would be most efficient to determine whether defendants are liable in one proceeding.

that plaintiffs' proposed class definitions are vague because they include "African American laborers who sought work assignments at [one of the staffing agencies] from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during [the class period]." Vee Pak argues that the inclusion of the word "could" adds "significant uncertainty as to who is actually included in the class." Vee Pak Opp'n at 55, ECF No. 572. This is because, as Vee Pak has extensively argued, whether a plaintiff was qualified for work at Vee Pak is a highly individualized inquiry that would involve a significant number of variables.

As the Court has explained, plaintiffs have provided enough evidence for a jury to determine that the Vee Pak positions had no required qualifications, rendering Vee Pak's concern about individualized inquiries of no consequence. In any case, whether it would be difficult administratively to determine whether plaintiffs "could" work at Vee Pak is not the relevant question. *See Mullins*, 795 F.3d at 657. Instead, when determining whether a class is ascertainable, courts ask whether the definition is based on objective, clear criteria. *Id.* at 659-60.

As Plaintiffs correctly note, this Court determined in the context of certifying the settlement class included in the settlement between plaintiffs and ASI, that a class definition almost identical to the ones at issue here was ascertainable. *Lucas*, 2017 WL 6733688, at *4. The Court's approved definition, however, did not contain the clause "from which [plaintiffs] could have been referred to Vee Pak," instead defining the class as "[t]he Class Representative and all African Americans who sought a work assignment through ASI but, on one or more occasion, were not assigned or hired to work at Vee Pak during [the class period]." *Id.* The Court declined to include in the class definition the term "otherwise eligible to work at Vee Pak," noting that the class definition did not set forth any objective eligibility criteria. *Id.*

The phrase "could have been referred," at first glance, seems to be another way of including undefined eligibility criteria into the class definition. This Court has already determined that the inclusion of such eligibility criteria is "essentially meaningless" given the plaintiffs' assertion that no such qualifications existed for Vee Pak jobs. *Id.* Plaintiffs, however, explain that they included "could have been referred" in the class definition to clarify that the definition applies to African American workers who applied to relevant branch offices. For example, only MVP's Cicero office, rather than its Waukegan office, assigned workers to Vee Pak. Only a worker applying for MVP's Cicero's office, according to plaintiffs, "could have been referred" to Waukegan.

The Court disagrees that "could have been referred" clearly denotes office location. That phrase could refer, as plaintiffs guessed, to defendants' eligibility, or the availability of open positions at Vee Pak at the time. This ambiguity could be amended, as plaintiffs propose, by clarifying that the class is limited to plaintiffs who visited the relevant offices during the class period. *See Wilson v. City of Evanston, Ill.*, 14 C 8347, 2017 WL 3730817, at *6 (N.D. Ill. Aug. 30, 2017) (amending overbroad class definition by more precisely defining term). The Court therefore amends the class definition to read, "African American laborers who sought work assignments at [staffing agency] from offices that referred workers to Vee Pak during [the class period], but on one or more occasions were not assigned to work at Vee Pak during the class period." These class definitions would ascertain the group of people that defendants' policies harmed while addressing the concerns about branch locations that plaintiffs raised.

Finally, Vee Pak contests the plaintiffs' class period, arguing that the class must be limited to a time during which the named plaintiffs were seeking work. Vee Pak cites *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2005), in which the Seventh Circuit held that a

class could not be extended to the indefinite future when none of the named plaintiffs' employment extended past 2002. But in *Bolden*, the Court's problem was not intrinsically with the length of the class period. Rather, the plaintiffs had alleged that they were subjected to a hostile and racist work environment, a practice that manifested in myriad ways. *Id.* at 893-95. The Court explained that it could not certify such an "across-the-board" class. *Id.* at 895. Namely, plaintiffs who had experienced one kind of discrimination earlier in the class period could not represent plaintiffs who may have been subjected to a different kind of discrimination later in the class period. *Id.* In this case, by contrast, the plaintiffs allege that all persons in the class were subject to the same discriminatory hiring policy, perpetuated by Vee Pak, throughout the class period (which corresponds to the times plaintiffs contend the staffing agencies sent workers to Vee Pak). During the time that staffing agencies refused to send workers to Vee Pak pursuant to Vee Pak's policy, both named plaintiffs and proposed class members were treated alike. Vee Pak's challenge to the class period is not persuasive.

Ultimately, the Court finds unpersuasive the defendants' attacks on class certification. A jury's finding that a discriminatory policy, rather than Vee Pak's insistence on experienced workers, motivated defendants' hiring and referral decisions, would "eliminate the need for repeat adjudication of this question for determinations of damages or individual injunctive relief. *Chicago Tchrs. Union*, 797 F.3d at 445. The Court finds that the class definitions, as amended by the Court, meet Rule 23's certification requirements. The amended subclasses are certified.

* * *

For the reasons set forth above, the Court denies defendants' motions to strike Dr. Bendick's declaration and testimony [568] [569] and grants plaintiffs' motion for class certification [544]. The Court appoints Plaintiffs Joe Eagle and Michael Keys as Staffing Network subclass representatives, Plaintiff James Zollicoffer as MVP subclass representative,

and Plaintiff Evan Franklin as ASI subclass representative and appoints plaintiffs' counsel, Joseph M. Sellers, Harini Srinivasan, Christopher J. Williams, Christopher J. Wilmes, and Caryn C. Lederer as class counsel.

Date: February 21, 2023

John J. Tharp, Jr.
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOE EAGLE, MICHAEL KEYS, JAMES ZOLLICOFFER, and EVAN FRANKLIN on behalf of themselves and other similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12-CV-09672 |
| VEE PAK, INC., VEE PAK, LLC d/b/a VOYANT BEAUTY, and STAFFING NETWORK HOLDINGS, LLC, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

The claim in this case is straightforward. The plaintiffs, who are African American, allege that Vee Pak, a beauty supply distributor, had a policy that favored hiring Latino workers over African Americans and instructed several staffing agencies to implement that policy when filling temporary positions in its warehouse. They have brought this putative class action, individually and on behalf of other African Americans similarly denied work, against Vee Pak and three staffing agencies that allegedly implemented Vee Pak's discriminatory policy. Two of the staffing agencies have settled the claims against them; Vee Pak and the third staffing agency, Staffing Network, remain in the case. The plaintiffs have moved to certify a class of African American workers who sought, but were denied, work assignments at the three staffing agencies from which they could have been referred to Vee Pak between 2011 and 2015. Vee Pak and Staffing Network oppose certification and have also moved to bar the testimony of Dr. Mark Bendick, a labor economist on whose proffered opinions the plaintiffs rely in their class-certification motion.

Because Bendick's report satisfies the admissibility standards articulated in *Daubert* and Rule 702, the Court denies defendants' motion to strike Bendick's testimony. The Court finds that the defendants' objections to Bendick's report implicate its probative value, rather than its admissibility. The Court further finds that plaintiffs' proposed class satisfies the criteria of Federal Rule of Civil Procedure Rule 23. A class action is the most efficient way to determine whether a company-wide discriminatory policy caused the defendants to disfavor African Americans. Accordingly, the Court certifies the class with an amended definition.

# BACKGROUND

### A. Vee Pak Temporary Staffing Procedures

Vee Pak,[1] a company located in Countryside and Hodgkins, Illinois, operates manufacturing facilities in which workers fill and cap bottles and tubes for personal-care and drug companies. Due to cyclical demand for its clients' products, Vee Pak hired temporary workers through staffing agencies Staffing Network Holdings LLC ("Staffing Network"), Personnel Staffing Group, LLC d/b/a Most Valuable Personnel ("MVP"), and Alternative Staffing, Inc. d/b/a ASI ("ASI") to fulfill client orders during the class period.[2]

During the class period, Vee Pak laborers worked in two shifts, one running from 5:30 a.m. to 3:30 or 4:30 p.m. and one running from 3:30 or 4:30 p.m. to midnight or 2:00 a.m. Nearly all of Vee Pak's temporary workers were assigned to Vee Pak's Countryside manufacturing facility in the far western side of the Chicago metropolitan area. Some staffing-agency employees testified that workers would sometimes decline assignments to Vee Pak. Workers' hesitance was due in part to the time and difficulty required to travel to Vee Pak from Chicago, the low wages, and the grueling nature of the temp positions, which required lifting and standing for long hours.

The parties dispute the level of skills and experience that Vee Pak required of its workers. According to testimony that plaintiffs cite, Vee Pak's production-floor jobs required no formal training or education. All necessary skills could be learned on the job through training. Vee Pak

---

[1] Nominally, there are two Vee Pak defendants: Vee Pak, Inc., and Vee Pak LLC, d/b/a Voyant Beauty. Vee Pak LLC is named only as Vee Pak's successor and its liability, if any, is entirely derivative of that of Vee Pak, Inc. Because of the derivative nature of Vee Pak LLC's liability, no further mention of Vee Pak LLC is required.

[2] As noted in Section G, *infra*, the proposed class period spans from January 1, 2011, up through and including December 31, 2015 for Staffing Network and ASI, and from January 1, 2011, up through and including October 21, 2013 for MVP.

did not require its employees to submit criminal background checks, credit tests, or drug tests. For its part, Vee Pak presents testimony that its managers instructed staffing-agency workers to send experienced, or "regular" workers—workers who had consistently worked at Vee Pak in the past—to help run the production lines. These workers, according to Vee Pak, knew how to do different jobs more efficiently and effectively without supervision, and reduced Vee Pak's availability for less-experienced workers. According to testimony from a Staffing Network employee, dispatchers assigned workers who had prior warehouse experience to Vee Pak, worrying that employees who had never worked in a warehouse could not handle long, demanding shifts.

Plaintiffs present evidence that Vee Pak used the term "regular" worker as a code word for its preferred type of worker: one who is Latino, rather than African American. Some staffing-agency management understood "regular" to mean non-African American. According to plaintiffs, Vee Pak kept a list of "regulars" that it preferred to be assigned to shifts. As certain staffing-agency employees testified, almost all the workers on Vee Pak's list of "regulars" happened to be Latino. Vee Pak's Executive Director, Tom Zwartz, however, stated in an email that Vee Pak "do[es] not order specific individuals, and . . . do[es] not provide long term assignments to specific individuals," but instead requests individuals "with previous experience at Vee Pak." Dec. 2, 2015 Email from Tom Zwartz, ECF No. 585-2. Zwartz later confirmed that his email concerning Vee Pak's assignments of specific individuals reflected official policy.

Unlike the disagreement about worker qualifications and eligibility, the parties dispute little about the logistics of scheduling. All three staffing agencies referred workers to Vee Pak in a similar manner. Vee Pak's master schedulers determined the number of laborers needed each shift, and Vee Pak would communicate those needs to the staffing companies each day. Until

2013, Vee Pak management called dispatchers directly to communicate staffing needs. After 2013, Vee Pak submitted its orders by email. Workers registered for work at the staffing agencies using sign-in sheets. At Staffing Network and ASI, workers would also fill out an application. Dispatchers then assigned the workers to a client company either in person or by calling the workers directly. If a position was available, then a worker would be assigned to a client company like Vee Pak.

During some portion of the class period, some staffing agencies would transport workers to client companies, including to Vee Pak, by van, either directly from the workers' homes or from the staffing agencies. Some workers had to travel directly to the client using their own vehicles or via public transportation. The parties dispute the extent and availability of van transportation at each agency.

As detailed below, multiple staffing-agency employees testified that they were given explicit instructions not to assign African American workers to Vee Pak. Some workers who did receive assignments initially, moreover, were turned away at Vee Pak's door. When workers could not comply with the demands of Vee Pak's manufacturing job or did not follow the instructions included with Vee Pak's training materials, they were designated "Do Not Return," or "DNR." Some testifying staffing-agency employees observed that workers whom Vee Pak designated DNR were disproportionately African American. Other staffing-agency employees testified that Vee Pak turned away African American laborers that the staffing agency brought to Vee Pak.

### B.  Testimony of MVP Employees

Until 2015, MVP operated an office in Cicero, from which it would staff temporary workers to clients, including Vee Pak. MVP referred workers to Vee Pak from 2008 until October 2013.

MVP dispatcher Yessenia Saucedo testified about Vee Pak's and MVP's hiring practices. According to Saucedo, her supervisors and other dispatchers instructed her not to send African American workers to Vee Pak because Vee Pak would send them back.

Other MVP employees testified that MVP also generally avoided referring African American workers to various non-Vee Pak clients. MVP supervisors told dispatchers and onsite employees not to send African American workers to certain clients, sometimes openly, and sometimes using certain code words, like "bilingual" to refer to Latinos and "lazy" or "not bilingual" to refer to African Americans. MVP dispatcher Saucedo testified that, following supervisors' instructions, she falsely told African Americans that MVP was not giving out applications, while making applications available to Latino workers. Another dispatcher, Pamela Sanchez, testified that she was similarly trained to withhold applications from African American workers.

### C. Testimony of Staffing Network Employees

Staffing Network provided workers from its Cicero and Burbank offices to Vee Pak from 2009 to 2015. Most of these workers were referred from Staffing Network's Burbank office, the location of which changed during the class period. According to Staffing Network employees, Vee Pak's needs for workers fluctuated and was based on the type of work available at the time. Depending on the number of workers Vee Pak needed, Staffing Network would send workers from Vee Pak's list of "regulars," then "back up" workers (*i.e.*, workers ones that had previously worked at Vee Pak but not on the "regulars" list), then new applicants, in that order.

Staffing Network branch manager Judy Cruz testified that Staffing Network managers instructed her to refer only Latino workers to Vee Pak when she started working there in 2000. Although Cruz testified that she did not follow those instructions, another Staffing Network employee, Paloma Martinez, testified that Cruz condoned the policy after the employee and

African American workers themselves raised concerns about Vee Pak's racial discrimination. Another Staffing Network witness, who was the branch manager before the class period, testified that Cruz had told him directly that Vee Pak only wanted Spanish-speaking people.

Other Staffing Network employees testified about Vee Pak's discriminatory practices. Former branch manager Dennis Medina testified that in 2007, a Vee Pak supervisor, Staffing Network's president, and another Staffing Network branch manager all told him not to send African Americans to Vee Pak. When Medina attempted to voice disagreement with this policy, Staffing Network management told him to maintain the status quo. This practice appeared to continue beyond Medina's tenure. A Staffing Network dispatcher, Adriana Armendariz, testified that in 2013 and 2014, a branch manager told her to tell a local organization to stop sending African Americans because Vee Pak wanted only Latino workers. Armendariz testified that she would try to send African American employees to Vee Pak despite instructions to the contrary.

Dispatcher Martinez testified that many other employees told her not to send African Americans to Vee Pak, and that a Vee Pak supervisor confirmed these rumors about Vee Pak's preferences. The Vee Pak supervisor told Martinez, in Spanish, that he didn't "want those black people," calling African Americans "lazy." Martinez Dep. at 32-35, ECF. No. 544-27. Martinez stated that she and other employees would defy these instructions and continued to refer African Americans to Vee Pak and other employers. Martinez further testified that employees "knew better" than to follow racist policies because Staffing Network provided them with antidiscrimination training. Martinez Dep. at 52-54, ECF. No. 565-5.

### D. Testimony of ASI Employees

ASI provided referrals to Vee Pak from its Cicero office. ASI's Chairman, Steven Swerdloff, testified that Vee Pak supervisors explicitly told him that they only wanted Latino workers. Vee Pak shift supervisor Juan Montoya told Swerdloff that Vee Pak wanted "young,

good-looking Hispanic females." Swerdloff Dep. at 107, ECF No. 544-4. Another Vee Pak supervisor told Swerdloff that he "wanted Hispanic individuals because the African-Americans never stayed." *Id.* at 108. Swerdloff testified that he followed Vee Pak's discriminatory instructions for fear of losing its business.

ASI employees at other levels of management also described discrimination at the agency. An ASI dispatcher testified that Montoya threatened to take his business elsewhere if ASI did not provide Vee Pak with "his kind of people." Gonzalez Dep. at 26, ECF No. 544-29. The dispatcher reported these comments to Swerdloff, who told her to comply with Montoya's instructions. ASI's President during the class period, Kyle Carstensen, testified that Montoya asked "[w]hat [he was] supposed to do with all [these] people" after observing that a large number of African American workers referred from ASI checked in at Vee Pak. Carstensen Dep. at 153-54, ECF No. 544-31. An ASI Office Manager, Julie Tracey, also testified that she believed ASI was following a discriminatory practice to please Vee Pak.

### E.  Named Plaintiff Testimony

Joe Eagle and Michael Keys are African American workers who seek to represent the Staffing Network subclass. Eagle first sought work at Staffing Network in March 2011. During his first visit, he completed an application and was told to return the next morning. This began a pattern of Eagle arriving at Staffing Network early in the morning, signing in, and waiting for hours to no avail. While waiting, Eagle often observed that Staffing Network assigned Latino workers, who arrived at Staffing Network in vans that the staffing agency provided, to Vee Pak. Eagle did not, however, observe any African American workers on a van destined for Vee Pak. Eagle's work history and testimony reflects that from March to October 2011, he received some work assignments from other Staffing Network clients, though he was never assigned to Vee Pak. Eagle found full time employment in 2012.

8

Keys sought work from Staffing Network around the same time as Eagle, in September 2011. Even though Staffing Network told Keys that it only accepted new applications two days a week, Keys observed new Latino workers successfully obtain work on other days of the week. Like Eagle, Keys testified that he was consistently among the first workers to sign in at Staffing Network, but that the agency did not give him an assignment for two weeks. Like Eagle, Keys also testified that Staffing Network assigned him to a few of its clients but never to Vee Pak. Keys' work history records reflect that Staffing Network sporadically assigned him work between September 2011 and January 2012. Also like Eagle, Keys observed Staffing Network sending out Latino workers while he was waiting for work. He discussed with other African American workers his and their sense that they were not receiving assignments from Staffing Network at the same rate as Latino workers. Keys stopped looking for work at Staffing Network in January 2012, after he started attending vocational school and college.

James Zollicoffer testified that he experienced similar treatment to Eagle and Keys at Staffing Network, although outside of the class period (in 2009 and 2010). Seeking to represent the MVP subclass, Zollicoffer also testified to MVP's discriminatory treatment during the class period. That testimony parallels his, Eagle's and Keys' testimony about Staffing Network. After Zollicoffer moved to Chicago in the summer of 2009, he sought work at MVP's Cicero office. The first time he came into that office, he signed in and was told to come back the next day. Although Zollicoffer returned to the office early the next morning, Staffing Network did not assign him work. Zollicoffer testified that on multiple occasions in 2009, he would travel to MVP's Cicero office during the early morning hours on foot, seeking assignment for temporary work. He further testified that he observed MVP assign Latino workers to clients on days when he was waiting for work for multiple hours. Zollicoffer unsuccessfully sought work from MVP

again in 2012 and 2013, visiting the office in 2013 and calling the office a couple of times in those years.

Evan Franklin testified to similar treatment from ASI. She first sought placements at ASI's Cicero office in September 2014. Franklin continued to seek assignments from ASI on numerous occasions, indicating that she was available and that she had no work limitations. When Franklin was actively seeking work, she would call ASI or visit the office. Like the other plaintiffs, Franklin received sporadic work placements over a period of several months, but was never placed at Vee Pak. And like the other plaintiffs, she observed that ASI assigned Latino workers, but not African Americans, to work when she visited the ASI offices in person.

### F.  Bendick Declaration

Plaintiffs have submitted the testimony of Dr. Marc Bendick, Jr., Ph.D., to supplement the witness testimony concerning MVP's hiring practices. Bendick performed a statistical analysis of the relevant labor market that purports to find a shortfall of staffing-agency placements of African American workers at Vee Pak. Specifically, Bendick compared his expected representation of African Americans eligible to work at Vee Pak to Vee Pak's actual hiring practices. Analyzing each staffing agency separately, Bendick first determined the expected representation of Non-Hispanic African Americans ("NHAA"s), measured by the expected proportion of laborer pay that each staffing agency would invoice to Vee Pak.

To find the expected representation of NHAAs, Bendick first determined the "reasonable recruitment area," or relevant labor market, for each staffing agency. From staffing-agency invoices, Bendick obtained the addresses of all the workers whom each staffing agency employed during the class period, whether those workers were assigned to Vee Pak or another client. Bendick then located each address in a Public Use Micro Data Area ("PUMA"), the smallest continuous geographic unit containing an average of 100,000 people for which the U.S.

10

census bureau releases data. Bendick followed Census bureau data practice by using PUMAs based on the 2000 decennial census for all census data collected before 2012 and PUMAS based on the 2010 decennial census for all census data collected beginning in 2012 or later.

Next, for both the 2000 and 2010 decennial census PUMAS, Bendick ordered each PUMA in descending order, beginning with the PUMA with the highest number of addresses and ending with the PUMA with the lowest number of addresses. Bendick included in his analysis only the PUMAs that accounted for 95 percent of the addresses that he collected; he stopped counting PUMAs once 95 percent of addresses were accounted for. The remaining PUMAs constituted each staffing agency's reasonable recruitment area.

Bendick then determined the percentage of all the workers living in each PUMA who were likely to be qualified for and interested in Vee Pak referrals. To do that, Bendick counted individuals who answered in the yearly census that they were in the Civilian Labor Force (*i.e.*, actively seeking work), had no college degrees, and earned less than median earnings for the Chicago metropolitan area.[3] Bendick then calculated the percentage of those workers that were NHAAs. According to Bendick, this number gave him the expected representation of NHAAs that would be interested in working for Vee Pak in each PUMA for each year. After adding up these percentages for each class-period year using both the 2000 and 2010 PUMAs, Bendick weighted the proportion of data collected under each type of PUMA. Following standard statistical practice, Bendick calculated a confidence interval, or range in which a figure can be considered accurate with 95 percent certainty, for each of the figures reflecting NHAA representation.

---

[3] The Census Bureau's American Community Survey only releases data reflecting five-year periods each year. To analyze each class period year, Bendick used the census data set for which the year was the median. For example, in 2011, the relevant census data that Bendick examined was the data set spanning 2009-2013, which was issued in 2013.

Finally, Bendick determined the actual percentage of workers assigned to Vee Pak from the staffing agencies who were NHAAs. Because the workers' races were not provided with the invoices from which Bendick procured the addresses, he employed a "geocoding" technique to estimate actual race representation for each agency. Through geocoding, Bendick used Census data to determine the probability that a person living in an address within a Census block was a certain race (based on the racial demographic of the block). Bendick then applied the probability that a worker was a certain race to the pay invoiced for that worker. Using that number, Bendick estimated the percentage of pay that each staffing agency invoiced to Vee Pak which was attributable to NHAAs.

To determine whether there was a shortfall in Vee Pak's hiring of African Americans, Bendick calculated the difference between the actual representation and the expected representation of African Americans for each year (as measured by percentage of worker pay). Bendick found a 20.7% shortfall in MVP NHAA worker pay, a 29.4% shortfall in Staffing Network NHAA worker pay, and a 27.4% shortfall in ASI NHAA worker pay during the class period. Bendick contends that the shortfall for the three agencies was "statistically significant beyond a shadow of a doubt." Bendick Decl. ¶ 9(e), ECF No. 570-2. The number of standard deviations, or a measure of how far a value set differs from an expected value, for all five years, is 177. According to Bendick, the probability of observing such a shortfall by chance is less than one in a trillion.

### G. Procedural History

Plaintiffs originally sued Vee Pak, ASI, MVP, and Staffing Network in 2012, alleging that the defendants violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by engaging in racially discriminatory hiring practices. Since then, some of the named plaintiffs have changed, and plaintiffs are no longer pursuing a claim based on defendants' violation of

Title VII. Beyond that, plaintiffs' allegations remain largely the same as they were at the start of the lawsuit. In 2014, this Court denied defendants' motion to strike class allegations and to dismiss the complaint, holding that the proposed classes facially met the requirements of Rule 23. *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014). This Court approved a settlement between plaintiffs and ASI in 2018, holding that the proposed ASI settlement class also met Rule 23's requirements. Order of Final Approval of Partial Class Settlement between Plaintiffs and Defendant Alternative Staffing, Inc. Only, ECF No. 355; *see also Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *1 (N.D. Ill. Dec. 20, 2017) (granting preliminary certification to ASI settlement class).

This Court has also recently issued a preliminary settlement approval order between Plaintiffs and Personnel Staffing Group, the company doing business as MVP. Preliminary Approval Order of Partial Settlement with PSG, ECF No. 637. That order was issued in conjunction with Judge Ellis's recent preliminary approval between Personnel Staffing Group and plaintiffs in *Zollicoffer v. Gold Standard Baking*, No. 13-cv-01524. In that case, a class represented by Zollicoffer alleged that MVP and another client company engaged in similar discriminatory hiring practices. Judge Ellis certified that class in 2020. *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 133 (N.D. Ill. 2020). A final approval hearing in this case is scheduled on April 7, 2023.

Plaintiffs move to certify three subclasses pursuant to the below definitions, with the following named plaintiff representatives:

> Staffing Network subclass (represented by Joe Eagle and Michael Keys):
> African American laborers who sought work assignments at Staffing Network from which they could have been referred to Vee Pak, but on one or more occasions were not assigned to work at Vee Pak during the period of January 1, 2011, up through and including December 31, 2015.

MVP subclass (represented by James Zollicoffer): African American laborers who sought work assignments at MVP from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011, up through and including October 21, 2013.[4]

ASI Subclass (represented by Evan Franklin): African American laborers who sought work assignments at ASI from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011, up through and including December 31, 2015.

## DISCUSSION

Rule 23 requires the Court to perform a "rigorous analysis" when deciding whether to certify a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). At the class-certification stage of litigation, the Court must thread the needle between two countervailing considerations. On one hand, "Rule 23 does not set forth a mere pleading standard," and a party seeking class certification "must be prepared to prove" that the proposed class meets all of the Rule's prerequisites. *Id.* at 350. The class-certification inquiry may therefore overlap somewhat with the merits. *Id.* at 351. On the other hand, this Court may only examine the merits to the extent that they are relevant to Rule 23's requirements; the class-certification stage is not the time for "free-ranging merits inquiries." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).

When faced with a challenge to expert testimony at the class-certification stage, the line between merits inquiries and proof of certification blurs. To guide district courts, the Seventh Circuit has held that "a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class-certification motion" when that report is

---

[4] Through discovery, the plaintiffs concluded that the last date that MVP issued checks to laborers for Vee Pak assignments was October 21, 2013. Because MVP stopped assigning workers to Vee Pak on that earlier date, the end of the MVP class period differs from the Staffing Network and ASI class periods.

"critical" to certification. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010).

Courts must err on the side of addressing expert testimony first; if any information is even

relevant to any of Rule 23 requirements, a court must address a challenge to an expert's

reliability. *Id.; see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir.

2012). Here, defendants move to strike Dr. Bendick's declarations and testimony. His report

purports to establish a statistical shortfall between the expected and actual representation of

African Americans in referrals to Vee Pak. Such information is undoubtedly relevant to the

question of whether the defendants enforced a discriminatory policy; the policy's expected effect

is probative of its existence. The Court therefore concludes—and the parties agree—that it

should resolve the defendants' motions to strike Dr. Bendick's expert report before addressing

class certification.[5]

## I.     Motions to Strike Dr. Bendick's Declaration and Testimony

Both the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509

U.S. 579 (1993) and Federal Rule of Evidence 702 govern the admissibility of expert witness

testimony. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017).

Pursuant to that authority and its role as a gatekeeper of evidence, the Court must determine

"whether the witness is qualified; whether the expert's methodology is scientifically reliable; and

whether the testimony will assist the trier of fact to understand the evidence or to determine a

---

[5] In a sur-reply to the class-certification motion, the defendants also objected to the plaintiffs' introduction of the Declaration of Christopher Williams and its supporting summary exhibits in their reply brief. The Court will not, however, consider Vee Pak's Federal Rule of Evidence 1006 objections at this juncture. The Williams Declaration is not "critical" to certification; indeed, the Court did not consider it when determining whether to certify the class. *Am. Honda Motor Co.*, 600 F.3d at 815. The defendants may reassert these arguments should the plaintiffs seek to introduce the declaration and supporting summaries as evidence during a later stage of litigation. At this point, however, the Court finds it premature to resolve this admissibility issue.

fact in issue." *Id.* at 779 (cleaned up). The first and third inquiries are not at issue in this case; the defendants do not meaningfully contest Bendick's qualifications, and his findings of a shortfall in hiring African Americans, if reliable, would render it more likely that a discriminatory policy existed.[6] Like the parties, the Court therefore focuses its inquiry on the reliability of Bendick's methodology.

Rather than scrutinizing the accuracy of the expert's conclusions, the Court evaluates "the soundness and care" of the expert's analysis. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). "Reliability . . . is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). The proponent of the testimony bears the burden of showing that its proffered testimony meets the admissibility requirements by a preponderance of evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Reliability is a flexible inquiry and is not geared toward any fixed evaluative factors. *See Gopalratnam*, 877 F.3d at 780.

Bendick's basic methodology is not controversial. "Studies in employment discrimination cases typically begin by defining the relevant labor market, and then ask what the results would be for the salient variable . . . if there were no discrimination." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 424 (7th Cir. 2000). That is exactly what Bendick did here. Bendick determined the expected representation of African Americans at Vee Pak by defining the relevant labor market. To do so, he determined the percentage of persons in the reasonable recruitment area

---

[6] In its reply brief, Staffing Network points out that, contrary to plaintiffs' representations, some courts have previously excluded Dr. Bendick's testimony. But the Court does not construe this passing reference as a meaningful challenge to Bendick's qualifications.

who fit certain criteria. Of those persons, Bendick calculated the percentage that were African American. Next, Bendick compared that expected representation to the actual representation at Vee Pak. He then computed the "[t]he 'standard deviation' from the expected norm and indicate[d] how likely it is that race played no part in the decisionmaking" (in this case, extremely unlikely). *Id.* Nevertheless, the defendants argue that Bendick's methodology was unreliable because he failed to consider certain factors it claims were critical to his analysis. The Court considers those arguments in turn.

### A. Consideration of Workers' Commuting Distance

The defendants' principal qualm with Bendick's statistical analysis is his purported failure to consider the commuting distance, and associated costs, of workers' commutes when defining the defendants' reasonable recruitment area. In selecting the PUMAs that constituted his reasonable recruitment area, Bendick used the addresses of employees who had been staffed at any of ASI's, MVP's, or Staffing Network's employer partners during the class period, regardless of whether they had ever been staffed at Vee Pak. Because Bendick's analysis included workers who did not embark upon the commute to Vee Pak, defendants argue that Bendick wholly failed to consider workers' actual commuting distance, rendering his methodology unreliable.

Courts have repeatedly recognized that "the selection of the variables to include in a regression analysis is normally a question that goes to the probative weight of the analysis rather than to its admissibility." *Manpower*, 732 F.3d at 808 (collecting cases). While reaffirming this general principle, the Seventh Circuit has recognized that one variable is "crucial" to defining a market from which an employer would be expected to draw workers. *See E.E.O.C. v. Chicago Miniature Lamp Works*, 947 F.2d 292, 303 (7th Cir. 1991). An expert must consider a worker's interest the job, which is often informed by the difficulty of a worker's commute, when defining

a relevant labor market. *See id.* at 302; *accord Bennett v. Roberts,* 295 F.3d 687, 697 (7th Cir. 2002); *Bolden v. Walsh Grp.*, No. 06 C 4104, 2012 WL 1079898, at *2 (N.D. Ill. Mar. 30, 2012). For that reason, courts have rejected statistical analyses that draw a labor market in an arbitrary manner without factoring in workers' commuting distance. *See Miniature Lamp Works*, 947 F.2d at 302; *Bennett*, 295 F.3d at 697; *Bolden*, 2012 WL 1079898, at *2. The defendants argue that Bendick's construction of his reasonable recruitment area analysis is an example of such arbitrary line-drawing.

The Court disagrees that Bendick drew his reasonable recruitment area arbitrarily. In *Miniature Lamp Works* and *Bennett*, the plaintiffs' experts drew their labor markets based on nothing more than educated guesses. *Miniature Lamp Works*, 947 F.2d at 301-02 & n.8 ("boundaries of the relevant labor market were arbitrarily limited to the City of Chicago" and "considerations of applicant preference were totally ignored"); *Bennett*, 295 F.3d at 697 (rejecting whole state as relevant labor area based on expert's unverified assertion that "it seemed reasonable to expect that the School District would hire applicants from within the state"). By contrast, Dr. Bendick drew his reasonable recruitment area based on staffing-agency invoices, which meant that every data point constituting his recruitment area stemmed from a real person who embarked upon a commute to a staffing agency implicated in this case. Bendick also understood that staffing agencies often provided vans for workers, which supported his choice of data. His reasonable recruitment area may have been somewhat overinclusive, especially given defendants' evidence about the sporadic availability of van transportation, but that does not mean that it was arbitrarily drawn. That Bendick's choice to define the reasonable recruitment area using the addresses of staffing-agency workers "could be challenged as

incomplete or faulty does not make it any less grounded in real data." *See Manpower*, 732 F.3d at 809.

Bendick also culled the far-away outliers from his data set by cutting off PUMAs once he accounted for ninety-five percent of worker addresses, a procedure he testified was "typical" among economists, professional peers, and the reference works that he consulted. Bendick Decl. ¶ 17 n.14, ECF No. 570-2; Bendick Dep. at 169-70, ECF No. 568-2. Defendants argue that Bendick's choice of ninety-five percent (as opposed to some other number), rendered his whole analysis arbitrary, but Bendick explained why he chose that number. The point of the cut-off, moreover, was to render the data set ***more*** accurate by narrowing the area from which employers "usually" draw workers *See Zollicoffer*, 335 F.R.D. at 150 ("Including the PUMAs that account for less than 5% of referrals would do little to define the area from which an employer usually draws workers.")[7]. No statistical analysis, especially one that measures a geographic area as nebulous as a labor market, can perfectly define where an employer "usually" recruits. As Bendick testified, he had to "draw a line somewhere" and in doing so, he relied on professional consensus. Bendick Dep. at 173, ECF No. 568-2. Whether he drew that line correctly is a matter for the jury, not the Court to determine. *Manpower*, 732 F.3d at 809.

The Court further disagrees that Bendick entirely failed to consider commuting distance in this analysis. Instead of disregarding distance altogether, Bendick described why considering distance as a matter of mileage from Vee Pak was not an appropriate proxy for interest in temporary work. First, Bendick explained that any account of commuting times without considering race would underestimate the willingness of African Americans to accept positions

---

[7] The defendants in *Gold Standard Baking* also moved to strike Bendick's expert testimony, although on different grounds. *Zollicoffer*, 335 F.R.D. at 145-52. Judge Ellis denied that motion, reasoning that his estimates were sufficiently reliable for the court to consider as part of plaintiffs' class-certification motion. *Id.* at 152.

with far-away employers. In support, Bendick referenced his own independent research, which examines the disproportionately long commuting times of African Americans to staffing agencies located in Chicago. He also explained, citing the "professional standard" codified in the Office of Federal Contract Compliance Programs' regulations, that considering distance from Vee Pak would bake racial inequities into the analysis. Bendick Decl. ¶¶ 13 n.10, 26, ECF No. 570-2 (quoting 41 CFR § 60-2.14(e)). Assuming plaintiffs' allegations of racial discrimination are true, if Bendick based his findings only on PUMAs reflecting addresses of Vee Pak employees, those addresses would be disproportionately drawn from areas in which African Americans do not live. *See* 41 CFR § 60-2.14(e) ("[A] contractor may not draw its reasonable recruitment area in such a way as to have the effect of excluding minorities or women."); *see also Mister v. Illinois Cent. Gulf R. Co.,* 832 F.2d 1427, 1433-34 (7th Cir. 1987) (noting that "[d]iscrimination itself produces a statistical finding of no discrimination" if model based on distance ignores differences in racial demographics in different areas).

Finally, Bendick explained that accounting for a worker's commute would also require the introduction of too many variables, such as cost, travel time, and the availability of public transportation and ridesharing. Merely considering distance as a matter of mileage, according to Bendick, would reduce, rather than increase accuracy, so excluding the variable altogether would render more reliable results. In his rebuttal declaration[8], Bendick provided examples in which staffing-agency workers living in PUMAs that were located further from Vee Pak supplied fewer

---

[8] Defendants also argue that Bendick's rebuttal improperly advances plaintiffs' "case in chief." Staffing Network Memo in Supp. of Mot. to Strike at 13-14, ECF No. 568; Vee Pak Memo in Supp. of Mot. to Strike at 26-27, ECF No. 570. The Court disagrees. The Court already gave Plaintiffs leave to file Bendick's rebuttal because it found that the report responded to defendants' experts' report. Order Granting Plaintiff's Leave, ECF No. 540. Bendick's rebuttal attempted to address the flaws in defendants' experts' criticisms and apply those criticisms to his own analysis, both proper issues to address in a rebuttal.

wages invoiced to Vee Pak than ones that were closer to Vee Pak (and vice versa). With specific examples, Bendick explained why measuring distance as a matter of milage is an inartful measure of worker interest in Vee Pak.

Far from basing his opinion "only on his *ipse dixit*," Bendick connected the data he employed (or in this case, declined to employ), to the opinion he offered. *Manpower*, 732 F.3d at 806 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Instead of "totally ignor[ing]" worker interest as measured by distance from Vee Pak, Bendick backed up his reasoning with facts and data. *Cf. Miniature Lamp Works*, 947 F.2d at 301. To be sure, none of Bendick's explanations for rejecting the incorporation of distance from Vee Pak in his analysis are ironclad. As the defendants' experts show, Bendick's analysis includes PUMAs from which workers would have to embark upon unreasonably long commutes. But Bendick's explanation for his choices is nonetheless rationally related to his opinion, rendering his opinion admissible, notwithstanding an opposing expert's disagreement. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000). Defendants may attack Bendick's explanations for his exclusion of distance on cross examination, but it is not for the Court to reject them at this stage. *See Schultz*, 721 F.3d at 432.

The defendants' experts offer competing variables that they claim would better account for workers' interest in Vee Pak as measured by their commuting costs. That defendants' experts thought of other methodologies does not render Bendick's methodology automatically unreliable. "[I]t is often the case that experts reach conflicting conclusions based on applying different but nevertheless reliable methodologies to a set of partially known facts." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 847 (7th Cir. 2017). Tellingly, none of the defendants'

experts cite to any professional consensus or reference point that guides how an expert must determine a worker's interest in the labor market.

For example, Vee Pak's experts Dr. Edward Anderson and Dr. Catherine Massey measured the expected "intensity of interest" in commuting to Vee Pak and to each staffing agency in each PUMA. Anderson and Massey Decl. ¶ 30 & n.12, ECF No. 570-6. This "intensity" was based on ACS survey response data and measured by the percentage of respondents who expected to choose a commute from the centroid of a PUMA to Vee Pak or the relevant staffing agency as compared to alternative work or a current job. Although Anderson and Massey reference undefined "economic principles" that "require" the inclusion of their chosen variables in the analysis, that does not give the Court a sufficient basis to conclude that their method is the economic gold standard, or even that it is more reliable than Bendick's. *Id.* ¶ 23. Anderson and Massey's testimony certainly does not go so far as to show that Bendick's exclusion of the variables that they chose was based on mere say-so or speculation. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

To this point, Bendick explained in his rebuttal why he thought Anderson and Massey's approach was wrong—namely, that it failed to incorporate racial differences in willingness to travel and excluded unemployed people, the very people most likely to seek temporary work, from the analysis. The Court is thus left with a battle of expert conclusions, one that the defendants cannot win using *Daubert* as a weapon. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1055 (N.D. Ill. 2022) (denying *Daubert* motion, where "both sides offer[ed] seemingly reasonable arguments, supported by testimony from well qualified and respected economists, concerning why [their conclusions were] appropriate"). Without a firm basis for concluding that Bendick ***must*** account for certain factors that pertain to a worker's

commute to render his methodology reliable, defendants' attacks on his methodology ring hollow.[9]

### B. Other Factors

Defendants' remaining criticisms of Dr. Bendick's analysis focus on the quality of the data that Bendick used and other variables that Bendick omitted. As discussed below, all of these arguments implicate the weight, rather than the admissibility, of Bendick's testimony.

The defendants argue that Bendick used data from the wrong agency offices in his analysis. According to Staffing Network, Bendick included data from Staffing Network's Cicero office, even though witness testimony reflects that Staffing Network almost never sent workers from that office to Vee Pak. And Vee Pak argues that Bendick erroneously included workers from ASI's Aurora office in his model even though ASI's President testified that workers were not sent to Vee Pak from that office either. Plaintiffs counter that exclusion of this data either would not have made a difference in Bendick's analysis (Aurora) or would have incorporated racial discrimination into the analysis by excluding an office located near a predominantly African American neighborhood (Cicero). These arguments are precisely the type that are well

---

[9] To be clear, the Court does not impose upon defendants the burden of presenting a competing statistical model to refute Bendick's conclusion. The plaintiffs make much of *Mister v. Illinois Central Gulf Railroad Company,* 832 F.2d 1427 (7th Cir. 1987). In that case, a plaintiff class of African American railroad workers established, through statistical evidence, a high probability of disparate treatment in violation of Title VII. *Id.* at 1429. The Seventh Circuit held that the defendant did not meet its burden of proving, at trial, that its ***own*** race-neutral explanation for hiring, that it wanted to hire workers close to the railroad, explained the disparity. *Id.* That case does not, as the plaintiffs argue, state that a party moving to strike an expert bears the burden to show that an omitted variable accounts for an opposing expert's result. Indeed, the Seventh Circuit has squarely held, after *Mister*, that a defendant "need not in include in its own statistical analysis variables that it asserts are missing from the plaintiff's analysis." *Miniature Lamp Works*, 947 F.2d at 301. The Court's point is rather that the variable that defendants assert is crucial—measuring the relative cost of workers' commute to Vee Pak—was not ignored, but rather considered, in Bendick's analysis.

suited for a jury's consideration; "[w]hether [the expert] selected the best data set to use . . . is a question for the jury, not the judge." *Manpower*, 732 F.3d at 809.

Defendants' arguments that Bendick used the addresses of workers from the wrong time periods to build his PUMAs are similarly unpersuasive. Staffing Network argues that Bendick included some data from residents working at Staffing Network outside the class period in fashioning his PUMAs. It also challenges Bendick's use of addresses of workers who were invoiced late in the class period when determining the reasonable recruitment area for earlier years. Those choices may be questionable, but they are matters of data selection and do not bear upon admissibility. Indeed, Judge Ellis rejected almost identical arguments in the *Gold Standard Baking* case. Although Judge Ellis recognized defendants' valid criticisms about Bendick's failure to vet the data files that counsel provided, she noted that those "critiques go to the weight of Dr. Bendick's analysis, not its admissibility." *Zollicoffer*, 335 F.R.D. at 148-49.

Finally, the defendants argue that in fashioning the expected representation of African Americans in each PUMA, Bendick failed to consider a host of factors that would influence a worker's interest in Vee Pak. Bendick erred, they argue, in assuming that every worker with a certain level of education in the work force making below the median income would be interested and available for a job at Vee Pak. For instance, Staffing Network argues, that individuals with certain occupations making less than a median income, such as nurses and librarians, would not consider low wage temporary work at Vee Pak desirable, citing its expert, Dr. Paul White.[10] Similarly, Vee Pak argues that Bendick should have incorporated other factors

---

[10] Notably, White did not explain whether "restrict[ing] the population to occupations that may be more likely to be interested in a laborer job" is an accepted methodology or whether it is standard practice to do so. White Decl. at 24-25, ECF No. 568-10. He simply opined that Bendick's expected representation included occupations that would be unlikely to be interested in Vee Pak. *Id.* at 3.

such as a worker's access to and availability of public transportation, the cost for gas or bus tickets, and employees' shift preferences.

It can be argued, to be sure, that Bendick's data inflates the number of workers who might be interested in a temporary position in Vee Pak's warehouse, but that argument is also best reserved for a jury.[11] Even though Bendick's estimate of each PUMA's expected representation of NHAA's is, to put it mildly, "rough," the Court must "let the jury determine how the uncertainty about [the expected representation of African Americans in each PUMA] affected the weight of [Bendick's] testimony." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766-67 (7th Cir. 2013). Defendants' criticisms challenge Bendick's choice of variables in determining worker interest, a choice that, again, concerns the probative value rather than the admissibility of testimony. *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of City of Chicago*, No. 12 C 10311, 2020 WL 914881, at *16 (N.D. Ill. Feb. 25, 2020).

This is so even considering the Seventh Circuit's emphasis on the interest of potential applicants in a labor-market analysis. *See, e.g.*, *Bennett*, 295 F.3d at 697. An expert cannot wholly ignore an applicant's interest in the job, but Bendick did not do so, and nothing in the caselaw dictates a formula an expert must follow or which specific individual variables an expert must use. For instance, the court in *E.E.O.C. v. Consolidated Service Systems*, 777 F. Supp. 599,

---

[11] The defendants' criticisms of Dr. Bendick's interest criteria also overstate the significance of the criteria used to define the pool of people in each PUMA who were interested in temporary work at Vee Pak. Those criticisms address only the effect of the criteria used on the **total number** of persons interested in Vee Pak rather than on the **percentage** of NHAAs within that group. Further, to the extent that the defendants complain that Dr. Bendick's criteria are overinclusive, they may understate the degree of discrimination. The defendants complain, for example, that Bendick's pool is too broad because it would include "nurses and librarians" who presumably would not be interested in temporary work at Vee Pak. But if, hypothetically, "nurses and librarians" are disproportionately white, excluding them from the criteria used to determine the pool of interested workers would increase the expected percentage of "interested" NHAAs in each PUMA, consequently increasing the delta between expected and actual representation of NHAAs at Vee Pak.

606 (N.D. Ill. 1991), *aff'd*, 989 F.2d 233 (7th Cir. 1993), found an expert's statistical evidence lacking where the expert "failed to take into account those persons who would not desire a position at Consolidated given the particular working conditions offered."[12] But here, Bendick did consider the desirability of a position at Vee Pak, reasonably if imperfectly, by limiting the pool of expected representation through median income, position in the labor force, and level of education.

It would be impossible for an expert to include every conceivable variable pertaining to worker interest—such as the vagaries of public transportation schedules or workers' level of comfort with waiting alone at a bus stop—in a labor market analysis. This impossibility does not, as defendants imply, mean that a labor market that considers workers' interests can never be reasonably approximated. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("[I]t is clear that a regression analysis that includes less than 'all measurable variables' may serve to prove a plaintiff's case."). Instead, as long as an expert uses a reliable methodology, whether the expert used the right variables and the conclusions that can be drawn from those limited variables is a question for the jury. *Smith v. Ford Motor Co.,* 215 F.3d 713, 718-19 (7th Cir. 2000).

In sum, Bendick considered African Americans' potential interest in the job, drew his relevant labor market based upon real data, and applied a regression methodology that courts have repeatedly endorsed. Although his results are not bulletproof, the Court finds that any deficiencies can be addressed on cross examination. Defendants' motion to strike Bendick's testimony is therefore denied.

---

[12] The Court notes, moreover, that *Consolidated Systems* tested the sufficiency of evidence after a bench trial, rather than ruling on the admissibility of evidence on a *Daubert* motion. 777 F. Supp. at 609-10. The Court does not imply, by ruling Bendick's declaration admissible, that it would sufficiently or even substantially prove plaintiffs' case on the merits.

## II.     Motion for Class Certification

To certify a class, the Court must first consider whether it meets the requirements of Rule 23(a). That section requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In interpreting the requirement that a class be "defined," Courts have added that a class must be ascertainable, or "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). If a proposed class meets Rule 23(a)'s prerequisites, a court must examine whether one of Rule 23(b)'s provisions is satisfied. Here, plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23(c)(5) further provides that, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23]." Plaintiffs accordingly seek certification of each proposed subclass under Rules 23(b)(3) and (c)(5).

### A.     Rule 23(a) Requirements

#### 1. Numerosity

Defendants do not dispute that the proposed subclasses satisfy Rule 23(a)'s numerosity requirement. Plaintiffs estimate that the MVP class will have 2,896 members, the Staffing Network class will have 5,889 members, and the ASI class will have 4,791 members. Those numbers far exceed the threshold that courts have held would make "joinder impracticable." Fed. R. Civ. P. 23(a)(1); *see, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9

(7th Cir. 1969) (forty people sufficiently numerous); *Phillips v. Waukegan Hous. Auth.*, 331 F.R.D. 341, 350 (N.D. Ill. 2019) (same). The Court finds the numerosity requirement satisfied.

### 2. Commonality

Rule 23(a) next requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting cases). Plaintiffs allege that employees at the staffing-agency offices declined to assign African Americans, adhering to the same assignment practices and pursuant to discriminatory policies over which the employees had no discretion. *See Lucas*, 2017 WL 6733688, at *5. When this Court preliminarily approved the ASI settlement class and when it denied the defendants' motion to strike class allegations, it held that the question of whether a discriminatory policy of steering African Americans away from Vee Pak existed satisfies the commonality requirement. *Id.* ("A company-wide discriminatory practice that was applied to all class members is sufficient to establish commonality."); *Lucas*, 68 F. Supp. 3d at 881 ("[A discriminatory] policy would be a common cause of all the class members' injuries."). Judge Ellis concluded the same in the *Gold Standard Baking* case. *Zollicoffer*, 335 F.R.D. at 157. The defendants' arguments here do not persuade the Court to conclude otherwise.

Defendants argue that the Supreme Court's recent holding in *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), changes the calculus of this Court's previous decisions in this case and Judge Ellis's decision in *Gold Standard Baking*.[13]

---

[13] This Court decided to certify ASI before the Supreme Court issued *Comcast*, and the parties did not brief the impact of *Comcast* before Judge Ellis in the *Gold Standard Baking* case.

In *Comcast*, the plaintiffs argued that at the pleading stage of a § 1981 case, they needed only to allege that racial discrimination was a "motivating factor" rather than the "but-for" cause of the defendant's challenged decision. 140 S. Ct. at 1014. The Supreme Court rejected that argument, holding that plaintiffs alleging discrimination under § 1981 "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Id.* at 1019. This burden, the Court held, "remains constant" throughout the lawsuit. *Id.* at 1014-15.

According to the defendants, *Comcast* precludes § 1981 plaintiffs, like the ones in this case, from proceeding under the framework that the Supreme Court established in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Under that approach, a class of plaintiffs alleging a pattern or practice of discrimination may submit for class-wide resolution the question of liability, or whether the defendants indeed operated under a discriminatory policy. *Teamsters*, 431 U.S. at 360-61. Courts then determine the scope of individual relief in later, individualized proceedings in which the defendant would bear the burden to show that "the individual applicant was denied an employment opportunity for lawful reasons." *Id.* at 361. The plaintiffs propose a similar approach in this case: a class-wide action to determine whether the defendants had a policy of steering African American workers away from Vee Pak, followed by later, individualized proceedings to determine the scope of plaintiffs' damages.

After *Comcast*, the defendants contend, a *Teamsters*-based approach to § 1981 cases impermissibly shifts the burden of proof to them. The defendants argue that because each individual plaintiff must prove that the employer would still have hired that plaintiff if not for her race, the question of the defendant's liability does not rise and fall with proof of a common policy. And defendants argue that they cannot bear the burden of proving that they still would

have hired the plaintiffs at the second step of the *Teamsters* framework; that burden falls to plaintiffs.

The Court is skeptical that *Comcast*, a case about mixed-motive pleading standards for § 1981 cases, reaches so far as to foreclose application *Teamsters* framework to establish defendants' liability. *Cf. Chicago Tchrs. Union, Loc. 1, Am. Fed'n of Tchrs., AFL-CIO v. Bd. of Educ. of City of Chicago*, No. 12 C 10311, 2021 WL 1020991, at *16 (N.D. Ill. Mar. 17, 2021) (applying *Teamsters* framework to § 1981 claim post-*Comcast*). After all, when the Supreme Court decided *Teamsters*, a Title VII case, in 1977, the "but-for" standard, rather than the "motivating factor" standard, governed such claims. *Comcast*, 140 S. Ct. at 1017 (explaining that the Supreme Court introduced the motivating factor standard in 1989). The Court in *Teamsters* was not concerned that its burden shifting framework could run afoul of Title VII's then existing but-for causation standard.

Regardless, the Court need not decide whether *Comcast* forecloses a bifurcated approach to establishing but-for causation. Proving this case at trial will not require any burden shifting to establish the defendants' liability. Apart from the common question of the existence of a discriminatory policy, the other important common question in this case is whether there were any real qualifications for the positions open at Vee Pak. Plaintiffs assert, and have provided some evidence to show, that the answer to that question is no: the work available at Vee Pak was unskilled and required no prior experience. And any of Vee Pak's claims that they desired "experienced" or "regular" workers, Plaintiffs, assert, were merely pretexts for racial discrimination.[14]

---

[14] Of course, the defendants vigorously maintain that a workers' level of experience mattered to Vee Pak and have provided their own evidence to refute plaintiffs' claims. Vee Pak's allegedly pretextual labeling of workers as "experienced" or "regulars," however, is part of the

Thus, if a jury finds true plaintiffs' claims that (1) defendants operated under a discriminatory policy and (2) every worker was equally qualified for a position at Vee Pak, it is no defense to liability to assert that a plaintiff was not hired due to that plaintiff's qualifications. Defendants' liability can be resolved in one centralized proceeding. As the Court previously noted when preliminarily certifying the ASI settlement class, there may be a need for subsequent individualized inquiries to determine which class members were actually adversely affected by the discriminatory practice. *Lucas*, 2017 WL 6733688, at *5. "Plaintiffs need not prove that every member of the proposed class has been harmed before the class can be certified;" if each member of the class could have been harmed by a class-wide policy, certification is appropriate. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015). Because plaintiffs' proposed class would allow for class-wide resolution of liability issues under any reading of *Comcast*, defendants' arguments about the effect of that case are unpersuasive.

The defendants also argue that plaintiffs have not proffered "significant proof" of a uniform, general policy that would link their claims of discrimination together. *Wal-Mart*, 564 U.S. at 353. At the class-certification stage, plaintiffs must offer more than allegations about a discriminatory practice. *See id.* at 350. Instead, they must offer evidence to show that the existence of the policy in the case is "*capable of proof at trial* through evidence that is common to the class." *Bell*, 800 F.3d at 375 (quoting *Messner*, 669 F.3d at 818). For example, evidence that company decisionmakers impute their own biases when making discretionary employment

---

discriminatory policy that plaintiffs claim defendants perpetuated. As discussed below, the plaintiffs need not definitively prove that the policy existed to show that the requirements for class certification are met. At this stage, plaintiffs need only show that they could prove their case using common evidence. *See Messner*, 669 F.3d at 817. True, even absent a discriminatory policy that used experience as a proxy for race, individual plaintiffs could argue that they were subject to discrimination. But such individual claims rooted in idiosyncratic discrimination "would be based on an entirely different legal theory." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015).

decisions is not "significant proof" of such a policy. *See Walmart*, 564 U.S. at 356-57. Because the plaintiffs in *Wal Mart* offered only proof that employers' actions were discretionary, it would be impossible to rely on that evidence to show that the company engaged in discriminatory conduct. *Id.* at 357. By contrast, if plaintiffs offer enough evidence to show that questions common to the class exist, they need not prove the "truth of their allegation that [the defendant] has an unofficial policy." *Bell*, 800 F.3d at 374, 377 (noting that district court must resolve only material factual disputes that **bear on the requirements for class certification**") (emphasis in original).

The plaintiffs have satisfied their burden here. Employees at all three staffing agencies testified to the defendants' discriminatory practices. This testimony included first-hand accounts of discriminatory conduct at all levels of management, including that Vee Pak told staffing-agency managers not to refer African Americans, that staffing-agency employees perpetuated these policies, that staffing agencies used derogatory code words to refer to African American workers, and that the few African Americans who did manage to by-pass the staffing agencies were turned away at Vee Pak's door. Some of these employees testified that Vee Pak shift supervisors directly and repeatedly instructed them not to send African Americans to Vee Pak. The named plaintiffs, moreover, testified to the staffing agencies' passing them over for jobs due to their race. The testimony about specific mechanisms of discrimination, from the upper echelons of staffing-agency management to the staffing-agency dispatchers to the employees facing the effects of discrimination, undoubtedly speaks to the existence of a discriminatory policy among the defendants. *See id.*, 800 F.3d at 375 (testimony from company branch managers about discriminatory policy constituted enough evidence to satisfy commonality requirement).

The defendants protest that plaintiffs' anecdotal evidence is not substantial enough, citing *Wal-Mart*. In that case, 120 employees' testimony about their own experiences of discrimination was not enough to establish a wide-ranging policy spanning 3,400 stores employing millions of workers in all fifty states. *Wal-Mart*, 564 U.S. at 358. Without any testimony that gave color to the alleged policy, the employees' scattered testimony about the discrimination they suffered was of course not enough to form the "glue" holding together the alleged reasons for the discrimination. *Id.* Here, the plaintiffs furnish testimony from defendant employees, some of whom were in managerial positions, about the discriminatory practices and the uniform ways in which they were implemented. This testimony stands ***in addition*** to the testimony of the named class members and proposed class members about their own experiences of discrimination. Class members' testimony about their personal experiences of discrimination was not enough, standing alone, to establish a discriminatory policy in *Wal-Mart*, but first-hand accounts about the policy's contents and implementation would, if true, allow a jury to find a policy existed in this case.

Defendants also argue that some of the witness testimony predates the class period and is irrelevant to the existence of a policy during the alleged period. Outside-the-class period evidence alone would not suffice to show that discriminatory conduct common to all class members occurred within the class period. Combined with other within-class-period testimony, however, testimony about a policy that began before the class members' claims accrued and persisted throughout the class period is relevant. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-13 (2002) (evidence of discriminatory policy outside of statute of limitations relevant as "background evidence to support a timely claim"). For similar reasons, the Court finds unpersuasive the defendants' arguments that one staffing agency's practices of steering

workers away from Vee Pak are irrelevant to another agency's same practices. And the staffing agency's discriminatory policies at the behest of non-Vee Pak clients are also relevant. Plaintiffs allege that Vee Pak asked staffing agencies not to refer African Americans and that staffing agencies followed those discriminatory policies. Although not dispositive, that one staffing agency or client perpetuated this discriminatory policy renders it more plausible that the policy extended to other agencies or other clients.

The defendants' remaining objections to plaintiffs' witness testimony rest on disputes about witness credibility and the sources of the witness's knowledge. For example, some staffing-agency employees who testified about Vee Pak's discriminatory instructions, such as Cruz, Martinez, and Armendariz, also testified that they did not follow those instructions. But plaintiffs have offered testimony that casts doubt upon those statements. *See* Medina Dep. at 43, ECF No. 544-25 (testifying that Cruz told him that he could not refer African American workers to Vee Pak); Martinez Dep. at 45, 54-55, 70-71, ECF No. 544-27 (describing Staffing Network's practice of hiring "regulars," and testifying that, although Cruz did not want her to "find more Latinos," that Cruz knew about the policy and told her "there's nothing we can do"); Armendariz Dep. at 39-44, ECF No. 551-1 (noting same "regulars" policy and noting regulars were predominately Latino). The Court cannot resolve a textbook credibility dispute by reading deposition transcripts. At the class-certification stage, courts may not "weigh[ ] . . . evidence to determine whether the plaintiff class will prevail on the merits." *Bell*, 800 F.3d at 377.

It is true that a court must sometimes delve into the merits when considering class certification. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir.2001). Such inquiries are only appropriate, however, to the extent they are necessary to determine whether the class certification **requirements** are met (in this case, whether the issue can be resolved on a

class-wide basis through evidence common to the class). *See Bell*, 800 F.3d at 376-77; *see also Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). The plaintiffs have presented enough evidence to show that the resolution of their claims of discrimination will rise and fall with the truth of witness testimony about the existence of a discriminatory policy. In other words, if a jury does not believe the witness testimony about the policy, the "certified class can go down in flames on the merits." *Schleicher*, 618 F.3d at 685. The plaintiffs have proffered enough witness testimony to support a legal theory common to the entire class; that is precisely what the Supreme Court meant by "significant proof" in *Wal-Mart*.

The plaintiffs, moreover, have corroborated their anecdotal evidence with Dr. Bendick's statistical analysis, which as explained above, the Court deems admissible. As this Court has previously explained, a statistical analysis alone does not provide an answer to the cause of a racial disparity. *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States of Am.*, 34 F. Supp. 3d 896, 909 (N.D. Ill. 2014). But such an analysis "may go a long way to establishing that there *is* a race-based disparity, ruling out the possibility that an observed disparity is simply the product of chance." *Id.* Bendick's analysis, therefore, renders it more likely that **something** caused a racial disparity, and witness testimony suggests that a discriminatory policy was that something. *Id.* Using that evidence—which is common to every member of the class—the plaintiffs seek to prove their case. A jury does not have to find Bendick's numbers convincing, and the defendants may rely, on the merits, on all of the deficiencies that they raised in their *Daubert* motion. Similarly, a jury does not have to find convincing the testimony of plaintiffs' witnesses. In any event, however, a jury can weigh this evidence and decide whether all of the plaintiffs win or lose. As Judge Ellis put it, "the statistical evidence and anecdotes together provide 'significant proof' of a 'uniform employment practice'

that caused a common injury to the class." *Zollicoffer*, 335 F.R.D. at 157 (citing *Walmart*, 564 U.S. at 353-55). Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the named plaintiffs'] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Factual differences between the plaintiffs do not destroy typicality as long as plaintiffs proffer similar legal theories. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). It is the legal theories supporting those injuries that must be typical of plaintiffs' claims; the plaintiffs may have claims typical of other class members even if the extent of class members' injuries differs. *See id.* at 232-33.

Here, named plaintiffs Zollicoffer, Eagle, Keys, and Franklin, allege that they were denied work after waiting unsuccessfully for assignments and that the staffing agencies gave work to Latino laborers instead. They allege that defendants similarly denied class members work opportunities at Vee Pak due to their race pursuant to a discriminatory policy. That is, the named plaintiffs have alleged the same injury as the proposed class members: racial discrimination. The named plaintiffs also assert the same legal theory as the proposed class members, that defendants violated § 1981. Plaintiffs have therefore satisfied the typicality requirement. *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of the City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill. 2015) (typicality satisfied where "all of the proposed class representatives base[d] their claims on the same legal theory: racial discrimination").

Defendants nonetheless argue that the named plaintiffs have not accrued the same injuries as the proposed class members. Staffing Network argues that named plaintiffs' injuries are atypical because the staffing agencies eventually assigned Eagle and Keys to customers other than Vee Pak. This argument confuses the kind of injury that named plaintiffs allege with the extent of their injuries. *See Pruitt v. Pers. Staffing Grp., LLC*, No. 16-CV-5079, 2020 WL 3050330, at *8 (N.D. Ill. June 8, 2020) ("Defendants' argument about the short amount of time the Named Plaintiffs actually sought assignments at MVP and their availability to take assignments from MVP may go to the Named Plaintiff's damages, but those are not defenses to claims of racial discrimination."). Regardless of the extent of pecuniary losses that named plaintiffs may have ultimately incurred, all the named plaintiffs allege that they were denied a job due to racial discrimination. *Zollicoffer*, 335 F.R.D. at 157 (rejecting defendants' contention that Zollicoffer suffered atypical injuries because he was "unavailable to work for significant segments of the class period"). Defendants' argument that some of the named plaintiffs only sporadically sought assignments during the class period are similarly relevant only to the extent of plaintiffs' harms. The named plaintiffs and proposed class members therefore all suffered a typical injury.

Vee Pak argues that Franklin cannot serve as a named plaintiff for ASI because she was denied a job in 2014, a period after which, defendants claim, ASI took steps to correct discriminatory practices. In support, defendants cite the testimony of Steven Swerdloff, ASI Chairman who testified that ASI threatened to drop the Vee Pak account after a lawsuit challenged its discriminatory practices. But Swerdloff did not give a clear answer as to whether ASI made those changes in 2013, 2014, or 2015. Swerdloff 30(b)(6) Dep. at 103, ECF No. 573-9 ("I think it would have to be around 2015, '14 '15 . . . somewhere in there."). Plaintiffs, in turn,

argue that ASI continued to discriminate against African Americans well beyond 2014. Swerdloff had previously testified that Vee Pak continued to ask ASI to discriminate against African Americans until 2015. And an ASI employee testified that a Vee Pak employee told her in no uncertain terms to turn Black employees away in the same month that Franklin applied for work, September 2014. Plaintiffs have proffered enough evidence to show that Vee Pak's alleged discriminatory policy continued when Franklin sought work from ASI. Franklin corroborates this testimony through her statements that she sought and did not receive work from ASI during the same period. Because Franklin testified that defendants injured her in the same manner—through a discriminatory policy—as proposed class members during the relevant period, her injuries are typical. Defendants' attacks on typicality of injury do not persuade the Court.

### 4. Adequate Representation

Defendants next challenge the adequacy of named plaintiffs' representation.[15] Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Typicality and adequacy operate in tandem; a named claimant who suffers injuries typical of the class will presumably be incentivized to vindicate its effort. *See Amchem*, 521 at 626 n.20. Therefore, to meet the adequacy requirement, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up). The rationale animating the adequacy requirement is to ensure that the named plaintiffs will vigorously advocate for a positive outcome for class claimants. *See Lacy v. Cook County*, 897 F.3d 847, 866-67 (7th Cir. 2018).

---

[15] Rule 23(a)(4) also requires that class counsel be adequate representatives for the class. Defendants do not challenge the adequacy of class counsel. This Court continues to find that "class counsel are experienced and competent employment discrimination and class action plaintiffs' attorneys" and are therefore adequate representatives. *Lucas*, 2017 WL 6733688, at *7.

Staffing Network argues that Eagle and Keys cannot represent the Staffing Network class because they lack a sufficient interest in the case.[16] In support, they repeat their arguments contesting the typicality of their injuries: because Eagle and Keys obtained alternative employment, Staffing Network argues, they did not suffer an injury, and have an insufficient stake in this case's outcome. Staffing Network cites *Culver v. City of Milwaukee*, in which a named plaintiff who sought permanent employment alleged that the defendant discriminatorily refused to hire him and other proposed class members. 277 F.3d 908, 910 (7th Cir. 2002). That plaintiff could not serve as an adequate class representative because, among other things, he had found a new, permanent position shortly after his "perfunctory" efforts to seek employment with defendant. *Id.* at 912. *Culver*, however, is inapposite; that Eagle and Keys sought temporary work meant that they were subject to repeated occurrences of racial discrimination. Even if they found other employment or stopped seeking work during the class period, Eagle and Keys both suffered injuries, and the extent of those injuries is a damages question. *Pruitt*, 2020 WL 3050330, at *8. Moreover, unlike *Culver*, who stopped seeking any relief from defendants and agreed his case was moot, Eagle and Keys both continue to seek recovery for injuries they suffered. 277 F.3d at 912. Like the proposed class members, Eagle and Keys have an interest in recovering damages for the discrimination they repeatedly suffered. Therefore, the Court finds that they are adequate class representatives.

Vee Pak, in turn, contests the adequacy of Zollicoffer as a class representative for MVP and Franklin as a class representative for ASI. According to Vee Pak, Zollicoffer and Franklin

---

[16] Staffing Network also argues that Zollicoffer would not be an adequate representative for the Staffing Network class. Plaintiffs, however, do not propose Zollicoffer as a class representative, but rather submit his testimony as additional evidence of Staffing Network's discriminatory policy. The Court therefore declines to address any arguments about Zollicoffer's ability to represent the Staffing Network class.

are insufficiently informed about the instant litigation to adequately pursue class members' interests. "[A]n adequate class representative must maintain only an 'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (quoting *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396, (N.D. Ill. 2006)). Vee Pak argues that Franklin has not met those minimal requirements because she lacks personal knowledge about Vee Pak and was unfamiliar with certain Vee Pak employees that counsel listed in her interrogatory responses. As for Zollicoffer, Vee Pak emphasizes that Zollicoffer testified to having no knowledge of Vee Pak, including what it did, where it was located, whether staffing agencies assigned workers to Vee Pak or why he was suing Vee Pak, "leav[ing] that up to [his] attorney." Zollicoffer Dep. at 26-28, ECF No. 573-31.

Courts have emphasized that the bar for class representatives' knowledge about the litigation subject is modest. *See, e.g.*, *Wahl*, 243 F.R.D. at 298; *Murray v. New Cingular Wireless Svc., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005); *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *see also Zollicoffer*, 335 F.R.D. at 160 (collecting cases). On the other side of the spectrum, the instances where class members have been deemed inadequate representatives are particularly egregious. For example, class members cannot get away with submitting false discovery responses by feigning lack of knowledge about their responsibilities. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1025-26 (N.D. Ill. 2017). And a named plaintiff cannot be "less than willing to participate in discovery fully and in good faith." *Pruitt*, 2020 WL 3050330, at *6. Otherwise, "[f]or a plaintiff who wishes to be a class representative, "(g)eneral knowledge [of the case] and a participation in discovery are

enough." *Sebo*, 188 F.R.D. at 316 (quoting *Kriendler v. Chemical Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1159 (N.D. Ill. 1995)).

Franklin and Zollicoffer clear that modest bar. Franklin testified that she continuously sought work from ASI, was repeatedly denied assignments, and observed that African Americans waited for work at ASI offices while ASI sent Latino workers out on assignments. Franklin read case materials, responded to all discovery requests, and explained that she understood the substance of the lawsuit: that African Americans were denied work assignments due to their race. Similarly, Zollicoffer testified that when he applied for temporary work at MVP, he observed that MVP selected Latino workers while he was denied work. Zollicoffer acquired "general knowledge" about the case: he understood that he was suing MVP and that his lawsuit was about work-related discrimination against Black people. *Sebo*, 188 F.R.D. at 316. The fact that named plaintiffs do not know much about Vee Pak or its employees does not raise eyebrows. It is enough that the named plaintiffs know that they were passed over for work at an agency due to their race. There would be no way for them to ascertain, through personal knowledge, that Vee Pak or its employees was the ultimate source of discrimination. *Zollicoffer,* 335 F.R.D. at 159 (noting that named plaintiffs' "lack of knowledge [about GSB] is at least mitigated by the fact that they never worked at GSB, and so have no personal knowledge about GSB's conduct").

Certainly, the named plaintiffs' minimal knowledge about this litigation and their maximal deference to their attorneys warrants consideration. And the Court recognizes that Judge Dow has deemed inadequate a named plaintiff with a lack of subject-matter knowledge or knowledge about other defendants in a similar case against MVP. *Pruitt*, 2020 WL 3050330, at *6. But as Judge Ellis noted in the *Gold Standard Baking* case, the named plaintiffs' actions have shown that they are committed to vigorously pursuing their claims against defendants. As in his

41

case against *Gold Standard Baking*, Zollicoffer has been involved in this case for "several years," has "completed discovery requests, submitted to multiple depositions, completed interrogatories, and stayed in contact with [his] counsel." *Zollicoffer*, 335 F.R.D. at 160. The same goes for Franklin. And as in *Gold Standard Baking*, the reality of this case bears upon the Court's findings. The Court declines to deny certification of this more-than-decade-long litigation solely because the named plaintiffs—low wage workers who understandably lack legal knowledge—do not know enough about a defendant that discriminated against them through another agent. *See id.* The Court therefore finds that the named plaintiffs are adequate representatives.

**B.     Rule 23(b)(3) Requirements**

**1. Predominance**

To meet the requirements of a 23(b)(3) class, plaintiffs must show that the common questions it identifies predominate over individual claims. Importantly, predominance does not require that individual questions be absent; "[t]he rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815. Plaintiffs demonstrate predominance "if 'a failure of proof on the [common questions] would end the case' and the whole class 'will prevail or fail in unison." *Bell*, 800 F.3d at 376 (quoting *Amgen*, 568 U.S. at 460). The key question to ask when considering predominance is whether "adjudication of questions of liability common to the class will achieve economies of time and expense." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015).

As with commonality, this Court has already found when preliminarily certifying the ASI's settlement class, that the common issues in this case predominate over individualized inquiries. The Court continues to find that the existence of a staffing agency's company-wide

policy of steering African American workers away from Vee Pak is a key part of every class member's discrimination claim. *Lucas*, 2017 WL 6733688, at *7. "Although individualized issues may impact the amount of damages each class member is entitled to, that does not 'undermine the fact that the fundamental question that predominates is a common question.'" *Id.* (quoting *Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 223-24 (N.D. Ill. 2014)). It would clearly save resources to litigate in one proceeding the questions of whether a common discriminatory policy existed and whether Vee Pak required that its workers have any qualifications, rather than having to make that determination in hundreds of cases. *See Chicago Tchrs. Union*, 797 F.3d at 444.

Defendants argue otherwise, again invoking *Comcast*. According to the defendants, individualized inquiries as to liability cannot, by definition, predominate when a plaintiff must prove that discrimination was a but-for cause of an employer's decision. 140 S. Ct. at 1014. As explained in the commonality section, that is wrong, at least in the context of this case. If plaintiffs show that a discriminatory policy existed and that jobs at Vee Pak required essentially no qualifications, "the same evidence will suffice for each [class] member to make a prima facie showing" that the class member was not hired due to race. *Messner*, 669 F. 3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Defendants also argue that the *Teamsters* presumption of liability once a discriminatory policy is proven is only available in Rule 23(b)(2), rather than in Rule 23(b)(3), class actions. Because plaintiffs in Rule 23(b)(2) class actions seek only equitable relief, the argument goes, a district court following *Teamsters* would not have to make the kind of particularized injury determinations inherent in damages actions. That argument understates the individualized inquiries that the Court in *Teamsters* envisioned. The district court in *Teamsters* was not simply

43

instructed to hand plaintiffs certificates stating they were victims of discrimination after a discriminatory policy was found; instead, the Court recognized that the district court had to make "a substantial number of individual determinations" with respect to the scope of the remedy in step two. *Teamsters*, 431 U.S. at 371-72. That process would "necessarily involve a degree of approximation and imprecision." *Id.* at 372. Such individualized inquiries are similarly present when determining the scope of a plaintiff's injuries and measuring them in the form of damages. The Court sees nothing inherent in individualized damages inquiries that would foreclose its application to a *Teamsters*-like framework, especially when *Teamsters* also envisioned individualized inquiries in fashioning equitable remedies.

Defendants' argument, moreover, ignores Seventh Circuit precedent. The Seventh Circuit has never held that classes of plaintiffs seeking damages in employment discrimination cases cannot be certified under Rule 23(b)(3) because those cases raise too many individualized inquiries. To the contrary, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (collecting cases). In particular, if an employment practice "is determined to be discriminatory, individualized remedies and damages may have to be determined for each plaintiff or perhaps for subclasses of plaintiffs," but that does not preclude certification. *Chicago Tchrs. Union*, 797 F.3d at 444. The Court finds that predominance is satisfied.

### 2. Superiority and Manageability

Under Rule 23(b)(3), a claimant must also show that a class proceeding is superior to another approach. If "resolving Plaintiffs' claims through a class action would be more efficient than proceeding with hundreds of individual suits," this requirement is satisfied. *Porter v. Pipefitters Ass'n Loc. Union 597*, 208 F. Supp. 3d 894, 912 (N.D. Ill. 2016)

As this Court has held previously when preliminarily certifying the ASI class, "separate lawsuits by the individual class members "would needlessly require multiple courts to resolve the same liability issues." *Lucas*, 2017 WL 6733688, at *8. The Court adheres to that assessment. It would be extremely inefficient for the Court to determine, in separate individualized proceedings, whether the defendants engaged in a discriminatory policy that applied to all class members. *See Chicago Teachers Union*, 797 F.3d at 444. And as the Court has also previously noted, a class action device is superior when, as here, class members' individual claims are too small to incentivize class members or their counsel to vindicate them. *Lucas*, 2017 WL 6733688, at *8. This is so even considering, as defendants argue, that various types of damages and attorney's fees are available in § 1981 cases. Proving the existence of an unwritten rule is no easy feat. Class counsel have gone to great lengths during this years-long litigation, deposing scores of witnesses and engaging an expert, to unearth evidence of a discriminatory practice. Defendants cannot seriously contend that individual recovery on a § 1981 action—even with no backpay damages cap—would sufficiently incentivize an individual plaintiff to pursue such a difficult task.

Finally, the defendants argue that individualized damages inquiries will render this case unmanageable. The Court rejects that argument again. First, the Court is hopeful that the parties will be able to finagle a method of optimizing the damages inquiry, should the defendants' liability be established. "Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts." *Arreola v. Godinez*, 546 F.3d 788,

45

801 (7th Cir. 2008).[17] Of course, a district court may always, pursuant to its discretion, decide that when individualized issues common to a class are resolved, the remaining damages determinations become unruly. *See Riffey v. Rauner*, 910 F.3d 314, 319 (upholding district court's decision not to certify class of union workers seeking dues refunds after liability issue was resolved by Supreme Court). But at this point, especially since plaintiffs claim that assignments to Vee Pak were regularly available and did not depend on eligibility requirements, the Court expects the damages determinations to be tame enough to allow for certification.

In any event, even if the Court must conduct an individualized damages inquiry as to every class member, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012). The class members' claims involve the same practice by all of the defendants—the failure to assign African Americans work at Vee Pak due to their race. Plaintiffs' allegations survive only if plaintiffs prove that defendants acted pursuant to an unlawful discriminatory policy The Court sees no downside to determining, on a class-wide basis, whether that practice existed. *Id.* Plaintiffs have therefore satisfied the requirements of Rule 23(b)(3).

## C.     Ascertainability and Class Period

In addition to meeting Rule 23's explicit requirements, a class must be ascertainable. *Mullins*, 795 F.3d at 657. To satisfy this requirement, the class must be defined clearly, using objective criteria that are not based upon success on the merits. *See id.* at 659-60. Vee Pak argues

---

[17] The Court maintains its optimism even though the plaintiffs have not yet determined whether a formulaic mitigation offset to damages in this case is possible. *See* Order, Jan. 16, 2018, ECF No. 297. The Court's facilitation of a damages determination at the parties' behest and its rejection of one method of calculating damages does not change the fact that it would be most efficient to determine whether defendants are liable in one proceeding.

that plaintiffs' proposed class definitions are vague because they include "African American laborers who sought work assignments at [one of the staffing agencies] from which they could have been referred to Vee Pak, but on one or more occasion were not assigned to work at Vee Pak during [the class period]." Vee Pak argues that the inclusion of the word "could" adds "significant uncertainty as to who is actually included in the class." Vee Pak Opp'n at 55, ECF No. 572. This is because, as Vee Pak has extensively argued, whether a plaintiff was qualified for work at Vee Pak is a highly individualized inquiry that would involve a significant number of variables.

As the Court has explained, plaintiffs have provided enough evidence for a jury to determine that the Vee Pak positions had no required qualifications, rendering Vee Pak's concern about individualized inquiries of no consequence. In any case, whether it would be difficult administratively to determine whether plaintiffs "could" work at Vee Pak is not the relevant question. *See Mullins*, 795 F.3d at 657. Instead, when determining whether a class is ascertainable, courts ask whether the definition is based on objective, clear criteria. *Id.* at 659-60.

As plaintiffs correctly note, this Court determined in the context of certifying the settlement class included in the settlement between plaintiffs and ASI, that a class definition almost identical to the ones at issue here was ascertainable. *Lucas*, 2017 WL 6733688, at *4. The Court's approved definition, however, did not contain the clause "from which [plaintiffs] could have been referred to Vee Pak," instead defining the class as "[t]he Class Representative and all African Americans who sought a work assignment through ASI but, on one or more occasion, were not assigned or hired to work at Vee Pak during [the class period]." *Id.* The Court declined to include in the class definition the term "otherwise eligible to work at Vee Pak," noting that the class definition did not set forth any objective eligibility criteria. *Id.*

The phrase "could have been referred," at first glance, seems to be another way of including undefined eligibility criteria into the class definition. This Court has already determined that the inclusion of such eligibility criteria is "essentially meaningless" given the plaintiffs' assertion that no such qualifications existed for Vee Pak jobs. *Id.* Plaintiffs, however, explain that they included "could have been referred" in the class definition to clarify that the definition applies to African American workers who applied to relevant branch offices. For example, only MVP's Cicero office, rather than its Waukegan office, assigned workers to Vee Pak. Only a worker applying for MVP's Cicero's office, according to plaintiffs, "could have been referred" to Waukegan.

The Court disagrees that "could have been referred" clearly denotes office location. That phrase could refer, as plaintiffs guessed, to defendants' eligibility, or the availability of open positions at Vee Pak at the time. This ambiguity could be amended, as plaintiffs propose, by clarifying that the class is limited to plaintiffs who visited the relevant offices during the class period. *See Wilson v. City of Evanston, Ill.*, 14 C 8347, 2017 WL 3730817, at *6 (N.D. Ill. Aug. 30, 2017) (amending overbroad class definition by more precisely defining term). The Court therefore amends the class definition to read, "African American laborers who sought work assignments at [staffing agency] from offices that referred workers to Vee Pak during [the class period], but on one or more occasions were not assigned to work at Vee Pak during the class period." These class definitions would ascertain the group of people that defendants' policies harmed while addressing the concerns about branch locations that plaintiffs raised.

Finally, Vee Pak contests the plaintiffs' class period, arguing that the class must be limited to a time during which the named plaintiffs were seeking work. Vee Pak cites *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2005), in which the Seventh Circuit held that a

class could not be extended to the indefinite future when none of the named plaintiffs' employment extended past 2002. But in *Bolden*, the Court's problem was not intrinsically with the length of the class period. Rather, the plaintiffs had alleged that they were subjected to a hostile and racist work environment, a practice that manifested in myriad ways. *Id.* at 893-95. The Court explained that it could not certify such an "across-the-board" class. *Id.* at 895. Namely, plaintiffs who had experienced one kind of discrimination earlier in the class period could not represent plaintiffs who may have been subjected to a different kind of discrimination later in the class period. *Id.* In this case, by contrast, the plaintiffs allege that all persons in the class were subject to the same discriminatory hiring policy, perpetuated by Vee Pak, throughout the class period (which corresponds to the times plaintiffs contend the staffing agencies sent workers to Vee Pak). During the time that staffing agencies refused to send workers to Vee Pak pursuant to Vee Pak's policy, both named plaintiffs and proposed class members were treated alike. Vee Pak's challenge to the class period is not persuasive.

Ultimately, the Court finds unpersuasive the defendants' attacks on class certification. A jury's finding that a discriminatory policy, rather than Vee Pak's insistence on experienced workers, motivated defendants' hiring and referral decisions, would "eliminate the need for repeat adjudication of this question for determinations of damages or individual injunctive relief. *Chicago Tchrs. Union*, 797 F.3d at 445. The Court finds that the class definitions, as amended by the Court, meet Rule 23's certification requirements. The amended subclasses are certified.

* * *

For the reasons set forth above, the Court denies defendants' motions to strike Dr. Bendick's declaration and testimony [568] [569] and grants plaintiffs' motion for class certification [544]. The Court appoints Plaintiffs Joe Eagle and Michael Keys as Staffing Network subclass representatives, Plaintiff James Zollicoffer as MVP subclass representative,

and Plaintiff Evan Franklin as ASI subclass representative and appoints plaintiffs' counsel, Joseph M. Sellers, Harini Srinivasan, Christopher J. Williams, Christopher J. Wilmes, and Caryn C. Lederer as class counsel.

Date: February 23, 2023

John J. Tharp, Jr.
United States District Judge

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.6.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:12–cv–09672

Lucas et al v. Vee–Pak, Inc.,
Assigned to: Honorable John J. Tharp, Jr
Cause: 42:1981 Civil Rights

Date Filed: 12/05/2012
Jury Demand: None
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Brian Lucas**
*TERMINATED: 12/16/2020*

represented by **Christopher John Williams**
National Legal Advocacy Network
1 N LaSalle St, Suite 1275
Chicago, IL 60602
(312) 795–9121
Email: cwilliams@n–lan.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jenee Gaskin**
Littler Mendelson
321 N. Clark Street
Suite 1100
Chicago
Chicago, IL 60654
312–795–3270
Email: jgaskin@littler.com
*TERMINATED: 02/13/2015*
*LEAD ATTORNEY*

**Sheila Maddali**
National Legal Advocacy Network
53 W. Jackson Blvd, Suite 1224
Chicago, IL 60604
(312) 795–9121
Email: smaddali@n–lan.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alvar Ayala**
Office of the Illinois Attorney General
100 W. Randolph
11th Floor
Chicago, IL 60601
312–343–0099
Email: alvar.ayala@ilag.gov
*ATTORNEY TO BE NOTICED*

**Caryn Cecelia Lederer**
Hughes Socol Piers Resnick Dym, Ltd.
70 W. Madison Street
Suite 4000
Chicago, IL 60602
312–580–0100
Email: clederer@hsplegal.com
*ATTORNEY TO BE NOTICED*

**Christopher J Wilmes**
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison St.
Suite 4000

Chicago, IL 60602
312−580−0100
Email: cwilmes@hsplegal.com
*ATTORNEY TO BE NOTICED*

**Harini Srinivasan**
Cohen Milstein Sellers & Toll Pllc
1100 New York Ave., N.w.
Suite 500
Washington, DC 20005
(202) 408−4600
Email: hsrinivasan@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Joseph M Sellers**
Cohen, Milstein, Sellers & Toll
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005−3934
(202) 408−4600
Email: jsellers@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Mark Haile Birhanu**
Raise The Floor Alliance
1 N Lasalle Street
Ste 1275
Chicago, IL 60602
(312) 795−9115
Email: mbirhanu@raisethefflooralliance.org
*ATTORNEY TO BE NOTICED*

**Miranda Huber**
Raise The Floor Alliance
1 N. Lasalle Street
Suite 1275
Chicago, IL 60602
(312) 795−9115
Email: mhuber@raisethefflooralliance.org
*ATTORNEY TO BE NOTICED*

**Miriam Rose Nemeth**
Cohen Milstein Sellers & Toll, Pllc
1100 New York Ave., Nw
Suite 500
Washington, DC 20005
(202) 408−4600
Email: mnemeth@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Peter Romer−Friedman**
Peter Romer−Friedman Law PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
718−938−6132
Email: peter@prf−law.com
*TERMINATED: 04/27/2015*

**Shaylyn Capri Cochran**
Cohen Milstein Sellers & Toll, Pllc
1100 New York Ave., Nw
Suite 500
Washington, DC 20005
(202) 408−4600

Email: scochran@cohenmilstein.com
*TERMINATED: 02/17/2021*

**Plaintiff**

**Aronzo Davis**                          represented by   **Christopher John Williams**
*TERMINATED: 02/04/2016*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jenee Gaskin**
                                                           (See above for address)
                                                           *TERMINATED: 02/13/2015*
                                                           *LEAD ATTORNEY*

                                                           **Alvar Ayala**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Joseph M Sellers**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Miriam Rose Nemeth**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Peter Romer–Friedman**
                                                           (See above for address)
                                                           *TERMINATED: 04/27/2015*

                                                           **Shaylyn Capri Cochran**
                                                           (See above for address)
                                                           *TERMINATED: 02/17/2021*

**Plaintiff**

**Torrence Vaughns**                      represented by   **Christopher John Williams**
*TERMINATED: 10/10/2014*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jenee Gaskin**
                                                           (See above for address)
                                                           *TERMINATED: 02/13/2015*
                                                           *LEAD ATTORNEY*

                                                           **Alvar Ayala**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Joseph M Sellers**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Peter Romer–Friedman**
                                                           (See above for address)
                                                           *TERMINATED: 04/27/2015*

**Plaintiff**

**Joe Eagle**                             represented by   **Christopher John Williams**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Jenee Gaskin**
(See above for address)
*TERMINATED: 02/13/2015*
*LEAD ATTORNEY*

**Alvar Ayala**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Caryn Cecelia Lederer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher J Wilmes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harini Srinivasan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph M Sellers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Haile Birhanu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Huber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miriam Rose Nemeth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Romer–Friedman**
(See above for address)
*TERMINATED: 04/27/2015*

**Shaylyn Capri Cochran**
(See above for address)
*TERMINATED: 02/17/2021*

**Christopher J. Williams**
Workers' Law Office, P.C.
53 W Jackson Blvd.
1224
Chicago, IL 60604
312–795–9121
Email: cwilliams@wagetheftlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Keys**                                 represented by   **Christopher John Williams**
*on behalf of themselves and similarly*                        (See above for address)
*situated job applicants*                                      *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jenee Gaskin**
                                                               (See above for address)
                                                               *TERMINATED: 02/13/2015*
                                                               *LEAD ATTORNEY*

**Alvar Ayala**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Caryn Cecelia Lederer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher J Wilmes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harini Srinivasan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph M Sellers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Haile Birhanu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Huber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miriam Rose Nemeth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Romer–Friedman**
(See above for address)
*TERMINATED: 04/27/2015*

**Shaylyn Capri Cochran**
(See above for address)
*TERMINATED: 02/17/2021*

**Christopher J. Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Antwoin Hunt**                    represented by    **Harini Srinivasan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Haile Birhanu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Huber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher John Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Zollicoffer**                    represented by

**Caryn Cecelia Lederer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher J Wilmes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harini Srinivasan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Haile Birhanu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Huber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher J. Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher John Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Evan Franklin**                     represented by    **Christopher J. Williams**
*on behalf of themselves and similarly*                 (See above for address)
*situated laborers*                                      *ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**Vee−Pak, Inc.,**                    represented by    **Donald S. Rothschild**
                                                         Goldstine, Skrodzki, Russian, Nemec &
                                                         Hoff, Ltd.
                                                         835 McClintock Drive
                                                         Second Floor
                                                         Burr Ridge, IL 60527
                                                         (630) 655−6000
                                                         Email: dsr@gsrnh.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Brian Michael Dougherty**
                                                         Golstine, Skrodzki, Russian, Nemec and
                                                         Hoff
                                                         835 McClintock Drive
                                                         2nd Floor
                                                         Burr Ridge, IL 60527
                                                         (630) 655−6000
                                                         Email: bmd@gsrnh.com
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Dana Lindsay Sanders**
                                                         Mcdermott Will & Emery
                                                         444 West Lake St
                                                         Suite 4000
                                                         Chicago, IL 60606−0029
                                                         (312) 984−9842

Email: dsanders@mwe.com
*TERMINATED: 10/15/2020*

**Edward C. Jepson , Jr.**
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601
(312) 609−7500
Email: ejepson@vedderprice.com
*TERMINATED: 12/28/2018*

**Jean Morrow Edmonds**
Mcdermott Will & Emery Llp
444 West Lake Street
Suite 4000
Chicago, IL 60606
(312) 984−2082
Email: jedmonds@mwe.com
*ATTORNEY TO BE NOTICED*

**Joseph Kevin Mulherin**
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606−0029
(312) 899−7159
Email: jmulherin@mwe.com
*ATTORNEY TO BE NOTICED*

**Thomas G. Abram**
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601
(312) 609−7500
Email: tabram@vedderprice.com
*TERMINATED: 12/21/2018*

<u>**Defendant**</u>

**WJI Industries, Inc. d/b/a Staffing Network**
*TERMINATED: 05/24/2013*

<u>**Defendant**</u>

**MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP**
*TERMINATED: 05/24/2013*

represented by **Michele Denise Dougherty**
Korey Richardson LLC
20 S. Clark Street
Suite 500
Chicago, IL 60603
312−372−7075
Email: mdougherty@koreyrichardsonlaw.com
*TERMINATED: 06/15/2022*

<u>**Defendant**</u>

**Personnel Staffing Group, LLC**
*doing business as*
Most Valuable Personnel
*doing business as*
MVP

represented by **Carter A. Korey**
Korey Richardson LLC
20 S. Clark Street
Suite 500
Chicago, IL 60603
312−372−7075
Email: ckorey@koreyrichardsonlaw.com
*TERMINATED: 06/15/2022*
*LEAD ATTORNEY*

**Elliot S. Richardson**
Korey Richardson LLC
20 South Clark Street
Suite 500
Chicago, IL 60603
(312) 372−7075
Email: erichardson@koreyrichardsonlaw.com
*TERMINATED: 06/15/2022*
*LEAD ATTORNEY*

**Alison Marjorie Field**
Smith Blake Hill LLC
20 N. Clark Street
Suite 1700
Chicago, IL 60602
(312) 471 8084
Email: afield@koreyrichardsonlaw.com
*TERMINATED: 03/16/2018*

**Ashley M. Fontana**
Korey Richardson LLC
20 South Clark Street, Suite 500
Chicago, IL 60603
(312) 372−7075
Email: ashley@fontanafamlaw.com
*TERMINATED: 03/16/2018*

**Britney Zilz**
JPMorgan Chase & Co.
10 S. Dearborn
20th Floor
Chicago, IL 60603
(312) 732−3553
Email: britney.zilz@jpmchase.com
*TERMINATED: 03/16/2018*

**Jaimee Christina Crockett**
Korey Richardson, LLP
Ste 500
20 S Clark Street
Chicago, IL 60603
312−372−7075
Email: jcrockett@koreyrichardsonlaw.com
*TERMINATED: 06/16/2022*

**Kenneth W. Gage**
Paul Hastings LLP
71 S. Wacker Drive
45th Floor
Chicago, IL 60606
(312) 499−6046
Email: kennethgage@paulhastings.com
*ATTORNEY TO BE NOTICED*

**Michele Denise Dougherty**
(See above for address)
*TERMINATED: 06/15/2022*

**Nicholas Joseph Tatro**
Korey Law, Llc
20 S. Clark St.
Ste 500
Chicago, IL 60603
(312) 372−7075

Email: ntatro@koreylaw.com
*TERMINATED: 03/16/2018*

**Ryan D Gibson**
Korey Cotter Heather & Richardson, Llc
20 S. Clark Street
Suite 500
Chicago, IL 60603
(312) 372–7075
Email: rgibson@kchrlaw.com
*TERMINATED: 06/15/2022*

**Defendant**

**Staffing Network Holdings, L.L.C.**          represented by    **Carter A. Korey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elliot S. Richardson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Marjorie Field**
(See above for address)
*TERMINATED: 03/16/2018*

**Ashley M. Fontana**
(See above for address)
*TERMINATED: 03/16/2018*

**Ashley Choren Workman**
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL 60603
(312) 460–5602
Email: aworkman@seyfarth.com
*TERMINATED: 11/05/2014*

**Brianna L Golan**
Golan Christie Taglia LLP
70 W. Madison
Suite 1500
Chicago, IL 60602
(312) 263–2300
Email: blgolan@gct.law
*TERMINATED: 11/05/2014*

**Britney Zilz**
(See above for address)
*TERMINATED: 03/16/2018*

**Gerald L. Maatman , Jr.**
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603
312–499–6710
Email: gmaatman@duanemorris.com
*TERMINATED: 11/05/2014*

**Jaimee Christina Crockett**
(See above for address)

*TERMINATED: 06/16/2022*

**Jennifer Ann Riley**
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603
312–499–6711
Email: jariley@duanemorris.com
*TERMINATED: 11/05/2014*

**Laura A. Balson**
Constangy, Brooks, Smith & Prophete LLP
300 S. Wacker Drive
Suite 1050
Chicago, IL 60606
773–661–4710
Email: lbalson@constangy.com
*TERMINATED: 11/05/2014*

**Matthew James Gagnon**
Seyfarth Shaw LLP
233 South Wacker Drive
Suite 8000
Chicago, IL 60606
(312) 460–5237
Email: mgagnon@seyfarth.com
*TERMINATED: 11/05/2014*

**Michele Denise Dougherty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca Pratt Bromet**
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL 60603
312–460–5000
*TERMINATED: 11/05/2014*

**Rebecca Pratt DeGroff**
Seyfarth Shaw LLP
233 South Wacker Drive
Suite 8000
Chicago, IL 60606
(312) 460–5000
Email: rdegroff@seyfarth.com
*TERMINATED: 11/05/2014*

**Ryan D Gibson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vee Pak, LLC**
*doing business as*
Voyant Beauty

represented by **Donald S. Rothschild**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Michael Dougherty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jean Morrow Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Kevin Mulherin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alternative Staffing, Inc.**                 represented by    **Kerryann Marie Haase**
*doing business as*                                             Michael Best & Friedrich LLP
ASI                                                            444 W. Lake Street, Suite 3200
                                                               Chicago, IL 60606
                                                               (312) 222−0800
                                                               Email: kmhaase@michaelbest.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Brian P Paul**
                                                               Michael Best & Friedrich
                                                               444 W. Lake St.
                                                               Suite 3200
                                                               Chicago, IL 60606
                                                               (312)222−0800
                                                               Email: bppaul@michaelbest.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Katherine Lee Goyert**
                                                               Michael Best & Friedrich Llp
                                                               444 W. Lake Street
                                                               Suite 3200
                                                               Chicago, IL 60606
                                                               (312) 222−0800
                                                               Email: klgoyert@michaelbest.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Sarah E. Flotte**
                                                               Perkins Coie LLP
                                                               110 N. Wacker Drive
                                                               Ste 3400
                                                               Chicago, IL 60606
                                                               312−324−8400
                                                               Email: sflotte@perkinscoie.com
                                                               *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Leone Bicchieri**                             represented by    **Leone Bicchieri**
                                                               PRO SE

                                                               **Sean Morales−Doyle**
                                                               Brennan Center for Justice at NYU School
                                                               of Law
                                                               120 Broadway
                                                               Suite 1750
                                                               New York, NY 10271
                                                               646−292−8363
                                                               Email: sean.moralesdoyle@nyu.edu
                                                               *TERMINATED: 12/18/2017*
                                                               *LEAD ATTORNEY*

**Respondent**

**Dan Giloth**                     represented by   **Dan Giloth**
                                                    PRO SE

                                                    **Sean Morales–Doyle**
                                                    (See above for address)
                                                    *TERMINATED: 12/18/2017*
                                                    *LEAD ATTORNEY*

**Respondent**

**Elce Redmond**                   represented by   **Elce Redmond**
                                                    PRO SE

                                                    **Sean Morales–Doyle**
                                                    (See above for address)
                                                    *TERMINATED: 12/18/2017*
                                                    *LEAD ATTORNEY*

**Respondent**

**Alternative Staffing, Inc.**     represented by   **James H. Ryan**
                                                    Gordon & Rees, LLP
                                                    One North Franklin
                                                    Suite 800
                                                    Chicago, IL 60606
                                                    (312) 565–1400
                                                    Email: hayesryan@grsm.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Brian H Myers**
                                                    Gordon Rees Scully Mansukhani, LLP
                                                    One North Franklin St.
                                                    Suite 800
                                                    Chicago, IL 60606
                                                    (312) 619–4913
                                                    Email: bmyers@grsm.com
                                                    *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/05/2012 | 1 | COMPLAINT filed by Brian Lucas, Joe Eagle, Torrence Vaughns, Aronzo Davis, Michael Keys; Filing fee $ 350, receipt number 0752–7820186.(Williams, Christopher) (Entered: 12/05/2012) |
| 12/05/2012 | 2 | CIVIL Cover Sheet (Williams, Christopher) (Entered: 12/05/2012) |
| 12/05/2012 | 3 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns by Christopher J Williams (Williams, Christopher) (Entered: 12/05/2012) |
| 12/05/2012 |   | CASE ASSIGNED to the Honorable John J. Tharp, Jr. Designated as Magistrate Judge the Honorable Arlander Keys. (jn, ) (Entered: 12/05/2012) |
| 02/28/2013 | 4 | *First* AMENDED complaint by Brian Lucas, Joe Eagle, Torrence Vaughns, Aronzo Davis, Michael Keys against Vee–Pak, Inc.,, WJI Industries, Inc. d/b/a Staffing Network, MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Alternative Staffing, Inc. d/b/a ASI (Williams, Christopher) (Entered: 02/28/2013) |
| 02/28/2013 | 5 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns by Alvar Ayala (Ayala, Alvar) (Entered: 02/28/2013) |
| 02/28/2013 |   | SUMMONS Issued as to Defendant Vee–Pak, Inc., (daj, ) (Entered: 02/28/2013) |
| 03/07/2013 | 6 | EXHIBIT by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns regarding amended complaint, 4 (Attachments: # 1 Exhibit Group A)(Williams, Christopher) (Entered: 03/07/2013) |

| 03/07/2013 | 7 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns for leave to file *A Second Amended Complaint* (Attachments: # 1 Attachment 1– Second Amended Complaint with Group Exhibit A)(Williams, Christopher) (Entered: 03/07/2013) |
| --- | --- | --- |
| 03/07/2013 | 8 | NOTICE of Motion by Christopher J Williams for presentment of motion for leave to file 7 before Honorable John J. Tharp Jr. on 3/12/2013 at 09:30 AM. (Williams, Christopher) (Entered: 03/07/2013) |
| 03/07/2013 | 9 | MINUTE entry before Honorable John J. Tharp, Jr:Plaintiffs' motion for leave to file Second Amended Complaint 7 is granted. No appearance on the motion is required. Mailed notice (air, ) (Entered: 03/07/2013) |
| 03/07/2013 | 10 | *Second* AMENDED complaint by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys against Alternative Staffing, Inc. d/b/a ASI, Vee–Pak, Inc.,, WJI Industries, Inc. d/b/a Staffing Network, Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP (Attachments: # 1 Group Exhibit A to Second Amended Complaint)(Williams, Christopher) (Entered: 03/07/2013) |
| 03/08/2013 | | ALIAS SUMMONS Issued as to Defendant Vee–Pak, Inc.,(2 different addresses) (jn, ) (Entered: 03/08/2013) |
| 03/08/2013 | 11 | WAIVER OF SERVICE returned executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys. Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP waiver sent on 3/7/2013, answer due 5/6/2013. (Williams, Christopher) (Entered: 03/08/2013) |
| 03/08/2013 | 12 | MINUTE entry before Honorable John J. Tharp, Jr:The initial status conference in this matter is set for 5/9/2013 at 9:00 a.m. The parties are directed to review the procedures and requirements for this conference on Judge Tharp's web site, which may be accessed at [www.ilnd.uscourts.gov/judges] and to submit the required Initial Status Report by 5/2/13.Mailed notice (air, ) (Entered: 03/08/2013) |
| 03/11/2013 | 13 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP by Carter A. Korey (Korey, Carter) (Entered: 03/11/2013) |
| 03/11/2013 | 14 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP by Elliot S. Richardson (Richardson, Elliot) (Entered: 03/11/2013) |
| 03/11/2013 | 15 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP by Ryan D Gibson (Gibson, Ryan) (Entered: 03/11/2013) |
| 03/18/2013 | 16 | WAIVER OF SERVICE returned executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys. Alternative Staffing, Inc. d/b/a ASI waiver sent on 3/8/2013, answer due 5/7/2013. (Williams, Christopher) (Entered: 03/18/2013) |
| 03/18/2013 | 17 | ATTORNEY Appearance for Defendant Alternative Staffing, Inc. d/b/a ASI by Kerryann Marie Haase (Haase, Kerryann) (Entered: 03/18/2013) |
| 03/18/2013 | 18 | ATTORNEY Appearance for Defendant Alternative Staffing, Inc. d/b/a ASI by Brian P Paul (Paul, Brian) (Entered: 03/18/2013) |
| 03/18/2013 | 19 | ATTORNEY Appearance for Defendant Alternative Staffing, Inc. d/b/a ASI by Katherine Lee Goyert (Goyert, Katherine) (Entered: 03/18/2013) |
| 03/18/2013 | 20 | WAIVER OF SERVICE returned executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys. (Williams, Christopher) (Entered: 03/18/2013) |
| 03/18/2013 | 21 | WAIVER OF SERVICE returned executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys. (Williams, Christopher) (Entered: 03/18/2013) |
| 03/18/2013 | 22 | SUMMONS Returned Executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys as to Vee–Pak, Inc., on 3/12/2013, answer due 4/2/2013. (Williams, Christopher) (Entered: 03/18/2013) |

| 03/26/2013 | 23 | MOTION by Defendant Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP to Preserve Evidence (Korey, Carter) (Entered: 03/26/2013) |
|---|---|---|
| 03/26/2013 | 24 | NOTICE of Motion by Carter A. Korey for presentment of motion for miscellaneous relief 23 before Honorable John J. Tharp Jr. on 4/4/2013 at 09:30 AM. (Korey, Carter) (Entered: 03/26/2013) |
| 03/27/2013 | 25 | WAIVER OF SERVICE returned executed by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys. Staffing Network Holdings, L.L.C. waiver sent on 3/8/2013, answer due 5/7/2013. (Williams, Christopher) (Entered: 03/27/2013) |
| 03/28/2013 | 26 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Brian Michael Dougherty (Dougherty, Brian) (Entered: 03/28/2013) |
| 03/28/2013 | 27 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Donald S. Rothschild (Rothschild, Donald) (Entered: 03/28/2013) |
| 03/28/2013 | 28 | MOTION by Defendant Vee−Pak, Inc., for extension of time to file answer regarding amended complaint, 10 (Rothschild, Donald) (Entered: 03/28/2013) |
| 03/28/2013 | 29 | NOTICE of Motion by Donald S. Rothschild for presentment of motion for extension of time to file answer, motion for relief 28 before Honorable John J. Tharp Jr. on 4/2/2013 at 09:30 AM. (Rothschild, Donald) (Entered: 03/28/2013) |
| 04/01/2013 | 30 | MINUTE entry before Honorable John J. Tharp, Jr:Defendant Vee−Pak, Inc.'s motion for extension of time to respond to the second amended complaint 28 is granted. No appearance on the motion is required. Defendant Vee−Pak's responsive pleading is due 4/30/13. Status hearing set for 5/9/13 remains in effect. Mailed notice (air, ) (Entered: 04/01/2013) |
| 04/02/2013 | 31 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Laura A. Balson (Attachments: # 1 Certificate of Service)(Balson, Laura) (Entered: 04/02/2013) |
| 04/02/2013 | 32 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Laura A. Balson *for Margaret A. Gisch* (Attachments: # 1 Certificate of Service)(Balson, Laura) (Entered: 04/02/2013) |
| 04/04/2013 | 33 | MINUTE entry before Honorable John J. Tharp, Jr: Motion hearing held. Defendant Personnel Staffing Group, LLC s motion to preserve evidence 23 is granted. Mailed notice (air, ) (Entered: 04/04/2013) |
| 04/29/2013 | 34 | ANSWER to amended complaint by Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP(Korey, Carter) (Entered: 04/29/2013) |
| 04/30/2013 | 35 | ANSWER to amended complaint *(Second Amended Complaint)* by Vee−Pak, Inc.,(Rothschild, Donald) (Entered: 04/30/2013) |
| 05/02/2013 | 36 | STATUS Report , *Initial−Joint* by Alternative Staffing, Inc. d/b/a ASI, Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP, Staffing Network Holdings, L.L.C., Torrence Vaughns, Vee−Pak, Inc.,, WJI Industries, Inc. d/b/a Staffing Network (Williams, Christopher) (Entered: 05/02/2013) |
| 05/07/2013 | 37 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Laura A. Balson *Brianna L. Golan Appearance* (Balson, Laura) (Entered: 05/07/2013) |
| 05/07/2013 | 38 | *Staffing Network's* ANSWER to amended complaint *Second Amended Complaint* by Staffing Network Holdings, L.L.C.(Balson, Laura) (Entered: 05/07/2013) |
| 05/07/2013 | 39 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Staffing Network Holdings, L.L.C. *Staffing Network's Disclosure Statement* (Balson, Laura) (Entered: 05/07/2013) |
| 05/07/2013 | 40 | ANSWER to amended complaint *SECOND AMENDED CLASS ACTION COMPLAINT* by Alternative Staffing, Inc. d/b/a ASI(Haase, Kerryann) (Entered: 05/07/2013) |

| 05/09/2013 | 41 | MINUTE entry before Honorable John J. Tharp, Jr: Status hearing held and continued to 6/20/2013 at 9:00 a.m. Plaintiff's oral request for leave to file a motion to amend its complaint is granted. This motion is due 5/23/2013. Parties to confer regarding a discovery plan in advance of the next status hearing. Mailed notice (air, ) (Entered: 05/09/2013) |
|---|---|---|
| 05/17/2013 | 42 | MOTION by Defendant Staffing Network Holdings, L.L.C. for leave to file *Appearances Instanter* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Maatman, Gerald) (Entered: 05/17/2013) |
| 05/17/2013 | 43 | NOTICE of Motion by Gerald L. Maatman, Jr for presentment of motion for leave to file 42 before Honorable John J. Tharp Jr. on 5/28/2013 at 09:30 AM. (Maatman, Gerald) (Entered: 05/17/2013) |
| 05/22/2013 | 44 | MINUTE entry before Honorable John J. Tharp, Jr:Motion by Defendant Staffing Network Holdings, L.L.C. for leave to file appearances instanter 42 is granted. No appearance on the motion required. Mailed notice (air, ) (Entered: 05/22/2013) |
| 05/24/2013 | 45 | *Third* AMENDED complaint by Torrence Vaughns, Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys against Alternative Staffing, Inc. d/b/a ASI, MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP, Staffing Network Holdings, L.L.C., Vee−Pak, Inc., and terminating WJI Industries, Inc. d/b/a Staffing Network (Attachments: # 1 Exhibit A−B)(Williams, Christopher) (Entered: 05/24/2013) |
| 05/24/2013 | 46 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Gerald L. Maatman, Jr (Maatman, Gerald) (Entered: 05/24/2013) |
| 05/24/2013 | 47 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Jennifer Ann Riley (Riley, Jennifer) (Entered: 05/24/2013) |
| 05/24/2013 | 48 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Rebecca Pratt Bromet (Bromet, Rebecca) (Entered: 05/24/2013) |
| 05/24/2013 | 49 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Matthew James Gagnon (Gagnon, Matthew) (Entered: 05/24/2013) |
| 05/31/2013 | 50 | MINUTE entry before Honorable John J. Tharp, Jr:On the Court's own motion, the status hearing set for 6/20/2013 is reset for 7/11/2013 at 09:00 AM. Mailed notice (air, ) (Entered: 05/31/2013) |
| 06/04/2013 | 51 | MOTION by Defendants Alternative Staffing, Inc., Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., Vee−Pak, Inc., for extension of time to file response/reply as to amended complaint, 45 (Rothschild, Donald) (Entered: 06/04/2013) |
| 06/04/2013 | 52 | NOTICE of Motion by Donald S. Rothschild for presentment of motion for extension of time to file response/reply, motion for relief 51 before Honorable John J. Tharp Jr. on 6/11/2013 at 09:30 AM. (Rothschild, Donald) (Entered: 06/04/2013) |
| 06/05/2013 | 53 | MINUTE entry before Honorable John J. Tharp, Jr: Unopposed motion by Defendants Alternative Staffing, Inc., Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., and Vee−Pak, Inc., for extension of time to respond to the Third Amended Class Action Complaint 45 is granted. No appearance on the motion is required. The defendants' responsive pleadings are due on 6/28/13. The status set for 6/20/13 is reset to 7/11/13 at 9:00 a.m. Mailed notice (air, ) (Entered: 06/05/2013) |
| 06/28/2013 | 54 | MOTION by Defendant Staffing Network Holdings, L.L.C. to dismiss *And/Or Strike Plaintiffs' Class Allegations* 45 (Maatman, Gerald) (Entered: 06/28/2013) |
| 06/28/2013 | 55 | MEMORANDUM by Staffing Network Holdings, L.L.C. in support of motion to dismiss 54 *And/Or Strike Plaintiffs' Class Allegations* (Maatman, Gerald) (Entered: 06/28/2013) |
| 06/28/2013 | 56 | NOTICE of Motion by Gerald L. Maatman, Jr for presentment of motion to dismiss 54 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Maatman, Gerald) (Entered: 06/28/2013) |

| 06/28/2013 | 57 | MOTION by Defendant Vee–Pak, Inc., to dismiss *third amended complaint* (Rothschild, Donald) (Entered: 06/28/2013) |
|---|---|---|
| 06/28/2013 | 58 | NOTICE of Motion by Donald S. Rothschild for presentment of motion to dismiss 57 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Rothschild, Donald) (Entered: 06/28/2013) |
| 06/28/2013 | 59 | MEMORANDUM by Vee–Pak, Inc., in support of motion to dismiss 57 (Attachments: # 1 Exhibit "1", # 2 Exhibit Group Exhibit 2a, # 3 Exhibit Group Exhibit 2b, # 4 Exhibit Group Exhibit 2c)(Rothschild, Donald) (Entered: 06/28/2013) |
| 06/28/2013 | 60 | MOTION by Defendant Vee–Pak, Inc., to strike *and dismiss class allegations and to deny class certification* (Rothschild, Donald) (Entered: 06/28/2013) |
| 06/28/2013 | 61 | NOTICE of Motion by Donald S. Rothschild for presentment of motion to strike 60 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Rothschild, Donald) (Entered: 06/28/2013) |
| 06/28/2013 | 62 | MEMORANDUM by Vee–Pak, Inc., in support of motion to strike 60 (Attachments: # 1 Exhibit Group Exhibit 1a, # 2 Exhibit Group Exhibit 1b, # 3 Exhibit Group Exhibit 1c, # 4 Exhibit Exhibit 2, # 5 Exhibit Exhibit 3)(Rothschild, Donald) (Entered: 06/28/2013) |
| 06/28/2013 | 63 | MOTION by Defendant Personnel Staffing Group, LLC to dismiss *or strike Plaintiffs' class allegations* (Korey, Carter) (Entered: 06/28/2013) |
| 06/28/2013 | 64 | NOTICE of Motion by Carter A. Korey for presentment of motion to dismiss 63 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Korey, Carter) (Entered: 06/28/2013) |
| 06/28/2013 | 65 | MEMORANDUM *OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STRIKE PLAINTIFFS CLASS ALLEGATIONS* (Korey, Carter) (Entered: 06/28/2013) |
| 06/28/2013 | 66 | NOTICE of Motion by Carter A. Korey for presentment of motion to dismiss 63 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Korey, Carter) (Entered: 06/28/2013) |
| 06/28/2013 | 67 | MOTION by Defendant Alternative Staffing, Inc. to dismiss *and/or Strike Class Claims in Count V of Plaintiffs Complaint* (Paul, Brian) (Entered: 06/28/2013) |
| 06/28/2013 | 68 | MEMORANDUM by Alternative Staffing, Inc. in support of motion to dismiss 67 *and/or Strike Class Claims in Count V of Plaintiffs Complaint* (Attachments: # 1 Exhibit 1)(Paul, Brian) (Entered: 06/28/2013) |
| 06/28/2013 | 69 | NOTICE of Motion by Brian P Paul for presentment of motion to dismiss 67 before Honorable John J. Tharp Jr. on 7/11/2013 at 09:30 AM. (Paul, Brian) (Entered: 06/28/2013) |
| 07/10/2013 | 70 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC by Nicholas Joseph Tatro (Tatro, Nicholas) (Entered: 07/10/2013) |
| 07/11/2013 | 71 | MINUTE entry before Honorable John J. Tharp, Jr: Status hearing held. Plaintiffs' response(s) to the defendants' motions to dismiss [54, 57, 60, 63, 67] are due 8/8/2013. Defendants' replies are due 8/30/2013. The motions to dismiss will be taken under advisement and the Court will rule via CM/ECF. The parties are to confer regarding the scope of discovery sought by Plaintiffs pending rulings on the motions to dismiss. Plaintiff is to submit an agreed proposed limited discovery schedule or, if no agreement is reached, a motion seeking discovery. A further status date will be set once the motions to dismiss have been briefed. Mailed notice (air, ) (Entered: 07/11/2013) |
| 08/08/2013 | 72 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns for extension of time to file response/reply as to motion to dismiss 63 , motion to strike 60 , motion to dismiss 57 , motion to dismiss 67 , motion to dismiss 54 *Plaintiffs' Unopposed Motion For An Extension Of Time To File Responses To Defendants' Motions To Dismiss* (Williams, Christopher) (Entered: 08/08/2013) |
| 08/08/2013 | 73 | NOTICE of Motion by Christopher J Williams for presentment of motion for extension of time to file response/reply, motion for relief,,,,,,,,,, 72 before Honorable |

| | | John J. Tharp Jr. on 8/13/2013 at 09:30 AM. (Williams, Christopher) (Entered: 08/08/2013) |
|---|---|---|
| 08/09/2013 | 74 | MINUTE entry before Honorable John J. Tharp, Jr: Plaintiffs' motion for extension of time to respond 72 to defendants' motion to dismiss 54 is granted. No appearance on the motion is required. Plaintiffs' responses are due 8/29/13. Replies due 9/20/13. Mailed notice (air, ) (Entered: 08/09/2013) |
| 08/30/2013 | 75 | RESPONSE by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughnsin Opposition to MOTION by Defendant Vee−Pak, Inc., to strike *and dismiss class allegations and to deny class certification* 60 , MOTION by Defendant Alternative Staffing, Inc. to dismiss *and/or Strike Class Claims in Count V of Plaintiffs Complaint* 67 , MOTION by Defendant Staffing Network Holdings, L.L.C. to dismiss *And/Or Strike Plaintiffs' Class Allegations* 45 54 , MOTION by Defendant Personnel Staffing Group, LLC to dismiss *or strike Plaintiffs' class allegations* 63 , MOTION by Defendant Vee−Pak, Inc., to dismiss *third amended complaint* 57 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Williams, Christopher) (Entered: 08/30/2013) |
| 08/30/2013 | 76 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns for Leave to File Response to Defendants' Motions To Dismiss in Excess of 15 pages (Williams, Christopher) (Entered: 08/30/2013) |
| 08/30/2013 | 77 | NOTICE of Motion by Christopher J Williams for presentment of motion for miscellaneous relief 76 before Honorable John J. Tharp Jr. on 9/5/2013 at 09:30 AM. (Williams, Christopher) (Entered: 08/30/2013) |
| 08/30/2013 | 78 | NOTICE of Motion by Christopher J Williams for presentment of motion for miscellaneous relief 76 before Honorable John J. Tharp Jr. on 9/5/2013 at 09:00 PM. (Williams, Christopher) (Entered: 08/30/2013) |
| 08/30/2013 | 79 | MINUTE entry before Honorable John J. Tharp, Jr:Plaintiff's motion to file brief in excess of 15 pages 76 is granted. The court further orders that the defendants, including Vee−Pak, may each file one reply brief not to exceed 5 pages per brief, or a single joint reply brief of no more than 20 pages. No appearance required on the motion. Mailed notice (air, ) (Entered: 08/30/2013) |
| 09/20/2013 | 80 | REPLY by Alternative Staffing, Inc., Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., Vee−Pak, Inc., to MOTION by Defendant Personnel Staffing Group, LLC to dismiss *or strike Plaintiffs' class allegations* 63 , MOTION by Defendant Vee−Pak, Inc., to strike *and dismiss class allegations and to deny class certification* 60 , MOTION by Defendant Vee−Pak, Inc., to dismiss *third amended complaint* 57 , response in opposition to motion,,, 75 , MOTION by Defendant Alternative Staffing, Inc. to dismiss *and/or Strike Class Claims in Count V of Plaintiffs Complaint* 67 , MOTION by Defendant Staffing Network Holdings, L.L.C. to dismiss *And/Or Strike Plaintiffs' Class Allegations* 45 54 (*Defendants' JOINT Reply Memo Of Law In Support Of Their Motions To Dismiss And/Or Strike Plaintiffs' Class Allegations And Motion To Dismiss Plaintiffs' Claims*) (Maatman, Gerald) (Entered: 09/20/2013) |
| 10/30/2013 | 81 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns by Joseph M Sellers (Sellers, Joseph) (Entered: 10/30/2013) |
| 11/13/2013 | 82 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns by Peter Romer−Friedman (Romer−Friedman, Peter) (Entered: 11/13/2013) |
| 11/21/2013 | 83 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC by Britney Zilz (Zilz, Britney) (Entered: 11/21/2013) |
| 12/03/2013 | 84 | MOTION by Defendant Personnel Staffing Group, LLC Defendant Personnel Staffing Group, LLC's Motion to Cease and Desist Improper and/or Misleading Solicitation of Potential Putative Class Members (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gibson, Ryan) (Entered: 12/03/2013) |
| 12/03/2013 | 85 | NOTICE of Motion by Ryan D Gibson for presentment of motion for miscellaneous relief, 84 before Honorable John J. Tharp Jr. on 12/11/2013 at 09:00 AM. (Gibson, |

| | | Ryan) (Entered: 12/03/2013) |
|---|---|---|
| 12/11/2013 | 86 | MINUTE entry before the Honorable John J. Tharp, Jr: Motion hearing held. Defendant Personnel Staffing's motion to cease and desist 84 is denied without prejudice for the reasons stated on the record. Mailed notice (air, ) (Entered: 12/11/2013) |
| 12/12/2013 | 87 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns by Jenee Iman Gaskin (Gaskin, Jenee) (Entered: 12/12/2013) |
| 02/19/2014 | 88 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file *PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL CASE LAW IN SUPPORT OF THEIR CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO DISMISS* (Attachments: # 1 Exhibit A− Case Law, # 2 Exhibit B− Judge Ellis' Order and Opinion)(Williams, Christopher) (Entered: 02/19/2014) |
| 02/19/2014 | 89 | NOTICE of Motion by Christopher J Williams for presentment of motion for leave to file, 88 before Honorable John J. Tharp Jr. on 3/6/2014 at 09:00 AM. (Williams, Christopher) (Entered: 02/19/2014) |
| 02/20/2014 | 90 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiffs' motion for leave to supplement response brief 88 is granted. No appearance on the motion is required. The defendants may file a joint response of no more than 5 pages within 14 days. Mailed notice (air, ) (Entered: 02/20/2014) |
| 03/06/2014 | 91 | RESPONSE by Defendant Vee−Pak, Inc., to notice of motion 89 (Attachments: # 1 Exhibit "A")(Rothschild, Donald) (Entered: 03/06/2014) |
| 07/24/2014 | 92 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file *SUPPLEMENTAL CASE LAW IN SUPPORT OF THEIR CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO DISMISS* (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 07/24/2014) |
| 07/24/2014 | 93 | NOTICE of Motion by Christopher J Williams for presentment of motion for leave to file, 92 before Honorable John J. Tharp Jr. on 8/6/2014 at 09:00 AM. (Williams, Christopher) (Entered: 07/24/2014) |
| 07/25/2014 | 94 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiff's motion for leave to file supplemental authority 92 is granted. However, no further supplementation will be accepted unless it consists of binding legal authority. Mailed notice (air, ) (Entered: 07/25/2014) |
| 09/17/2014 | 95 | MINUTE entry before the Honorable John J. Tharp, Jr: For the reasons set forth in the Memorandum Opinion, Vee Pak's motion to dismiss 57 is denied. The defendants' motions to strike [54, 60, 63, 67] are granted in part, only insofar as the class definition is stricken without prejudice, and otherwise denied. A status hearing is set for 10/2/2014 at 9:00 a.m. ENTER MEMORANDUM OPINION. Mailed notice (air, ) (Entered: 09/17/2014) |
| 09/17/2014 | 96 | MEMORANDUM Opinion and Order Signed by the Honorable John J. Tharp, Jr on 9/17/2014:Mailed notice(air, ) (Entered: 09/17/2014) |
| 10/02/2014 | 97 | MINUTE entry before the Honorable John J. Tharp, Jr: Status hearing held. Plaintiffs granted leave to file an amended complaint on or before 10/10/14. Defendant's answer is due by 10/31/14. Case is referred to the Magistrate Judge for the purposes of discovery scheduling, discovery supervision and settlement conference if appropriate. Mailed notice (air, ) (Entered: 10/02/2014) |
| 10/02/2014 | 98 | EXECUTIVE COMMITTEE ORDER: Case referred to the Honorable Daniel G. Martin. Signed by Executive Committee on 10/2/2014. (ph, ) (Entered: 10/03/2014) |
| 10/06/2014 | 99 | MINUTE entry before the Honorable Daniel G. Martin:Initial status hearing set for 10/14/2014 at 09:30 a.m. in courtroom 1350. Out−of−town counsel may make arrangements with Judge Martin's Courtroom Deputy (312−435−5833) to participate in the status hearing by telephone. Local counsel must be present personally. Counsel shall file and deliver a copy of an initial status report to chambers (Room 1356) at least three (3) business days before the initial status hearing. If counsel have recently |

| | | |
|---|---|---|
| | | prepared and filed a status report with the district court, the submission of a previously filed status report to Judge Martin's chambers is sufficient. Counsel are expected to be familiar with and follow Judge Martin's Case Management Procedures posted on his web page at www.ilnd.uscourts.gov. Mailed notice (lxs, ) (Entered: 10/06/2014) |
| 10/09/2014 | 100 | STATUS Report , *Joint* by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns (Williams, Christopher) (Entered: 10/09/2014) |
| 10/10/2014 | 101 | FOURTH AMENDED CLASS ACTION COMPLAINT by Aronzo Davis, Joe Eagle, Brian Lucas, Michael Keys against Alternative Staffing, Inc., Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., Vee−Pak, Inc., and terminating Torrence Vaughns (Attachments: # 1 Exhibit Group Exhibit A, # 2 Exhibit Exhibit B) (Williams, Christopher) Docket Text Modified by the Clerk's Office on 10/14/2014 (jh, ). (Entered: 10/10/2014) |
| 10/14/2014 | 102 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Ashley Choren Workman (Workman, Ashley) (Entered: 10/14/2014) |
| 10/14/2014 | 103 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held and continued to 11/18/2014 at 9:30 a.m. Joint briefing regarding discovery bifurcation is due by 10/28/2014. Defendant Alternative Staffing Inc expressed interest in proceeding with a settlement conference at this time. Remaining defendants advised additional discovery is required. Mailed notice (lxs, ) (Entered: 10/14/2014) |
| 10/28/2014 | 104 | MEMORANDUM by Alternative Staffing, Inc., MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., Vee−Pak, Inc.,, WJI Industries, Inc. d/b/a Staffing Network *(Defendants' Memo of Law In Support Of Bifurcation Of Discovery)* (Maatman, Gerald) (Entered: 10/28/2014) |
| 10/28/2014 | 105 | MEMORANDUM by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas *(Plaintiffs' Memorandum in Support of Non−Bifurcated Discovery)* (Williams, Christopher) (Entered: 10/28/2014) |
| 10/29/2014 | 106 | MEMORANDUM by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas *(Plaintiffs' Memorandum in Support of Non−Bifurcated Discovery−Corrected, with Exhibit)* (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 10/29/2014) |
| 10/31/2014 | 107 | *Defendant Staffing Network's Affirmative Defenses and* ANSWER to amended complaint by Staffing Network Holdings, L.L.C.(Maatman, Gerald) (Entered: 10/31/2014) |
| 10/31/2014 | 108 | *Personnel Staffing Group, LLC's* ANSWER to amended complaint *and Affirmative Defenses to Plaintiffs' Fourth Amended Class Action Complaint* by Personnel Staffing Group, LLC (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 10/31/2014) |
| 10/31/2014 | 109 | ANSWER to amended complaint *fourth* by Vee−Pak, Inc.,(Dougherty, Brian) (Entered: 10/31/2014) |
| 10/31/2014 | 110 | ANSWER to amended complaint *Fourth Amended Complaint* by Alternative Staffing, Inc.(Paul, Brian) (Entered: 10/31/2014) |
| 11/04/2014 | 111 | MOTION by Defendant Staffing Network Holdings, L.L.C. to substitute attorney (Korey, Carter) (Entered: 11/04/2014) |
| 11/04/2014 | 112 | NOTICE of Motion by Carter A. Korey for presentment of motion to substitute attorney 111 before Honorable John J. Tharp Jr. on 11/11/2014 at 09:00 AM. (Korey, Carter) (Entered: 11/04/2014) |
| 11/05/2014 | 113 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion for substitution of counsel 111 is granted. No appearance on the motion is required. The appearances of attorneys Brianna L. Golan, Laura A. Balson, Gerald L. Maatman, Jr., Jennifer A. Riley, Ashley C. Workman, Rebecca Pratt Bromet, and Matthew J. Gagnon, are terminated. Attorneys Carter A. Korey, Elliot Richardson, Ryan D. Gibson, and Britney Zilz have leave to appear on behalf of defendant Staffing Network. Mailed notice (air, ) (Entered: 11/05/2014) |

| 11/05/2014 | 114 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Elliot S. Richardson (Richardson, Elliot) (Entered: 11/05/2014) |
|---|---|---|
| 11/05/2014 | 115 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Ryan D Gibson (Gibson, Ryan) (Entered: 11/05/2014) |
| 11/05/2014 | 116 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Carter A. Korey (Korey, Carter) (Entered: 11/05/2014) |
| 11/05/2014 | 117 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Britney Zilz (Zilz, Britney) (Entered: 11/05/2014) |
| 11/13/2014 | 118 | ORDER Signed by the Honorable Daniel G. Martin on 11/13/2014: Defendants' request for bifurcated discovery is denied. (See Order For Further Details) Mailed notice(lxs, ) (Entered: 11/13/2014) |
| 11/18/2014 | 119 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held and continued to 12/16/2014 at 9:30 a.m. Counsel for Plaintiff and Defendants Vee−Pak, Inc and Alternative Staffing, Inc expressed an interest in settlement. Counsel for Defendants Staffing Network Holdings, L.L.C. and Personnel Staffing Group, LLC advised that a settlement at this time would not be fruitful. Parties shall submit a Joint Proposed Scheduling Order, no later than 11/25/2014.Mailed notice (lxs, ) (Entered: 11/18/2014) |
| 11/25/2014 | 120 | Parties' Joint Proposed Discovery Schedule by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas (Williams, Christopher) (Entered: 11/25/2014) |
| 11/26/2014 | 121 | MINUTE entry before the Honorable Daniel G. Martin:The Court adopts the parties' proposed discovery schedule. Fact discovery closes on 8/3/2015. All expert depositions are to be completed by 12/1/2015. Given the generous time periods specified in the proposed schedule, the parties shall work diligently to meet the deadlines stated therein. Mailed notice (lxs, ) (Entered: 11/26/2014) |
| 12/16/2014 | 122 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held and continued to 1/27/2015 at 9:30 a.m. A settlement conference involving defendants Alternative Staffing and Vee−Pak, Inc. is set for 3/24/2015 at 2:00 p.m. The remaining defendants are not interested in attending a settlement conference at this time.Mailed notice (lxs, ) (Entered: 12/17/2014) |
| 12/22/2014 | 123 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing set for 1/27/2015 is amended to begin at 10:00 AM.Mailed notice (lxs, ) (Entered: 12/22/2014) |
| 01/27/2015 | 124 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held and continued to 4/28/2015 at 9:30 a.m. Defendant Vee−Pak, Inc. represented that it is no longer interested in participating in a settlement conference at this time. Upon further consideration, the 3/24/15 settlement conference date is stricken. Counsel for Plaintiff and ASI are directed to contact the courtroom deputy to reset the settlement conference. (rbf, ) (Entered: 01/27/2015) |
| 01/29/2015 | 125 | MINUTE entry before the Honorable Daniel G. Martin: Settlement Conference set for 4/7/2015 at 02:00 p.m. Plaintiff's settlement letter is due 3/24/15; defendant's letter is due 3/31/15. The parties are reminded that Magistrate Judge Martin requires compliance with his Standing Order for Settlement Conferences. Each party is required to email a copy of its settlement letter to Magistrate Judge Martin's settlement conference inbox on the same day it is provided to opposing counsel. The email address is Settlement_Correspondence_Martin@ilnd.uscourts.gov. Do not file copies of these letters on the court docket. (rbf, ) (Entered: 01/29/2015) |
| 01/30/2015 | 126 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC by Ashley M. Vanpool (Vanpool, Ashley) (Entered: 01/30/2015) |
| 01/30/2015 | 127 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Ashley M. Vanpool (Vanpool, Ashley) (Entered: 01/30/2015) |
| 02/06/2015 | 128 | NOTICE by Alvar Ayala of Change of Address (Ayala, Alvar) (Entered: 02/06/2015) |
| 02/10/2015 | 129 | NOTICE by Christopher J Williams of Change of Address (Williams, Christopher) (Entered: 02/10/2015) |

| 02/12/2015 | 130 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas to withdraw *Motion to Withdraw Appearance of Jenee Gaskin* (Williams, Christopher) (Entered: 02/12/2015) |
|---|---|---|
| 02/12/2015 | 131 | NOTICE of Motion by Christopher J. Williams for presentment of motion to withdraw 130 before Honorable Daniel G. Martin on 2/19/2015 at 09:00 AM. (Williams, Christopher) (Entered: 02/12/2015) |
| 02/13/2015 | 132 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion to withdraw as attorney 130 is granted. No appearance on the motion is required. Jenee Gaskin's appearance as counsel shall be terminated. Mailed notice (air, ) (Entered: 02/13/2015) |
| 03/26/2015 | 133 | MINUTE entry before the Honorable Daniel G. Martin: At counsels' request, settlement conference set for 4/7/2015 is stricken. Plaintiff and Defendant Alternative Staffing, Inc. are proceeding in private mediation currently set for 4/23/2015. Plaintiff and Defendants Vee−Pak, Inc.,Personnel Staffing Group, LLC, and Staffing Network Holdings, L.L.C. are proceeding with discovery as previously entered. Status hearing currently set for 4/28/2015 at 9:30 a.m. to stand for status of mediation between Plaintiff and Defendant Alternative Staffing, Inc. Mailed notice (lxs, ) (Entered: 03/26/2015) |
| 04/02/2015 | 134 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for protective order *Joint Motion For A Protective Order* (Attachments: # 1 Exhibit A)(Zilz, Britney) (Entered: 04/02/2015) |
| 04/02/2015 | 135 | *Notice of Motion for Joint Motion For A Protective Order* NOTICE of Motion by Britney Zilz for presentment of motion for protective order 134 before Honorable John J. Tharp Jr. on 4/8/2015 at 09:00 AM. (Zilz, Britney) (Entered: 04/02/2015) |
| 04/02/2015 | 136 | MINUTE entry before the Honorable John Jr. Tharp, Jr:In reference to the parties' Joint Motion for a Protective Order 134 , the parties are directed to review the procedures for the submission of a proposed protective order as set forth on the Court's website and to submit a proposed order to the Court's proposed order inbox in conformity with those procedures. The motion is taken under advisement pending that submission; no appearance on the motion is required on 4/8/15. Mailed notice (air, ) (Entered: 04/02/2015) |
| 04/14/2015 | 137 | PROPOSED Agreed Confidentiality Order by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Supplement Final Proposed Protective Order, # 2 Notice of Filing)(Zilz, Britney) Docket Text Modified by Clerk's Office on 4/16/2015 (jh, ). (Entered: 04/14/2015) |
| 04/15/2015 | 138 | MINUTE entry before the Honorable John J. Tharp, Jr: In reference to the parties' Joint Proposed Protective Order 137 , the parties are once again directed to review the procedures for the submission of a proposed protective order as set forth on the Courts website and to submit a redlined Word version of the proposed order to the Court's proposed order inbox (Proposed_Order_Tharp@ilnd.uscourts.gov) in conformity with those procedures. Mailed notice (air, ) (Entered: 04/15/2015) |
| 04/16/2015 | 139 | AGREED Confidentiality Order. Signed by the Honorable John J. Tharp, Jr on 4/16/2015. Mailed notice(air, ) (Entered: 04/16/2015) |
| 04/16/2015 | 140 | MINUTE entry before the Honorable John J. Tharp, Jr: The parties' Joint Motion for Protective Order 134 is granted. Enter Protective Order. Mailed notice (air, ) (Entered: 04/16/2015) |
| 04/24/2015 | 141 | MOTION by counsel for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas to withdraw as attorney *Peter Romer−Friedman* (Romer−Friedman, Peter) (Entered: 04/24/2015) |
| 04/24/2015 | 142 | NOTICE of Motion by Peter Romer−Friedman for presentment of motion to withdraw as attorney 141 before Honorable John J. Tharp Jr. on 4/28/2015 at 01:30 PM. (Romer−Friedman, Peter) (Entered: 04/24/2015) |
| 04/27/2015 | 143 | *CORRECTED* NOTICE of Motion by Peter Romer−Friedman for presentment of motion to withdraw as attorney 141 before Honorable John J. Tharp Jr. on 4/30/2015 at 09:00 AM. (Romer−Friedman, Peter) (Entered: 04/27/2015) |

| | | |
|---|---|---|
| 04/27/2015 | 144 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion to withdraw as counsel for plaintiffs 141 is granted. No appearance on the motion is required. Peter Romer−Friedman's appearance as counsel shall be terminated. Mailed notice (air, ) (Entered: 04/27/2015) |
| 04/28/2015 | 145 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held and continued to 7/7/2015 at 9:30 a.m. Plaintiff and Defendant Alternative Staffing reached an agreement to settlement during private meditation. Plaintiff and remaining defendants are proceeding with discovery at this time.Mailed notice (lxs, ) (Entered: 04/28/2015) |
| 07/07/2015 | | AGREED ORAL MOTION by Plaintiffs for extension of time to complete discovery. (lxs, ) (Entered: 07/07/2015) |
| 07/07/2015 | 146 | MINUTE entry before the Honorable Daniel G. Martin: Magistrate Judge Status hearing held on 7/7/2015 and continued to 9/22/2015 at 09:30 a.m. Counsel advised Plaintiff and Defendant Alternative Staffing are currently reviewing draft agreement on the settlement reached during private mediation. Counsel reported progress of discovery as to the remaining Defendants. AGREED ORAL MOTION by Plaintiffs for extension of time to complete discovery is granted to and including 10/1/2015. Parties shall advise the court at the next status if additional discovery time is required. Mailed notice (lxs, ) (Entered: 07/07/2015) |
| 08/18/2015 | 147 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns to compel *Materials Responsive to Discovery Requests to Defendants Staffing Network and MVP* (Attachments: # 1 Exhibit Exhibits A−D, # 2 Exhibit Exhibits E−H, # 3 Exhibit Exhibits I−J)(Williams, Christopher) (Entered: 08/18/2015) |
| 08/18/2015 | 148 | *Notice of Motion to Compel Materials Responsive to Discovery Requests to Defendants Staffing Network and MVP* NOTICE of Motion by Christopher J. Williams for presentment of motion to compel, 147 before Honorable Daniel G. Martin on 8/27/2015 at 10:00 AM. (Williams, Christopher) (Entered: 08/18/2015) |
| 08/19/2015 | 149 | MINUTE entry before the Honorable Daniel G. Martin:Plaintiffs' motion to compel 147 fails to comply with LR 37.2. The parties are directed to meet and confer in person or by phone by 8/25/2015 to satisfy the local rule's required elements. The notice date of 8/27/2015 is stricken. The parties shall file a joint status report by 8/27/2015 outlining with specificity what parts of the motion, if any, have been resolved and what elements require Court intervention. The Court will set a briefing schedule as necessary at that point.Mailed notice (lxs, ) (Entered: 08/19/2015) |
| 08/26/2015 | 150 | STATUS Report *PARTIES' JOINT STATUS REPORT ON DISCOVERY DISPUTES* by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas (Williams, Christopher) (Entered: 08/26/2015) |
| 08/26/2015 | 151 | MINUTE entry before the Honorable Daniel G. Martin:The Court agrees with the parties 150 that full briefing is required concerning the motion to compel 147 . Defendants' response is due by 9/17/2015. A reply shall be filed by 10/1/2015. Mailed notice (lxs, ) (Entered: 08/26/2015) |
| 09/03/2015 | 152 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas by Miriam Rose Nemeth (Nemeth, Miriam) (Entered: 09/03/2015) |
| 09/03/2015 | 153 | ATTORNEY Appearance for Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas by Shaylyn Capri Cochran (Cochran, Shaylyn) (Entered: 09/03/2015) |
| 09/08/2015 | 154 | MOTION by Defendants MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Staffing Network Holdings, L.L.C. for extension of time to complete discovery (Zilz, Britney) (Entered: 09/08/2015) |
| 09/08/2015 | 155 | NOTICE of Motion by Britney Zilz for presentment of motion for extension of time to complete discovery 154 before Honorable Daniel G. Martin on 9/15/2015 at 09:00 AM. (Zilz, Britney) (Entered: 09/08/2015) |
| 09/09/2015 | 156 | MINUTE entry before the Honorable Daniel G. Martin:Defendants' agreed motion to extend fact discovery through 12/1/2015 154 is granted. The parties are free to accelerate their briefing on the motion to compel 147 as they see fit. The Court will rule on the motion promptly once briefing is complete. Mailed notice (lxs, ) (Entered: |

| | | 09/09/2015) |
|---|---|---|
| 09/17/2015 | 157 | RESPONSE by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C.in Opposition to MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns to compel *Materials Responsive to Discovery Requests to Defendants Staffing Network and MVP* 147 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit Group Exhibit E, # 6 Exhibit Group Exhibit F, # 7 Exhibit Group Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Notice of Filing Notice of Filing)(Zilz, Britney) (Entered: 09/17/2015) |
| 09/22/2015 | 158 | MINUTE entry before the Honorable Daniel G. Martin:Status hearing held and continued to 12/1/2015 at 9:30 a.m. Counsel reported on the progress of discovery. The Court will issue a written ruling on Plaintiff's Motion to Compel.Mailed notice (lxs, ) (Entered: 09/22/2015) |
| 09/28/2015 | 159 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Edward C. Jepson, Jr (Jepson, Edward) (Entered: 09/28/2015) |
| 09/28/2015 | 160 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Thomas G. Abram (Abram, Thomas) (Entered: 09/28/2015) |
| 10/01/2015 | 161 | REPLY by Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns to response in opposition to motion,, 157 , MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas, Torrence Vaughns to compel *Materials Responsive to Discovery Requests to Defendants Staffing Network and MVP* 147 *PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL MATERIALS RESPONSIVE TO DISCOVERY REQUESTS TO DEFENDANTS STAFFING NETWORK AND MVP* (Attachments: # 1 Exhibit A−Affidavit of Lisette Robles of Personnel Staffing Group, LLC, # 2 Exhibit B− Plaintiffs' F.R.C.P. 26(a)(1) Disclosures, # 3 Exhibit C (excerpted)− Plaintiff Brian Lucas' Reponses to Defendant Staffing Network Holding, LLC's First Set of Interrogatories, # 4 Exhibit D− Transcript of Proceedings before the Honorable Young B. Kim, Magistrate Judge, # 5 Exhibit E− September 23, 2015 email from Plaintiffs' Counsel to Defendants' Counsel)(Williams, Christopher) (Entered: 10/01/2015) |
| 10/05/2015 | 162 | ORDER Signed by the Honorable Daniel G. Martin on 10/5/2015. Plaintiff's Motion to Compel 147 is denied without prejudice. (See Order For Further Details)Mailed notice(lxs, ) (Entered: 10/05/2015) |
| 11/02/2015 | 163 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for extension of time to complete discovery *Parties' Joint Motion For An Extension Of Discovery Deadlines Until January 31, 2016* (Williams, Christopher) (Entered: 11/02/2015) |
| 11/02/2015 | 164 | NOTICE of Motion by Christopher J. Williams for presentment of motion for extension of time to complete discovery 163 before Honorable Daniel G. Martin on 11/5/2015 at 10:00 AM. (Williams, Christopher) (Entered: 11/02/2015) |
| 11/03/2015 | 165 | MINUTE entry before the Honorable Daniel G. Martin: Parties' Joint MOTION by Plaintiffs for Extension of Time to Complete Discovery Until January 31, 2016 163 , noticed for 11/5/2015 is stricken and reset to 11/10/2015 at 10:00 a.m.Mailed notice (lxs, ) (Entered: 11/03/2015) |
| 11/09/2015 | 166 | MINUTE entry before the Honorable Daniel G. Martin: The parties' joint motion to extend discovery 163 is granted. The parties need not appear on 11/10/2015. Discovery is extended through 2/1/2016. Based on the parties' representations, all discovery must be completed by that date. Mailed notice (lxs, ) (Entered: 11/09/2015) |
| 11/23/2015 | 167 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian LucasParties' Joint Motion for Entry of a Joint Stipulation and Proposed Order (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 11/23/2015) |
| 11/23/2015 | 168 | NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief 167 before Honorable John J. Tharp Jr. on 12/1/2015 at 09:00 AM. (Williams, Christopher) (Entered: 11/23/2015) |
| 11/24/2015 | 169 | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' joint motion for entry of stipulation and order 167 is granted. No appearance on the motion is required. |

| | | |
|---|---|---|
| | | The parties should submit a clean copy of their proposed order in Word format to the Court's Proposed Orders email address. Mailed notice (air, ) (Entered: 11/24/2015) |
| 11/24/2015 | 170 | STIPULATION and Order. Signed by the Honorable John J. Tharp, Jr on 11/24/2015. Mailed notice(air, ) (Entered: 11/24/2015) |
| 11/24/2015 | 171 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file a *Fifth Amended Complaint* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Williams, Christopher) (Entered: 11/24/2015) |
| 11/24/2015 | 172 | NOTICE of Motion by Christopher J. Williams for presentment of motion for leave to file 171 before Honorable John J. Tharp Jr. on 12/1/2015 at 09:00 AM. (Williams, Christopher) (Entered: 11/24/2015) |
| 11/25/2015 | 173 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for leave to file *Response Brief in Opposition to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint* (Zilz, Britney) (Entered: 11/25/2015) |
| 11/25/2015 | 174 | NOTICE of Motion by Britney Zilz for presentment of motion for leave to file 173 before Honorable John J. Tharp Jr. on 12/1/2015 at 09:00 AM. (Zilz, Britney) (Entered: 11/25/2015) |
| 11/30/2015 | 175 | MINUTE entry before the Honorable John J. Tharp, Jr:Defendant's motion for leave to file response brief 173 is granted. No appearance on the motion is required. Any defendant may file a response brief by 12/9/15. Presentment of the motion for leave to amend 171 is not required; the hearing of 12/1/15 is stricken. The Court will rule by ECF notice. Mailed notice (air, ) (Entered: 11/30/2015) |
| 12/01/2015 | 176 | MINUTE entry before the Honorable Daniel G. Martin: Magistrate Judge Status hearing held on 12/1/2015 and continued to 1/12/2015 at 09:30 a.m. Parties reported progress on discovery. Mailed notice (lxs, ) (Entered: 12/01/2015) |
| 12/01/2015 | 177 | ATTORNEY Appearance for Respondents Leone Bicchieri, Dan Giloth, Elce Redmond by Sean Morales Doyle (Morales Doyle, Sean) (Entered: 12/01/2015) |
| 12/01/2015 | 178 | MOTION by Respondent Leone Bicchieri to quash *deposition subpoena* (Morales Doyle, Sean) (Entered: 12/01/2015) |
| 12/01/2015 | 179 | MEMORANDUM by Leone Bicchieri in support of motion to quash 178 (Attachments: # 1 Exhibit A (Group Exhibit), # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K (Group Exhibit), # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N)(Morales Doyle, Sean) (Entered: 12/01/2015) |
| 12/01/2015 | 180 | NOTICE of Motion by Sean Morales Doyle for presentment of motion to quash 178 before Honorable Daniel G. Martin on 12/10/2015 at 10:00 AM. (Morales Doyle, Sean) (Entered: 12/01/2015) |
| 12/02/2015 | 181 | TRANSCRIPT OF PROCEEDINGS held on 12/01/15 before the Honorable Daniel G. Martin. Court Reporter Contact Information: Lisa Breiter lisa_breiter@ilnd.uscourts.gov (312) 818−6683.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/23/2015. Redacted Transcript Deadline set for 1/4/2016. Release of Transcript Restriction set for 3/1/2016. (Breiter, Lisa) (Entered: 12/02/2015) |
| 12/03/2015 | 182 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to stay *Oral Discovery* (Attachments: # 1 Exhibit)(Zilz, Britney) (Entered: 12/03/2015) |

| 12/03/2015 | 183 | NOTICE of Motion by Britney Zilz for presentment of motion to stay 182 before Honorable John J. Tharp Jr. on 12/8/2015 at 09:00 AM. (Zilz, Britney) (Entered: 12/03/2015) |
|---|---|---|
| 12/03/2015 | 184 | MINUTE entry before the Honorable Daniel G. Martin: Defendants are directed to respond to the Motion to Quash 178 by 12/7/2015. No reply is needed unless requested by the Court.Mailed notice (lxs, ) (Entered: 12/03/2015) |
| 12/07/2015 | 185 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for extension of time to file response/reply *to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint* (Zilz, Britney) (Entered: 12/07/2015) |
| 12/07/2015 | 186 | NOTICE of Motion by Britney Zilz for presentment of motion for extension of time to file response/reply 185 before Honorable John J. Tharp Jr. on 12/15/2015 at 09:00 AM. (Zilz, Britney) (Entered: 12/07/2015) |
| 12/07/2015 | 187 | RESPONSE by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C.in Opposition to MOTION by Respondent Leone Bicchieri to quash *deposition subpoena* 178 (Attachments: # 1 Exhibit Exhibits A–Q, # 2 Notice of Filing)(Vanpool, Ashley) (Entered: 12/07/2015) |
| 12/07/2015 | 188 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for leave to file *Under Seal Exhibits* (Vanpool, Ashley) (Entered: 12/07/2015) |
| 12/07/2015 | 189 | NOTICE of Motion by Ashley M. Vanpool for presentment of motion for leave to file 188 before Honorable Daniel G. Martin on 12/15/2015 at 10:00 AM. (Vanpool, Ashley) (Entered: 12/07/2015) |
| 12/08/2015 | 190 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. For the reasons stated on record the following motions are granted: Defendants Staffing Network and Personnel Staffing Group's motion to stay oral discovery 182 pending further ruling on the motion for leave to amend and their motion for an extension of time to 12/15/15 to file a response to Plaintiffs' motion for leave to file fifth amended complaint 185 . Mailed notice (air, ) (Entered: 12/08/2015) |
| 12/09/2015 | 191 | MINUTE entry before the Honorable Daniel G. Martin:In light of the District Court's ruling 190 the notice of motion 180 set for 12/10/2015 is stricken. The Court will rule on the discovery motion 178 once the stay on oral discovery is lifted.Mailed notice (lxs, ) (Entered: 12/09/2015) |
| 12/10/2015 | 192 | MINUTE entry before the Honorable Daniel G. Martin: Defendant Staffing Network is directed to supplement it motion for leave 188 by 12/18/2015 to demonstrate why exhibits should be filed under seal. Paragraph 7 of the Confidentiality Order 139 requires parties to demonstrate why proposed sealed documents comply with LR 26.2 The Local Rule, in turn, requires a showing of good cause for being sealed. Defendant has not currently shown why all of the proposed exhibits contain confidential information. Mailed notice (lxs, ) (Entered: 12/10/2015) |
| 12/14/2015 | 193 | MINUTE entry before the Honorable Daniel G. Martin: MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for leave to file Under Seal Exhibits 188 , noticed for 12/15/2015 is stricken. No appearance is required. Mailed notice (lxs, ) (Entered: 12/14/2015) |
| 12/15/2015 | 194 | RESPONSE by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C.in Opposition to MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file *a Fifth Amended Complaint* 171 (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 12/15/2015) |
| 12/15/2015 | 195 | Exhibits A–D to Defendants Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Response in Opposition to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D)(Zilz, Britney) (Entered: 12/15/2015) |
| 12/15/2015 | 196 | Exhibits E–N to Defendants Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Response in Opposition to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Zilz, Britney) (Entered: 12/15/2015) |

| 12/15/2015 | 197 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for leave to file *Under Seal Exhibits to its response to the Motion for Leave to file a Fifth Amended Complaint* (Zilz, Britney) (Entered: 12/15/2015) |
| --- | --- | --- |
| 12/15/2015 | 198 | NOTICE of Motion by Britney Zilz for presentment of motion for leave to file 197 before Honorable John J. Tharp Jr. on 1/4/2016 at 09:00 AM. (Zilz, Britney) (Entered: 12/15/2015) |
| 12/15/2015 | 199 | NOTICE of Motion by Britney Zilz for presentment of motion for leave to file 197 before Honorable John J. Tharp Jr. on 1/5/2016 at 09:00 AM. (Zilz, Britney) (Entered: 12/15/2015) |
| 12/16/2015 | 200 | MINUTE entry before the Honorable John J. Tharp, Jr:On the Court's own motion, Defendants Staffing Network and Personnel Staffing's motion for leave to file 197 is reset for presentment on 1/6/16 at 9:00 a.m. No appearance required on 1/5/16. Mailed notice (air, ) (Entered: 12/16/2015) |
| 12/18/2015 | 201 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendants telephonically withdraw their motion for leave to file exhibits under seal 188 . The motion is deemed withdrawn. Mailed notice (air, ) (Entered: 12/18/2015) |
| 12/21/2015 | 202 | Exhibits B, E, F, G, H, I, and L to Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Response in Opposition to the Motion to Quash Subpoena Directed to Leone Bicchieri by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 12/21/2015) |
| 12/21/2015 | 203 | Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Statement Regarding Confidentiality of Exhibits to Their Response to Leone Bicchieri's Motion to Quash by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 12/21/2015) |
| 12/21/2015 | 204 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file *PLAINTIFFS' MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT* (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3, # 4 Exhibit Attachment 4, # 5 Exhibit Attachment 5)(Williams, Christopher) (Entered: 12/21/2015) |
| 12/21/2015 | 205 | NOTICE of Motion by Christopher J. Williams for presentment of motion for leave to file, 204 before Honorable John J. Tharp Jr. on 1/7/2016 at 09:00 AM. (Williams, Christopher) (Entered: 12/21/2015) |
| 12/21/2015 | 206 | MINUTE entry before the Honorable John J. Tharp, Jr:Plaintiffs' motion for leave to file a reply brief 204 is granted. No appearance on the motion is required. The reply is due on 1/4/16. It shall not exceed 15 pages in length and shall be double−spaced throughout and otherwise formatted in compliance with the Local Rules. Mailed notice (air, ) (Entered: 12/21/2015) |
| 12/22/2015 | 207 | RESPONSE by Defendant Vee−Pak, Inc., to response in opposition to motion, 194 *Joining Defendants Staffing Network Holdings, LLC and Personnel Staffing Group, LLC* (Rothschild, Donald) (Entered: 12/22/2015) |
| 12/28/2015 | 208 | Exhibits E, I, J, and K to Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Response in Opposition to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 12/28/2015) |
| 12/28/2015 | 209 | Statement Regarding Confidentiality of Exhibits to Their Response to Plaintiffs' Motion for Leave to File a Fifth Amended Complaint by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 12/28/2015) |
| 12/28/2015 | 210 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendants' motion for leave to file certain exhibits under seal 197 is withdrawn per the defendants' telephonic request. The motion hearing of 1/6/2015 is stricken. The Court will rule on the plaintiffs' pending motion for leave to further amend the complaint 171 by ECF notice after the close of briefing. Mailed notice (air, ) (Entered: 12/28/2015) |

| | | |
|---|---|---|
| 01/05/2016 | 211 | REPLY by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas to motion for leave to file 171 a *Fifth Amended Complaint* (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3, # 4 Exhibit Attachment 4, # 5 Exhibit Attachment 5, # 6 Exhibit Attachment 6, # 7 Exhibit Attachment 7, # 8 Exhibit Attachment 8, # 9 Exhibit Attachment 9, # 10 Exhibit Attachment 10, # 11 Exhibit Attachment 11)(Williams, Christopher) (Entered: 01/05/2016) |
| 01/05/2016 | 212 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Michael Keys, Brian Lucas for leave to file *PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT ONE DAY LATE DUE TO TECHNICAL ISSUES WITH THE FILING* (Williams, Christopher) (Entered: 01/05/2016) |
| 01/05/2016 | 213 | NOTICE of Motion by Christopher J. Williams for presentment of motion for leave to file, 212 before Honorable John J. Tharp Jr. on 1/14/2016 at 09:00 AM. (Williams, Christopher) (Entered: 01/05/2016) |
| 01/06/2016 | 214 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiffs' motion for leave to file their reply brief one day late due to technical issues 212 is granted. No appearance on the motion is required. Mailed notice (air, ) (Entered: 01/06/2016) |
| 01/11/2016 | 215 | MINUTE entry before the Honorable Daniel G. Martin: At the request of the parties, status hearing set for 1/12/2016 is stricken and reset for 2/2/2016 at 09:30 AM. ailed notice (lxs, ) (Entered: 01/11/2016) |
| 01/13/2016 | 216 | ATTORNEY Appearance for Defendant Staffing Network Holdings, L.L.C. by Alison Marjorie Field (Field, Alison) (Entered: 01/13/2016) |
| 01/13/2016 | 217 | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC by Alison Marjorie Field (Field, Alison) (Entered: 01/13/2016) |
| 01/25/2016 | 218 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing set for 2/2/2016 is stricken and reset to 2/9/2016 at 09:30 a.m. Mailed notice (lxs, ) (Entered: 01/25/2016) |
| 01/28/2016 | 219 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for extension of time *for Discovery Deadlines* (Zilz, Britney) (Entered: 01/28/2016) |
| 01/28/2016 | 220 | NOTICE of Motion by Britney Zilz for presentment of extension of time 219 before Honorable John J. Tharp Jr. on 2/4/2016 at 09:00 AM. (Zilz, Britney) (Entered: 01/28/2016) |
| 02/04/2016 | 221 | MINUTE entry before the Honorable John J. Tharp, Jr: Motion hearing held. The parties' joint motion for leave to file a Fifth Amended Complaint 219 is granted. The joint motion to extend the discovery deadline 219 is granted. The fact discovery deadline is extended to 4/29/16. Mailed notice (air, ) (Entered: 02/04/2016) |
| 02/04/2016 | 222 | *FIFTH* AMENDED complaint by Joe Eagle, Brian Lucas, Michael Keys, Antwoin Hunt, James Zollicoffer against Alternative Staffing, Inc., MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Staffing Network Holdings, L.L.C., Vee−Pak, Inc., and terminating Aronzo Davis (Attachments: # 1 Exhibit Group Ex A, # 2 Exhibit B− Declaration of Isaura Martinez)(Williams, Christopher) (Entered: 02/04/2016) |
| 02/09/2016 | 223 | MINUTE entry before the Honorable Sidney I. Schenkier:Status hearing held and continued to 3/22/2016 at 9:30 a.m. Third−party respondent Bicchiere is given until 2/19/2016 to file a reply to Defendants' response to the motion to quash. [178, 187]. Any party opposing the motion for leave 188 shall file its response by 2/19/2016. Mailed notice (lxs, ) (Entered: 02/10/2016) |
| 02/10/2016 | 224 | TRANSCRIPT OF PROCEEDINGS held on February 4, 2016 before the Honorable John J. Tharp, Jr. Court Reporter Contact Information: Kelly Fitzgerald, 312−818−6626, kelly_fitzgerald@ilnd.uscourts.gov. <br><br> IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see |

| | | |
|---|---|---|
| | | the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 3/2/2016. Redacted Transcript Deadline set for 3/14/2016. Release of Transcript Restriction set for 5/10/2016. (Fitzgerald, Kelly) (Entered: 02/10/2016) |
| 02/12/2016 | 225 | ANSWER to amended complaint by Personnel Staffing Group, LLC (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 02/12/2016) |
| 02/12/2016 | 226 | ANSWER to amended complaint by Staffing Network Holdings, L.L.C. (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 02/12/2016) |
| 02/15/2016 | 227 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to compel *Subpoena Response from Third Party Respondent Norman Green* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Zilz, Britney) (Entered: 02/15/2016) |
| 02/15/2016 | 228 | NOTICE of Motion by Britney Zilz for presentment of motion to compel, 227 before Honorable Daniel G. Martin on 2/23/2016 at 10:00 AM. (Zilz, Britney) (Entered: 02/15/2016) |
| 02/16/2016 | 229 | MINUTE entry before the Honorable Daniel G. Martin:The parties are directed to meet and confer in person or by phone concerning Defendants' motion to compel 227 by 2/22/2016. The parties are to make every reasonable effort to renew their earlier agreement on the subpoena at issue. The parties shall notify the court by 2/23/2016 concerning the result of their conference. If the parties are unable to reach an agreement, the motion will be heard on 3/1/2016 at 9:30 a.m. Mailed notice (lxs, ) (Entered: 02/16/2016) |
| 02/18/2016 | 230 | ANSWER to amended complaint *FIFTH* by Vee−Pak, Inc.,(Rothschild, Donald) (Entered: 02/18/2016) |
| 02/19/2016 | 231 | REPLY by Leone Bicchieri to MOTION by Respondent Leone Bicchieri to quash *deposition subpoena* 178 , response in opposition to motion, 187 (Morales Doyle, Sean) (Entered: 02/19/2016) |
| 02/23/2016 | 232 | MINUTE entry before the Honorable Daniel G. Martin:Pursuant to Defendants' telephonic request, the motion to compel subpoena response 227 is withdrawn. The parties have resolved their dispute after complying with the Court's order to meet and confer 229 .Mailed notice (lxs, ) (Entered: 02/23/2016) |
| 03/02/2016 | 233 | ORDER Signed by the Honorable Daniel G. Martin on 3/2/2016: Respondent Leone Bicchieri's motion to quash 178 is denied. (See Order For Further Details)Mailed notice(lxs, ) (Entered: 03/02/2016) |
| 03/07/2016 | 234 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer Parties Joint Motion For Ruling On Factors Relevant To Determining Mitigation Of Damages On A Formulaic Basis In This Class Action Race Discrimination Matter And For A Stay In Discovery (Williams, Christopher) (Entered: 03/07/2016) |
| 03/07/2016 | 235 | NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief, 234 before Honorable John J. Tharp Jr. on 3/10/2016 at 09:00 AM. (Williams, Christopher) (Entered: 03/07/2016) |
| 03/10/2016 | 236 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. Joint motion for ruling and for a stay in discovery 234 is granted. Joint submission is due by 4/29/16. Discovery is stayed pending further order of the court. Mailed notice (air, ) (Entered: 03/10/2016) |
| 03/15/2016 | 237 | MINUTE entry before the Honorable Daniel G. Martin: At the request of the parties, status hearing set for 3/22/2016 is stricken and reset to 4/26/2016 at 09:30 AM. Mailed notice (lxs, ) (Entered: 03/15/2016) |
| 03/21/2016 | 238 | MINUTE entry before the Honorable John J. Tharp, Jr:Minute entry 221 dated 2/4/16 is corrected as follows: Motion hearing held. The plaintiff's motion for leave to file a Fifth Amended Complaint 171 is granted. The joint motion to extend the discovery |

| | | deadline 219 is granted. The fact discovery deadline is extended to 4/29/16. Mailed notice (air, ) (Entered: 03/21/2016) |
|---|---|---|
| 04/25/2016 | 239 | MINUTE entry before the Honorable Daniel G. Martin: At the parties' request, the status hearing set for 4/26/2016 is stricken and reset for 6/7/2016 at 9:30 a.m. Mailed notice (np, ) (Entered: 04/25/2016) |
| 04/28/2016 | 240 | MEMORANDUM by Vee–Pak, Inc., *of Law on Determining Mitigation of Damages* (Abram, Thomas) (Entered: 04/28/2016) |
| 04/29/2016 | 241 | MEMORANDUM by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. *Regarding Potential Damages* (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 04/29/2016) |
| 04/29/2016 | 242 | MEMORANDUM order on motion for miscellaneous relief,, motion hearing, 236 by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer , *PLAINTIFFS BRIEF ON WHETHER EEOC v. O & G SPRING & WIRE FORMS SPECIALTY CO. APPLIES TO THE INSTANT CASE* (Williams, Christopher) (Entered: 04/29/2016) |
| 04/29/2016 | 243 | NOTICE by All Plaintiffs re memorandum, 242 *PLAINTIFFS BRIEF ON WHETHER EEOC v. O & G SPRING & WIRE FORMS SPECIALTY CO. APPLIES TO THE INSTANT CASE* (Williams, Christopher) (Entered: 04/29/2016) |
| 05/09/2016 | 244 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. for leave to file *a Response to Plaintiffs' Submission Regarding Damages* (Zilz, Britney) (Entered: 05/09/2016) |
| 05/09/2016 | 245 | NOTICE of Motion by Britney Zilz for presentment of motion for leave to file 244 before Honorable John J. Tharp Jr. on 5/12/2016 at 09:00 AM. (Zilz, Britney) (Entered: 05/09/2016) |
| 05/09/2016 | 246 | TRANSCRIPT OF PROCEEDINGS held on March 10, 2016 before the Honorable John J. Tharp, Jr. Court Reporter Contact Information: Kelly Fitzgerald, 312–818–6626, kelly_fitzgerald@ilnd.uscourts.gov. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 5/30/2016. Redacted Transcript Deadline set for 6/9/2016. Release of Transcript Restriction set for 8/8/2016. (Fitzgerald, Kelly) (Entered: 05/09/2016) |
| 05/10/2016 | 247 | RESPONSE by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to motion for leave to file 244 *A RESPONSE TO PLAINTIFFS BRIEF ON WHETHER EEOC v. O & G SPRING & WIRE FORMS SPECIALTY CO. APPLIES TO THE INSTANT CASE BY DEFENDANTS* (Williams, Christopher) (Entered: 05/10/2016) |
| 05/11/2016 | 248 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion of defendants Personnel Staffing Group, LLC and Staffing Network Holdings, LLC, for leave to file a response to Plaintiffs' submission regarding damages 244 is denied; no appearance on the motion is required. Further submissions on this issue may not be filed absent further order of the Court. Mailed notice (air, ) (Entered: 05/11/2016) |
| 05/16/2016 | 249 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James ZollicofferPlaintiffs' Unopposed Motion For Preliminary Approval Of The Parties' Class Action Settlement And For Approval Of Class Certification, Form And Manner Of Class Notice, And Scheduling Of Fairness Hearing For Final Approval Of Settlement (Williams, Christopher) (Entered: 05/16/2016) |
| 05/16/2016 | 250 | MEMORANDUM by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer in support of motion for miscellaneous relief, 249 *Memorandum of Law In Support Of Motion For Preliminary Approval Of Partial Class Action Settlement With* |

| | | |
|---|---|---|
| | | *ASI Only* (Attachments: # 1 Exhibit Attachment 1−Stipulation of Settlement)(Williams, Christopher) (Entered: 05/16/2016) |
| 05/16/2016 | 251 | NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief, 249 before Honorable John J. Tharp Jr. on 5/19/2016 at 09:00 AM. (Williams, Christopher) (Entered: 05/16/2016) |
| 05/19/2016 | 252 | MINUTE entry before the Honorable John J. Tharp, Jr: Motion hearing held. Defendants' objections to, and Plaintiffs's supplement of, the motion for preliminary approval of the class action settlement with defendant ASI and for approval of class certification are due by 6/17/2016. All respective responses are due by 7/8/2016. Further hearing on the motion will be held on 7/15/16 at 9:30 a.m. Mailed notice (np, ) (Entered: 05/19/2016) |
| 06/02/2016 | 253 | MINUTE entry before the Honorable Daniel G. Martin: At the request of the parties, status hearing set for 6/7/2016 is stricken and reset to 7/21/2016 at 09:30 a.m. Mailed notice. (lxs, ) (Entered: 06/02/2016) |
| 06/09/2016 | 254 | TRANSCRIPT OF PROCEEDINGS held on May 19, 2016 before the Honorable John J. Tharp, Jr. Court Reporter Contact Information: Kelly Fitzgerald, 312−818−6626, kelly_fitzgerald@ilnd.uscourts.gov. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 6/30/2016. Redacted Transcript Deadline set for 7/11/2016. Release of Transcript Restriction set for 9/7/2016. (Fitzgerald, Kelly) (Entered: 06/09/2016) |
| 06/17/2016 | 255 | RESPONSE by Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James ZollicofferPlaintiffs' Unopposed Motion For Preliminary Approval Of The Parties' Class Action Settlement And For Approval Of Class Certification, Form And Manner Of 249 (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 06/17/2016) |
| 06/17/2016 | 256 | SUPPLEMENT to *Plaintiffs' Unopposed Supplemental Briefing In Support Of Plaintiffs' Motion For Preliminary Approval Of Partial Class Action Settlement With ASI Only* (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3, # 4 Exhibit Attachment 4, # 5 Exhibit Attachment 5, # 6 Exhibit Attachment 6)(Williams, Christopher) (Entered: 06/17/2016) |
| 06/17/2016 | 257 | RESPONSE by Vee−Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James ZollicofferPlaintiffs' Unopposed Motion For Preliminary Approval Of The Parties' Class Action Settlement And For Approval Of Class Certification, Form And Manner Of 249 (Attachments: # 1 Exhibit A)(Rothschild, Donald) (Entered: 06/17/2016) |
| 07/08/2016 | 258 | RESPONSE by Vee−Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James ZollicofferPlaintiffs' Unopposed Motion For Preliminary Approval Of The Parties' Class Action Settlement And For Approval Of Class Certification, Form And Manner Of 249 *Supplemental* (Attachments: # 1 Exhibit 1−3)(Abram, Thomas) (Entered: 07/08/2016) |
| 07/08/2016 | 259 | DECLARATION of Steven Swerdloff *Owner and Chairman of Alternative Staffing, Inc. Filed pursuant to the Settlement Agreement with Plaintiffs* (Paul, Brian) (Entered: 07/08/2016) |
| 07/08/2016 | 260 | NOTICE by Alternative Staffing, Inc. re declaration 259 *of Steven Swerdloff* (Paul, Brian) (Entered: 07/08/2016) |
| 07/08/2016 | 261 | RESPONSE by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer *Plaintiffs' Response to the Nonsettling Defendants' Objections to the Partial Settlement with ASI* (Cochran, Shaylyn) (Entered: 07/08/2016) |

| | | |
|---|---|---|
| 07/08/2016 | 262 | RESPONSE by Defendant Alternative Staffing, Inc. to response to motion, 255 , response in opposition to motion, 257 *In Support of Partial Class Action Settlement With ASI Only* (Paul, Brian) (Entered: 07/08/2016) |
| 07/08/2016 | 263 | RESPONSE by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to supplement, 256 *to Plaintiffs' Supplemental Briefing to Their Motion for Preliminary Approval of Partial Class Action Settlement with ASI Only* (Attachments: # 1 Notice of Filing)(Zilz, Britney) (Entered: 07/08/2016) |
| 07/15/2016 | 264 | MINUTE entry before the Honorable John J. Tharp, Jr: Motion hearing held. Plaintiffs' Unopposed Motion for Preliminary Approval 249 remains under advisement. The Court will rule via CM/ECF notice and set further dates as appropriate. Mailed notice (air, ) (Entered: 07/15/2016) |
| 07/20/2016 | 265 | MINUTE entry before the Honorable Daniel G. Martin:At counsels' joint telephonic request, status hearing set for 7/21/2016 is stricken and reset to 9/6/2016 at 09:30 a.m.Mailed notice (lxs, ) (Entered: 07/20/2016) |
| 07/22/2016 | 266 | MOTION by Defendant Vee−Pak, Inc., to supplement *the Record with Contradicting Declaration of Kyle Carstensen* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Rothschild, Donald) (Entered: 07/22/2016) |
| 07/22/2016 | 267 | NOTICE of Motion by Donald S. Rothschild for presentment of motion to supplement 266 before Honorable John J. Tharp Jr. on 7/28/2016 at 09:00 AM. (Rothschild, Donald) (Entered: 07/22/2016) |
| 07/26/2016 | 268 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendants motion to supplement the record 266 is granted. No hearing on the motion is required. Any response, which shall be limited to 3 pages in length is due in 3 days. No further briefs or supplements on the motion for preliminary approval of the ASI settlement 249 will be permitted without compelling justification. Mailed notice (jms, ) (Entered: 07/26/2016) |
| 08/24/2016 | 269 | MINUTE entry before the Honorable Daniel G. Martin:Status hearing set for 9/6/2016 is stricken and reset to 9/8/2016 at 09:30 AM.Mailed notice (lxs, ) (Entered: 08/24/2016) |
| 08/31/2016 | 270 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, Torrence Vaughns, James Zollicoffer to withdraw *Appearance of Neil Kelley* (Williams, Christopher) (Entered: 08/31/2016) |
| 08/31/2016 | 271 | NOTICE of Motion by Christopher J. Williams for presentment of motion to withdraw 270 before Honorable John J. Tharp Jr. on 9/8/2016 at 09:00 AM. (Williams, Christopher) (Entered: 08/31/2016) |
| 09/01/2016 | 272 | MINUTE entry before the Honorable John J. Tharp, Jr: The motion to withdraw Neil Kelley as plaintiff's counsel 270 is granted. No appearance on the motion is needed. Mr. Kelley's appearance shall be terminated. Mailed notice (air, ) (Entered: 09/01/2016) |
| 09/08/2016 | 273 | ATTORNEY Appearance for Defendant Alternative Staffing, Inc. by Sarah E. Flotte (Flotte, Sarah) (Entered: 09/08/2016) |
| 09/08/2016 | 274 | MINUTE entry before the Honorable Sidney I. Schenkier:Status hearing held. The parties report that discovery remains stayed pending the resolution of motions concerning the mitigation of damages and the preliminary approval of a partial class settlement. A further status hearing is set for 12/6/2016 at 9:30 a.m.Mailed notice (lxs, ) (Entered: 09/08/2016) |
| 12/01/2016 | 275 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing set for 12/6/2016 is stricken and reset to 1/17/2017 at 09:30 a.m. Mailed notice (lxs, ) (Entered: 12/01/2016) |
| 12/12/2016 | 276 | NOTICE by Laura A. Balson of Change of Address (Balson, Laura) (Entered: 12/12/2016) |
| 01/09/2017 | 277 | NOTICE by Brian P Paul of Change of Address (Paul, Brian) (Entered: 01/09/2017) |

| 01/11/2017 | 278 | NOTICE by Katherine Lee Goyert of Change of Address (Goyert, Katherine) (Entered: 01/11/2017) |
|---|---|---|
| 01/11/2017 | 279 | NOTICE by Kerryann Marie Haase of Change of Address (Haase, Kerryann) (Entered: 01/11/2017) |
| 01/12/2017 | 280 | NOTICE by Sarah E. Flotte of Change of Address (Flotte, Sarah) (Entered: 01/12/2017) |
| 01/17/2017 | 281 | MINUTE entry before the Honorable Daniel G. Martin: Status hearing held. The parties report that discovery remains stayed. The Court will set a further status hearing when the District Court reinstates discovery, or the parties request a settlement conference. Mailed notice (ber, ) (Entered: 01/17/2017) |
| 03/14/2017 | 282 | NOTICE by Matthew James Gagnon of Change of Address (Gagnon, Matthew) (Entered: 03/14/2017) |
| 03/28/2017 | 283 | NOTICE by Jennifer Ann Riley of Change of Address (Riley, Jennifer) (Entered: 03/28/2017) |
| 08/08/2017 | 284 | ATTORNEY Appearance for Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. by Michele Denise Dougherty (Dougherty, Michele) (Entered: 08/08/2017) |
| 11/20/2017 | 285 | MOTION by Defendant Alternative Staffing, Inc.Motion for Status on Plaintiffs Motion for Preliminary Approval of the Parties Class Action Settlement (Paul, Brian) (Entered: 11/20/2017) |
| 11/20/2017 | 286 | NOTICE of Motion by Brian P Paul for presentment of motion for miscellaneous relief 285 before Honorable John J. Tharp Jr. on 11/29/2017 at 09:00 AM. (Paul, Brian) (Entered: 11/20/2017) |
| 11/29/2017 | 287 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. Defendant Alternative Staffing's motion for status on plaintiffs' motion for preliminary approval of the parties' class action settlement 285 is taken under advisement. The Court expects to rule within the next several weeks. Mailed notice (air, ) (Entered: 11/29/2017) |
| 12/14/2017 | 288 | MOTION by Attorney Sean Morales−Doyle to withdraw as attorney for Leone Bicchieri, Dan Giloth, Elce Redmond. New address information: N/A as party should be terminated (Morales Doyle, Sean) (Entered: 12/14/2017) |
| 12/14/2017 | 289 | NOTICE of Motion by Sean Morales Doyle for presentment of motion to withdraw as attorney 288 before Honorable John J. Tharp Jr. on 12/19/2017 at 09:00 AM. (Morales Doyle, Sean) (Entered: 12/14/2017) |
| 12/18/2017 | 290 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion to withdraw as attorney is granted 288 . No appearance on the motion is required. The appearance of Sean Morales−Doyle as counsel shall be terminated. Mailed notice (air, ) (Entered: 12/18/2017) |
| 12/20/2017 | 291 | MEMORANDUM Opinion and Order Signed by the Honorable John J. Tharp, Jr on 12/20/2017: For the reasons set forth in the Memorandum Opinion and Order, the Court directs the plaintiffs to supplement their motion for preliminary approval of the class action settlement consistent with the directions in the Memorandum Opinion and Order on or before 1/5/2018. A status hearing is set for 1/11/2018 at 9:00 a.m. Mailed notice(air, ) (Entered: 12/20/2017) |
| 01/05/2018 | 292 | SUPPLEMENT to motion for miscellaneous relief, 249 *Plaintiffs Supplemental Briefing In Support Of Plaintiffs Motion For Preliminary Approval Of The Parties Amended Partial Class Action Settlement With ASI Only, Unopposed By ASI* (Attachments: # 1 Exhibit Attachment 1)(Williams, Christopher) (Entered: 01/05/2018) |
| 01/08/2018 | 293 | MOTION by Defendant Vee−Pak, Inc.,Lift Discovery Stay for Purposes of Deposing Steven Swerdloff (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Rothschild, Donald) (Entered: 01/08/2018) |

| | | |
|---|---|---|
| 01/08/2018 | 294 | NOTICE of Motion by Donald S. Rothschild for presentment of motion for miscellaneous relief 293 before Honorable John J. Tharp Jr. on 1/11/2018 at 09:00 AM. (Rothschild, Donald) (Entered: 01/08/2018) |
| 01/11/2018 | 295 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 3/15/18 at 9:00 a.m. Without objection, Defendant Vee Pak's motion to lift discovery stay for purposes of deposing Steven Swerdloff 293 is granted. Mr. Swerdloff is to be deposed by 3/12/18. Parties are to confer on how the deposition will be structured. If a status hearing is required to assist in this regard, please notify the courtroom deputy. Plaintiffs' counsel to submit further revised Class Notice, as discussed in court, and proposed order granting preliminary approval of the settlement to the Court's proposed order inbox. Mailed notice (air, ) (Entered: 01/11/2018) |
| 01/16/2018 | 296 | PRELIMINARY Approval Order of Partial Settlement With ASI. Signed by the Honorable John J. Tharp, Jr on 1/16/2018. Mailed notice(air, ) (Entered: 01/16/2018) |
| 01/16/2018 | 297 | ORDER Signed by the Honorable John J. Tharp, Jr on 1/16/2018: For the reasons set forth in the Statement portion of this Order, and in response to the parties' submissions regarding mitigation of damages, the Court concludes that the formula used in Equal Employment Opportunity Commission v. O & G Spring and Wire Forms Specialty Company, 790 F. Supp. 776 (N.D. Ill. 1992) does not provide an adequate means for assessing the degree to which damage awards should be offset to reflect the plaintiffs' duty to mitigate damages on a class−wide basis. It is premature on the present record, however, to determine whether any offsets that may be necessary based on failure to mitigate damages can be determined by means of some other formulaic methodology or whether any such offsets can be established only on an individualized basis for mitigation. (For further details see order) Mailed notice(air, ) (Entered: 01/16/2018) |
| 02/15/2018 | 298 | NOTICE of Motion by Miriam Rose Nemeth for presentment of before Honorable John J. Tharp Jr. on 2/22/2018 at 09:00 AM. (Nemeth, Miriam) (Entered: 02/15/2018) |
| 02/15/2018 | 299 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to reassign case (Attachments: # 1 Exhibit Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Nemeth, Miriam) (Entered: 02/15/2018) |
| 02/21/2018 | 300 | *Revised* NOTICE of Motion by Miriam Rose Nemeth for presentment of motion to reassign case 299 before Honorable John J. Tharp Jr. on 3/1/2018 at 09:00 AM. (Nemeth, Miriam) (Entered: 02/21/2018) |
| 02/21/2018 | 301 | MINUTE entry before the Honorable John J. Tharp, Jr: Upon receipt of the plaintiffs' revised notice of motion 300 , the motion hearing scheduled for 2/22/2018 is stricken and the plaintiffs' motion to reassign case 299 will be heard on 3/1/2018 at 9:00 a.m. Mailed notice (air, ) (Entered: 02/21/2018) |
| 02/21/2018 | 302 | NOTICE OF EMAIL NOTIFICATION FAILURE, for document # 301 , 300 , sent to Attorney Nicholas Joseph Tatro returned as: Unknown Address Error. Mailed to attorney Nicholas Joseph Tatro a letter re: bounce back email and a Notification of Change of Address form. Notices have been set to No. Counsel must email the Clerk's Office at Docketing_ILND@uscourts.gov when a Notification of Change of Address has been filed to ensure electronic notification is reset. (ek, ) (Entered: 02/22/2018) |
| 02/21/2018 | 303 | NOTICE OF EMAIL NOTIFICATION FAILURE, for document # 301 , 300 sent to Attorney Ashley M. Vanpool returned as: Unknown Address Error. Mailed to attorneyAshley M. Vanpool a letter re: bounce back email and a Notification of Change of Address form. Notices have been set to No. Counsel must email the Clerk's Office at Docketing_ILND@uscourts.gov when a Notification of Change of Address has been filed to ensure electronic notification is reset. (ek, ) (Entered: 02/22/2018) |
| 02/28/2018 | 304 | MINUTE entry before the Honorable John J. Tharp, Jr:Upon the unopposed request by the plaintiffs, the Fairness Hearing to determine whether the Partial Class Action Settlement Agreement with defendant ASI should be finally approved is rescheduled to 9/12/2018 at 2:00 p.m. Notice to be provided to the Settlement Class shall reflect this new date. Mailed notice (air, ) (Entered: 02/28/2018) |
| 02/28/2018 | 305 | RESPONSE by Personnel Staffing Group, LLCin Opposition to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to reassign case 299 *Pruitt Defendants' Joint Response in Opposition to Plaintiffs' Motion to Reassign Matter Based on Relatedness* (Attachments: # 1 Notice of |

| | | Filing)(Dougherty, Michele) (Entered: 02/28/2018) |
|---|---|---|
| 03/01/2018 | 306 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. For the reasons stated on the record, Plaintiffs' motion to reassign matter based on relatedness 299 is denied. Mailed notice (air, ) (Entered: 03/01/2018) |
| 03/07/2018 | 307 | SETTLEMENT Agreement , *Partial Class Action with Alternative Staffing Inc. Only − Preliminarily Approved on January 16, 2018* 296 (Williams, Christopher) (Entered: 03/07/2018) |
| 03/15/2018 | 308 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Joseph Kevin Mulherin (Mulherin, Joseph) (Entered: 03/15/2018) |
| 03/15/2018 | 309 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to withdraw *Defendants Personnel Staffing Group, LLC and Staffing Network Holdings LLC's Motion to Withdraw Appearances of Counsel* (Dougherty, Michele) (Entered: 03/15/2018) |
| 03/15/2018 | 310 | NOTICE of Motion by Michele Denise Dougherty for presentment of motion to withdraw, 309 before Honorable John J. Tharp Jr. on 3/27/2018 at 09:00 AM. (Dougherty, Michele) (Entered: 03/15/2018) |
| 03/15/2018 | 311 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 6/14/18 at 9:00 a.m. Mailed notice (air, ) (Entered: 03/15/2018) |
| 03/16/2018 | 312 | MINUTE entry before the Honorable John J. Tharp, Jr:The motion to withdraw as counsel 309 is granted. No appearance on the motion is required. The appearances of Alison Marjorie Field, Nicholas Joseph Tatro, Ashley M. Vanpool, and Britney Zilz shall be terminated. Mailed notice (air, ) (Entered: 03/16/2018) |
| 03/19/2018 | 313 | Corrected Partial Class Action Settlement with ASI Only−Preliminarily Approved on 1−16−18 by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer (Williams, Christopher) (Entered: 03/19/2018) |
| 06/07/2018 | 314 | MINUTE entry before the Honorable John J. Tharp, Jr:Upon the parties' agreed telephonic request, the status hearing is reset for 7/11/18 at 9:00 a.m. Mailed notice (air, ) (Entered: 06/07/2018) |
| 07/11/2018 | 315 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 9/12/18 at 2:00 p.m. The following briefing schedule applies to any motion raising issues in opposition to the proposed settlement: Motions due 8/10/18; responses to the motions by 8/24/18; replies are due by 8/31/18. Plaintiffs to file motion for final approval of the settlement by 8/31/18. Mailed notice (air, ) (Entered: 07/11/2018) |
| 07/30/2018 | 316 | MOTION by Defendant Vee−Pak, Inc., to seal (Mulherin, Joseph) (Entered: 07/30/2018) |
| 07/30/2018 | 317 | NOTICE of Motion by Joseph Kevin Mulherin for presentment of motion to seal 316 before Honorable John J. Tharp Jr. on 8/2/2018 at 09:00 AM. (Mulherin, Joseph) (Entered: 07/30/2018) |
| 07/30/2018 | 318 | MOTION by Defendant Vee−Pak, Inc., to compel *Financial Information (redacted) and*, MOTION by Defendant Vee−Pak, Inc., for extension of time to file *Opposition to Partial Settlement* (Mulherin, Joseph) (Entered: 07/30/2018) |
| 07/30/2018 | 319 | MEMORANDUM by Vee−Pak, Inc., in support of motion to compel, motion for extension of time to file 318 *(redacted)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mulherin, Joseph) (Entered: 07/30/2018) |
| 07/30/2018 | 320 | NOTICE of Motion by Joseph Kevin Mulherin for presentment of motion to compel, motion for extension of time to file 318 before Honorable John J. Tharp Jr. on 8/2/2018 at 09:00 AM. (Mulherin, Joseph) (Entered: 07/30/2018) |
| 07/31/2018 | 321 | MINUTE entry before the Honorable John J. Tharp, Jr:Defendant Vee Pak's motion for leave to file certain information under seal 316 is granted. Vee Pak should file the documents under seal electronically. Mailed notice (air, ) (Entered: 07/31/2018) |

| | | |
|---|---|---|
| 07/31/2018 | 322 | SEALED DOCUMENT by Defendant Vee−Pak, Inc., *Memorandum in Support of Motion to Compel Financial Information and to Extend Due Date for Filing it's Opposition to Partial Settlment* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Mulherin, Joseph) (Entered: 07/31/2018) |
| 08/02/2018 | 323 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. Defendant VEE PAK, Inc.'s motion to compel and to extend due date for filing its opposition to partial settlement 318 is granted in part. ASI is to produce by 8/7 and for attorneys' eyes only, the limited financial information identified by the Court from 2013 through 2017. The motion to extend due date for filing opposition motion to the proposed settlement is denied. Plaintiffs' oral motion to extend the deadline to file their motion for final approval of the settlement to 9/4/18 is granted. Mailed notice (air, ) (Entered: 08/02/2018) |
| 08/03/2018 | 324 | TRANSCRIPT OF PROCEEDINGS held on March 15, 2018 before the Honorable John J. Tharp, Jr. Order Number: 31625. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/24/2018. Redacted Transcript Deadline set for 9/4/2018. Release of Transcript Restriction set for 11/1/2018. (Fitzgerald, Kelly) (Entered: 08/03/2018) |
| 08/03/2018 | 325 | TRANSCRIPT OF PROCEEDINGS held on July 11, 2018 before the Honorable John J. Tharp, Jr. Order Number: 31625. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/24/2018. Redacted Transcript Deadline set for 9/4/2018. Release of Transcript Restriction set for 11/1/2018. (Fitzgerald, Kelly) (Entered: 08/03/2018) |
| 08/03/2018 | 326 | TRANSCRIPT OF PROCEEDINGS held on January 11, 2018 before the Honorable John J. Tharp, Jr. Order Number: 31641. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/24/2018. Redacted Transcript Deadline set for 9/4/2018. Release of Transcript Restriction set for 11/1/2018. (Fitzgerald, Kelly) (Entered: 08/03/2018) |
| 08/09/2018 | 327 | TRANSCRIPT OF PROCEEDINGS held on August 2, 2018 before the Honorable John J. Tharp, Jr. Order Number: 31664. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/30/2018. Redacted Transcript Deadline set for 9/10/2018. Release of Transcript Restriction set for 11/7/2018. (Fitzgerald, Kelly) (Entered: 08/09/2018) |
| 08/10/2018 | 328 | MOTION by Defendant Vee−Pak, Inc., to seal (Mulherin, Joseph) (Entered: 08/10/2018) |
| 08/10/2018 | 329 | NOTICE of Motion by Joseph Kevin Mulherin for presentment of motion to seal 328 before Honorable John J. Tharp Jr. on 8/16/2018 at 09:00 AM. (Mulherin, Joseph) (Entered: 08/10/2018) |
| 08/10/2018 | 330 | MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. (Mulherin, Joseph) (Entered: 08/10/2018) |
| 08/10/2018 | 331 | MEMORANDUM by Vee−Pak, Inc., in support of motion for miscellaneous relief 330 *(redacted)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mulherin, Joseph) (Entered: 08/10/2018) |
| 08/10/2018 | 332 | NOTICE of Motion by Joseph Kevin Mulherin for presentment of motion for miscellaneous relief 330 before Honorable John J. Tharp Jr. on 8/16/2018 at 09:00 AM. (Mulherin, Joseph) (Entered: 08/10/2018) |
| 08/13/2018 | 333 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendant Vee−Pak's motion for leave to file certain information under seal 328 is granted. No appearance on the motion to seal is required. Vee−Pak is directed to file electronically an unredacted version of its memorandum under seal. The 8/16/2018 hearing for presentment of Vee−Pak's motion in opposition to the ASI settlement is stricken. The briefing schedule set in the Court's July 11 Order 315 stands. Mailed notice (ca, ) (Entered: 08/13/2018) |
| 08/14/2018 | 334 | SEALED DOCUMENT by Defendant Vee−Pak, Inc., *Memorandum in Support of Motion in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc.* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mulherin, Joseph)(Entered: 08/14/2018) |
| 08/24/2018 | 335 | SEALED RESPONSE by Alternative Staffing, Inc. to MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Flotte, Sarah) (Entered: 08/24/2018) |
| 08/24/2018 | 336 | MOTION by Defendant Alternative Staffing, Inc. to seal document MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Flotte, Sarah) (Entered: 08/24/2018) |
| 08/24/2018 | 337 | NOTICE of Motion by Sarah E. Flotte for presentment of motion to seal document 336 before Honorable John J. Tharp Jr. on 8/30/2018 at 09:00 AM. (Flotte, Sarah) (Entered: 08/24/2018) |
| 08/24/2018 | 338 | RESPONSE by Alternative Staffing, Inc. to MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Flotte, Sarah) (Entered: 08/24/2018) |
| 08/24/2018 | 339 | RESPONSE by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicofferin Opposition to MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Attachments: # 1 Exhibit Swerdloff, # 2 Exhibit Carstensen, # 3 Exhibit Tracey, # 4 Exhibit Gonzalez, # 5 Exhibit Hernandez)(Sellers, Joseph) (Entered: 08/24/2018) |
| 08/28/2018 | 340 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendant ASI's motion to file under seal 336 is granted. No appearance on the motion is required. Mailed notice (air, ) (Entered: 08/28/2018) |
| 08/28/2018 | 341 | SEALED RESPONSE by Alternative Staffing, Inc. to MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Flotte, Sarah) (Entered: 08/28/2018) |

| 08/31/2018 | 342 | MOTION by Defendant Vee−Pak, Inc., to seal (Mulherin, Joseph) (Entered: 08/31/2018) |
|---|---|---|
| 08/31/2018 | 343 | NOTICE of Motion by Joseph Kevin Mulherin for presentment of motion to seal 342 before Honorable John J. Tharp Jr. on 9/11/2018 at 09:00 AM. (Mulherin, Joseph) (Entered: 08/31/2018) |
| 08/31/2018 | 344 | REPLY by Defendant Vee−Pak, Inc., to motion for miscellaneous relief 330 (Attachments: # 1 Exhibit A(1), # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Mulherin, Joseph) (Entered: 08/31/2018) |
| 09/04/2018 | 345 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendant Vee−Pak's motion for leave to file certain information under seal 342 is granted. No appearance on the motion is required. The defendant is directed to file electronically under seal an unredacted copy of its reply. Mailed notice (air, ) (Entered: 09/04/2018) |
| 09/04/2018 | 346 | MOTION by Plaintiffs Aronzo Davis, Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for extension of time *to File Motion for Final Approval of Partial Class Action Settlement with ASI to September 5, 2018* (Williams, Christopher) (Entered: 09/04/2018) |
| 09/04/2018 | 347 | NOTICE of Motion by Christopher J. Williams for presentment of extension of time, 346 before Honorable John J. Tharp Jr. on 9/12/2018 at 02:00 PM. (Williams, Christopher) (Entered: 09/04/2018) |
| 09/05/2018 | 348 | SEALED REPLY by Vee−Pak, Inc., to MOTION by Defendant Vee−Pak, Inc., in Opposition to Partial Settlement Between Plaintiff's and Alternative Staffing, Inc. 330 (Attachments: # 1 Exhibit A1, # 2 Exhibit C, # 3 Exhibit D)(Mulherin, Joseph) (Entered: 09/05/2018) |
| 09/05/2018 | 349 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for Final Approval of Partial Class Action Settlement between Plaintiffs and ASI (Williams, Christopher) (Entered: 09/05/2018) |
| 09/05/2018 | 350 | NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief 349 before Honorable John J. Tharp Jr. on 9/12/2018 at 02:00 PM. (Williams, Christopher) (Entered: 09/05/2018) |
| 09/05/2018 | 351 | Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Partial Class Action Settlement with ASI by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3, # 4 Exhibit Attachment 4, # 5 Exhibit Attachment 5, # 6 Exhibit Attachment 6, # 7 Exhibit Attachment 7, # 8 Exhibit Attachment 8, # 9 Exhibit Attachment 9)(Williams, Christopher) (Entered: 09/05/2018) |
| 09/12/2018 | 352 | MINUTE entry before the Honorable John J. Tharp, Jr:Final approval hearing held. Plaintiff's motions for Extension of Time 346 and for Final Approval of Partial Class Action Settlement between Plaintiffs and defendant ASI 349 are granted. Formal Order to follow. Defendant Vee Pak's motion in opposition to Partial Settlement Between Plaintiffs and ASI 330 is denied. Status hearing held and continued to 11/15/18 at 9:30 a.m. Discovery no longer limited to requests to defendant ASI. Parties should be prepared to set remaining discovery schedule at the next status hearing. Mailed notice (air, ) (Entered: 09/12/2018) |
| 09/14/2018 | 353 | MINUTE entry before the Honorable John J. Tharp, Jr:A hearing to finalize edits to the proposed final approval order will be held on 9/19/18 at 10:00 a.m. Counsel for parties other than the plaintiffs and ASI are not required to (but of course may) attend. Mailed notice (air, ) (Entered: 09/14/2018) |
| 09/19/2018 | 354 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held. Enter Order of Approval of Partial Settlement between Plaintiffs and Defendant ASI, Inc. Mailed notice (air, ) (Entered: 09/19/2018) |
| 09/19/2018 | 355 | ORDER of Final Approval of Partial Class Action Settlement Between Plaintiffs and Defendant Alternative Staffing, Inc. ONLY Signed by the Honorable John J. Tharp, Jr on 9/19/2018. Mailed notice(air, ) (Additional attachment(s) added on 9/19/2018: # 1 Partial Settlement Agreement) (air, ). (Entered: 09/19/2018) |

| 10/03/2018 | 356 | TRANSCRIPT OF PROCEEDINGS held on September 12, 2018 before the Honorable John J. Tharp, Jr. Order Number: 32154. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/24/2018. Redacted Transcript Deadline set for 11/5/2018. Release of Transcript Restriction set for 1/2/2019. (Fitzgerald, Kelly) (Entered: 10/03/2018) |
| 10/10/2018 | 357 | MINUTE entry before the Honorable Daniel G. Martin: In light of the agreement reached, the referral is hereby closed. Judge Honorable Daniel G. Martin no longer referred to the case.Mailed notice (lxs, ) (Entered: 10/10/2018) |
| 11/15/2018 | 358 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 2/28/19 at 9:00 a.m. By agreement of the parties, further discovery is stayed pending mediation. If mediation proceedings are not concluded before 2/28/19, please call the courtroom deputy to reset the status date. Mailed notice (air, ) (Entered: 11/15/2018) |
| 12/20/2018 | 359 | MOTION by Attorney Thomas G. Abram to withdraw as attorney for Vee−Pak, Inc.,. No party information provided (Abram, Thomas) (Entered: 12/20/2018) |
| 12/20/2018 | 360 | NOTICE of Motion by Thomas G. Abram for presentment of motion to withdraw as attorney 359 before Honorable John J. Tharp Jr. on 1/8/2019 at 09:00 AM. (Abram, Thomas) (Entered: 12/20/2018) |
| 12/21/2018 | 361 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorney Thomas G. Abram's motion to withdraw as counsel for defendant 359 is granted. No appearance on the motion is required. Thomas G. Abrams appearance as counsel is terminated. Mailed notice (air, ) (Entered: 12/21/2018) |
| 12/27/2018 | 362 | NOTICE OF EMAIL NOTIFICATION FAILURE, for document # 361 sent to Attorney Edward Jepson returned as:. Mailed to attorney Edward Jepson a letter re: bounce back email and a Notification of Change of Address form. Notices have been set to No. Counsel must email the Clerk's Office at Docketing_ILND@ilnd.uscourts.gov when a Notification of Change of Address has been filed to ensure electronic notification is reset. (mc, ) (Entered: 12/27/2018) |
| 12/27/2018 | 363 | MOTION by Attorney Edward C. Jepson, Jr. to withdraw as attorney for Vee−Pak, Inc.,. No party information provided (Mulhern, Joseph) (Entered: 12/27/2018) |
| 12/27/2018 | 364 | NOTICE of Motion by Joseph Kevin Mulhern for presentment of motion to withdraw as attorney 363 before Honorable John J. Tharp Jr. on 1/8/2019 at 09:00 AM. (Mulhern, Joseph) (Entered: 12/27/2018) |
| 12/28/2018 | 365 | MINUTE entry before the Honorable John J. Tharp, Jr: Attorney Edward C. Jepson, Jr.'s motion to withdraw as counsel for defendant 363 is granted. No appearance on the motion is required. Edward C. Jepson, Jr.'s appearance as counsel is terminated. Mailed notice (ags, ) (Entered: 12/28/2018) |
| 02/22/2019 | 366 | MINUTE entry before the Honorable John J. Tharp, Jr:Upon the parties' joint request, the stay is extended until 4/30/19. The status hearing is reset for 5/9/2019 at 9:00 a.m. Mailed notice (air, ) (Entered: 02/22/2019) |
| 04/03/2019 | 367 | NOTICE by Christopher John Williams of Change of Address *and Change of Firm* (Williams, Christopher) (Entered: 04/03/2019) |
| 04/04/2019 | 368 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to withdraw *Attorney Appearance of Alvar Ayala* (Williams, Christopher) (Entered: 04/04/2019) |

| 04/04/2019 | 369 | NOTICE of Motion by Christopher John Williams for presentment of motion to withdraw 368 before Honorable John J. Tharp Jr. on 4/17/2019 at 09:00 AM. (Williams, Christopher) (Entered: 04/04/2019) |
|---|---|---|
| 04/05/2019 | 370 | MINUTE entry before the Honorable John J. Tharp, Jr: : Plaintiffs' motion to withdraw appearance of Alvar Ayala 368 is granted. No appearance on the motion is required. Alvar Ayala's appearance on behalf of plaintiffs is terminated.Mailed notice (slb, ) (Entered: 04/05/2019) |
| 04/24/2019 | 371 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to withdraw *Appearance of Miriam R. Nemeth by Joseph Sellers* (Sellers, Joseph) (Entered: 04/24/2019) |
| 04/24/2019 | 372 | NOTICE of Motion by Joseph M Sellers for presentment of motion to withdraw 371 before Honorable John J. Tharp Jr. on 5/7/2019 at 09:00 AM. (Sellers, Joseph) (Entered: 04/24/2019) |
| 04/25/2019 | 373 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiffs' motion to withdraw Miriam R. Nemeth as counsel 371 is granted. No appearance on the motion is required. Miriam R. Nemeth's appearance on behalf of plaintiffs is terminated. Mailed notice (air, ) (Entered: 04/25/2019) |
| 04/30/2019 | 374 | MINUTE entry before the Honorable John J. Tharp, Jr:Upon the plaintiffs' unopposed request, the status hearing is reset for 5/8/19 at 9:00 a.m. Mailed notice (air, ) (Entered: 04/30/2019) |
| 05/08/2019 | 375 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and upon the parties' agreed oral request, continued to 7/17/19 at 9:00 a.m. The parties' joint request to extend the stay in litigation to continue mediation efforts is granted. Mailed notice (air, ) (Entered: 05/08/2019) |
| 07/17/2019 | 376 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 9/24/19 at 9:00 a.m. Parties were unable to reach a settlement. Mailed notice (air, ) (Entered: 07/17/2019) |
| 08/23/2019 | 377 | ATTORNEY Appearance for Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer by Harini M Srinivasan (Srinivasan, Harini) (Entered: 08/23/2019) |
| 09/11/2019 | 378 | TRANSCRIPT OF PROCEEDINGS held on December 8, 2015 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312–818–6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |
| 09/11/2019 | 379 | TRANSCRIPT OF PROCEEDINGS held on July 15, 2016 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312–818–6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |

| 09/11/2019 | 380 | TRANSCRIPT OF PROCEEDINGS held on March 1, 2018 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |
| 09/11/2019 | 381 | TRANSCRIPT OF PROCEEDINGS held on September 19, 2018 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |
| 09/11/2019 | 382 | TRANSCRIPT OF PROCEEDINGS held on November 15, 2018 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |
| 09/11/2019 | 383 | TRANSCRIPT OF PROCEEDINGS held on May 8, 2019 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019) |
| 09/11/2019 | 384 | TRANSCRIPT OF PROCEEDINGS held on July 17, 2019 before the Honorable John J. Tharp, Jr. Order Number: 35895. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of |

Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 10/2/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/10/2019. (Fitzgerald, Kelly) (Entered: 09/11/2019)

| 09/13/2019 | 385 | TRANSCRIPT OF PROCEEDINGS held on 01/17/17 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| --- | --- | --- |
| 09/13/2019 | 386 | TRANSCRIPT OF PROCEEDINGS held on 09/22/15 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 387 | TRANSCRIPT OF PROCEEDINGS held on 04/28/15 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 388 | TRANSCRIPT OF PROCEEDINGS held on 01/27/15 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |

| | | |
|---|---|---|
| | | Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 389 | TRANSCRIPT OF PROCEEDINGS held on 12/16/14 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov. |
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |
| | | Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 390 | TRANSCRIPT OF PROCEEDINGS held on 11/18/14 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov. |
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |
| | | Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 391 | TRANSCRIPT OF PROCEEDINGS held on 10/14/14 before the Honorable Daniel G. Martin. Order Number: 35897. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov. |
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |
| | | Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 392 | TRANSCRIPT OF PROCEEDINGS held on 09/08/16 before the Honorable Sidney I. Schenkier. Order Number: 35896. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov. |
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |
| | | Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |

| 09/13/2019 | 393 | TRANSCRIPT OF PROCEEDINGS held on 02/09/16 before the Honorable Sidney I. Schenkier. Order Number: 35896. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
|---|---|---|
| 09/24/2019 | 394 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 11/12/19 at 9:00 a.m. Fact discovery cutoff set on 2/28/20. This is a firm date. Mailed notice (air, ) (Entered: 09/24/2019) |
| 11/12/2019 | 395 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 12/4/19 at 9:00 a.m. Mailed notice (air, ) (Entered: 11/12/2019) |
| 11/26/2019 | 396 | ATTORNEY Appearance for Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. by Jaimee Christina Crockett (Crockett, Jaimee) (Entered: 11/26/2019) |
| 12/04/2019 | 397 | MINUTE entry before the Honorable John J. Tharp, Jr:Status hearing held and continued to 1/9/20 at 9:00 a.m. Mailed notice (air, ) (Entered: 12/04/2019) |
| 12/13/2019 | 398 | ATTORNEY Appearance for Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer by Miranda Huber (Huber, Miranda) (Entered: 12/13/2019) |
| 12/13/2019 | 399 | ATTORNEY Appearance for Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer by Mark Haile Birhanu (Birhanu, Mark) (Entered: 12/13/2019) |
| 12/23/2019 | 400 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for Leave to Withdraw Plaintiff Hunt as a Proposed Representative of the Putative Class (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 12/23/2019) |
| 12/23/2019 | 401 | NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief 400 before Honorable John J. Tharp Jr. on 1/7/2020 at 09:00 AM. (Williams, Christopher) (Entered: 12/23/2019) |
| 12/23/2019 | 402 | *CORRECTED (DATE OF PRESENTMENT)* NOTICE of Motion by Christopher J. Williams for presentment of motion for miscellaneous relief 400 before Honorable John J. Tharp Jr. on 1/9/2020 at 09:00 AM. (Williams, Christopher) (Entered: 12/23/2019) |
| 01/07/2020 | 403 | ATTORNEY Appearance for Defendant Vee−Pak, Inc., by Dana Lindsay Sanders (Sanders, Dana) (Entered: 01/07/2020) |
| 01/07/2020 | 404 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−16592295. (Maddali, Sheila) (Entered: 01/07/2020) |
| 01/08/2020 | 405 | RESPONSE by Vee−Pak, Inc., to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for Leave to Withdraw Plaintiff Hunt as a Proposed Representative of the Putative Class 400 (Attachments: # 1 Exhibit A, # 2 Notice of Filing Notice of Filing)(Rothschild, Donald) (Entered: 01/08/2020) |
| 01/08/2020 | 406 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorney Sheila R. Maddali's motion for leave to appear pro hac vice 404 is granted. No appearance on the motion is required. Counsel is directed to file her appearance on behalf of plaintiffs. Mailed notice (air, ) (Entered: 01/08/2020) |
| 01/09/2020 | 407 | MINUTE entry before the Honorable John J. Tharp, Jr:Status and motion hearing held. Plaintiffs' motion to withdraw Antwoin Hunt as a proposed representative of the putative class 400 is taken under advisement. Parties oral request to confer in an |

| | | attempt to resolve the issues addressed in the motion, is granted. Status hearing is continued to 1/29/2020 at 9:00 a.m. If a resolution is reached, it is to be filed in advance of the next hearing. Mailed notice (air, ) (Entered: 01/13/2020) |
|---|---|---|
| 01/13/2020 | 408 | TRANSCRIPT OF PROCEEDINGS held on September 24, 2019 before the Honorable John J. Tharp, Jr. Order Number: 37400. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/3/2020. Redacted Transcript Deadline set for 2/13/2020. Release of Transcript Restriction set for 4/13/2020. (Fitzgerald, Kelly) (Entered: 01/13/2020) |
| 01/13/2020 | 409 | TRANSCRIPT OF PROCEEDINGS held on November 12, 2019 before the Honorable John J. Tharp, Jr. Order Number: 37400. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/3/2020. Redacted Transcript Deadline set for 2/13/2020. Release of Transcript Restriction set for 4/13/2020. (Fitzgerald, Kelly) (Entered: 01/13/2020) |
| 01/13/2020 | 410 | TRANSCRIPT OF PROCEEDINGS held on December 4, 2019 before the Honorable John J. Tharp, Jr. Order Number: 37400. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/3/2020. Redacted Transcript Deadline set for 2/13/2020. Release of Transcript Restriction set for 4/13/2020. (Fitzgerald, Kelly) (Entered: 01/13/2020) |
| 01/13/2020 | 411 | TRANSCRIPT OF PROCEEDINGS held on January 9, 2020 before the Honorable John J. Tharp, Jr. Order Number: 37401. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/3/2020. Redacted Transcript Deadline set for 2/13/2020. Release of Transcript Restriction set for 4/13/2020. (Fitzgerald, Kelly) (Entered: 01/13/2020) |

| 01/24/2020 | 412 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for extension of time to complete discovery *to April 30, 2020* (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 01/24/2020) |
|---|---|---|
| 01/24/2020 | 413 | NOTICE of Motion by Christopher J. Williams for presentment of motion for extension of time to complete discovery 412 before Honorable John J. Tharp Jr. on 1/29/20 at 09:00 AM. (Williams, Christopher) (Entered: 01/24/2020) |
| 01/28/2020 | 414 | RESPONSE by Staffing Network Holdings, L.L.C.in Opposition to MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for extension of time to complete discovery *to April 30, 2020* 412 (Attachments: # 1 Exhibit A–C)(Crockett, Jaimee) (Entered: 01/28/2020) |
| 01/28/2020 | 415 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Staffing Network to produce contact information for former dispatchers, drivers and certain other employees of Staffing Network* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Williams, Christopher) (Entered: 01/28/2020) |
| 01/28/2020 | 416 | NOTICE of Motion by Christopher J. Williams for presentment of motion to compel, 415 before Honorable John J. Tharp Jr. on 2/5/20 at 09:00 AM. (Williams, Christopher) (Entered: 01/28/2020) |
| 01/28/2020 | 417 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to seal *certain exhibits to Plaintiffs' Motion to Compel Discovery from Staffing Network* (Williams, Christopher) (Entered: 01/28/2020) |
| 01/28/2020 | 418 | NOTICE of Motion by Christopher J. Williams for presentment of motion to seal 417 before Honorable John J. Tharp Jr. on 2/5/20 at 09:00 AM. (Williams, Christopher) (Entered: 01/28/2020) |
| 01/29/2020 | 419 | MINUTE entry before the Honorable John J. Tharp, Jr:Status and motion hearing held. Plaintiffs' motion for an enlargement of time to complete fact discovery until 4/30/20 412 is taken under advisement. Defendant Staffing Network's response to the plaintiffs' motion to compel 415 is due by 2/3/20. Plaintiffs' motion to seal certain exhibits 417 is granted. Exhibits I and K to the motion to compel may be filed under seal. Mailed notice (air, ) (Entered: 01/29/2020) |
| 01/29/2020 | 420 | SEALED EXHIBIT by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer *Exhibit I* regarding MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Staffing Network to produce contact information for former dispatchers, drivers and certain other employees of Staffing Network* 415 (Williams, Christopher) (Entered: 01/29/2020) |
| 01/29/2020 | 421 | SEALED EXHIBIT by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer *Exhibit K* regarding MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Staffing Network to produce contact information for former dispatchers, drivers and certain other employees of Staffing Network* 415 (Williams, Christopher) (Entered: 01/29/2020) |
| 01/30/2020 | 422 | TRANSCRIPT OF PROCEEDINGS held on January 29, 2020 before the Honorable John J. Tharp, Jr. Order Number: 37670. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312–818–6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/20/2020. Redacted Transcript Deadline set for 3/2/2020. Release of Transcript Restriction set for 4/29/2020. (Fitzgerald, Kelly) (Entered: 01/30/2020) |
| 01/31/2020 | 423 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for leave to file *a reply in support of their motion for an extension of time in discovery* |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 01/31/2020) |
| 01/31/2020 | 424 | NOTICE of Motion by Christopher J. Williams for presentment of motion for leave to file 423 before Honorable John J. Tharp Jr. on 2/5/2020 at 09:00 AM. (Williams, Christopher) (Entered: 01/31/2020) |
| 02/03/2020 | 425 | RESPONSE by Staffing Network Holdings, L.L.C.in Opposition to MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Staffing Network to produce contact information for former dispatchers, drivers and certain other employees of Staffing Network* 415 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dougherty, Michele) (Entered: 02/03/2020) |
| 02/05/2020 | 426 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. Plaintiffs' motion for an enlargement of time to complete fact discovery until 4/30/20 412 is granted. This is a firm date. Plaintiffs' renewed motion to compel 415 is granted in part; Defendant SNH to produce promptly (to the extent not already produced) contact information of personnel involved in the selection and assignment of workers to Vee Pak during the putative class period. Plaintiffs' motion for leave to file a brief reply to address three issues in Defendants' response 423 is denied as moot. A status hearing is set on May 14, 2020 at 9:00 a.m. Parties should be prepared to discuss a schedule for any expert discovery and dispositive motions. [PARTIES NOTE: this is a new date; it was not set during the hearing.] Mailed notice (air, ) (Entered: 02/05/2020) |
| 02/17/2020 | 427 | ATTORNEY Appearance for Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer by Christopher J Wilmes (Wilmes, Christopher) (Entered: 02/17/2020) |
| 02/17/2020 | 428 | ATTORNEY Appearance for Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer by Caryn Cecelia Lederer (Lederer, Caryn) (Entered: 02/17/2020) |
| 03/04/2020 | 429 | MOTION by Defendant Staffing Network Holdings, L.L.C. for protective order *Defendant Staffing Network Holdings, LLC's Motion for a Protective Order Limiting the Scope of Discovery* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Dougherty, Michele) (Entered: 03/04/2020) |
| 03/04/2020 | 430 | NOTICE of Motion by Michele Denise Dougherty for presentment of motion for protective order, 429 before Honorable John J. Tharp Jr. on 3/10/2020 at 09:00 AM. (Dougherty, Michele) (Entered: 03/04/2020) |
| 03/04/2020 | 431 | MOTION by Defendant Staffing Network Holdings, L.L.C. to seal document *Defendant Staffing Network Holdings, LLC's Motion for Leave to File Unredacted Exhibit Under Seal* (Dougherty, Michele) (Entered: 03/04/2020) |
| 03/04/2020 | 432 | NOTICE of Motion by Michele Denise Dougherty for presentment of motion to seal document 431 before Honorable John J. Tharp Jr. on 3/10/2020 at 09:00 AM. (Dougherty, Michele) (Entered: 03/04/2020) |
| 03/05/2020 | 433 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendant Staffing Network Holdings, LLC's motion for leave to file unredacted exhibit under seal 431 is granted. No appearance on the motion is required. Mailed notice (vcf, ) (Entered: 03/05/2020) |
| 03/05/2020 | 434 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for rule to show cause *why Staffing Network should not be held in contempt for violating the Court's February 5, 2020 order*, MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Personnel Staffing Group's Production of Phone and Address Information of Former Employees* (Attachments: # 1 Exhibit A – Staffing Network Amended Rule 26 Disclosure, # 2 Exhibit B – Excel Spreadsheet, # 3 Exhibit C – E–mail to Staffing Network Counsel, # 4 Exhibit D – Staffing Network Amended Interrogatory Answers, # 5 Exhibit E – Exhibit Under Seal, # 6 Exhibit F – Personnel Staffing Group Amended Rule 26 Disclosure, # 7 Exhibit G – Correspondence re: Witness Contact Information)(Wilmes, Christopher) (Entered: 03/05/2020) |
| 03/05/2020 | 435 | NOTICE of Motion by Christopher J Wilmes for presentment of motion for rule to show cause,,,, motion to compel,,, 434 before Honorable John J. Tharp Jr. on 3/10/2020 at 09:00 AM. (Wilmes, Christopher) (Entered: 03/05/2020) |

| 03/05/2020 | 436 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to seal *Plaintiffs' Motion to File Under Seal One Exhibit Attached to Plaintiffs' Rule to Show Cause and Motion to Compel* (Wilmes, Christopher) (Entered: 03/05/2020) |
|---|---|---|
| 03/05/2020 | 437 | NOTICE of Motion by Christopher J Wilmes for presentment of motion to seal 436 before Honorable John J. Tharp Jr. on 3/10/2020 at 09:00 AM. (Wilmes, Christopher) (Entered: 03/05/2020) |
| 03/05/2020 | 438 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to compel *Staffing Network's Production of Electronic Employment Data* (Attachments: # 1 Exhibit Deposition Testimony of ASI, # 2 Staffing Network Responses to Document Requests, # 3 Letter to Staffing Network Counsel, # 4 Judge Chang Ruling, # 5 Dec. 16, 2019 E−mail to Staffing Network Counsel, # 6 Jan. 4, 2019 E−mail to Staffing Network Counsel, # 7 QLS Motion to Compel)(Wilmes, Christopher) (Entered: 03/05/2020) |
| 03/05/2020 | 439 | NOTICE of Motion by Christopher J Wilmes for presentment of motion to compel,, 438 before Honorable John J. Tharp Jr. on 3/10/2020 at 09:00 AM. (Wilmes, Christopher) (Entered: 03/05/2020) |
| 03/06/2020 | 440 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiffs' motion to file exhibit under seal 436 is granted. No appearance on the motion is required. Mailed notice (vcf, ) (Entered: 03/06/2020) |
| 03/06/2020 | 441 | SEALED DOCUMENT by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer *Exhibit E to Plaintiffs' Petition for Rule to Show Cause Why Staffing Network Should Not be Held in Contempt for Violating the Court's February 5, 2020 Order and Motion to Compel Personnel Staffing Group's Production of Phone and Address Information of Former Employees* (Wilmes, Christopher) (Entered: 03/06/2020) |
| 03/09/2020 | 442 | RESPONSE by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to motion for protective order, 429 *Plaintiffs' Response to Defendant Staffing Network's Motion for a Protective Order Limiting the Scope of Discovery* (Williams, Christopher) (Entered: 03/09/2020) |
| 03/09/2020 | 443 | RESPONSE by Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer to MOTION by Defendant Staffing Network Holdings, L.L.C. for protective order *Defendant Staffing Network Holdings, LLC's Motion for a Protective Order Limiting the Scope of Discovery 429 , CORRECTED* (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 03/09/2020) |
| 03/10/2020 | 444 | SEALED DOCUMENT by Defendant Staffing Network Holdings, L.L.C. *Exhibit F to Defendant Staffing Network Holdings, LLC's Motion for Protective Order Limiting the Scope of Discovery* (Dougherty, Michele) (Entered: 03/10/2020) |
| 03/10/2020 | 445 | MINUTE entry before the Honorable John J. Tharp, Jr:Motion hearing held. For reasons stated on the record, plaintiffs' motion to compel 438 is granted, except as limited with respect to the identification of non−party clients of defendants, which may be identified by code, and with respect to review of the "notes" field of the database, as to which the parties are to confer on an agreed set of search terms to be employed to identify potentially relevant entries. Defendant Staffing Network's motion for a protective order 429 is denied without prejudice as moot in view of Plaintiffs' agreement that they are not presently seeking documents generated after 12/31/2015; Plaintiffs' motion for rule to show cause and to compel 434 is granted; contact information for all witnesses identified in Rule 26(a)(1) disclosures must be provided forthwith. Mailed notice (air, ) (Entered: 03/10/2020) |
| 03/16/2020 | 446 | ORDER Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (docket1, ) (Entered: 03/17/2020) |
| 03/18/2020 | 447 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer Entry of Stipulation and Proposed Order, Joint (Attachments: # 1 Exhibit 1)(Williams, Christopher) (Entered: 03/18/2020) |

| | | |
|---|---|---|
| 03/18/2020 | 448 | NOTICE by Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer re MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James ZollicofferEntry of Stipulation and Proposed Order, Joint 447 (Williams, Christopher) (Entered: 03/18/2020) |
| 03/19/2020 | 449 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' agreed motion for entry of stipulation and proposed order 447 is granted. No appearance on the motion is required. Enter Order. The Court notes, however, that the motion erroneously states that fact discovery in this case closes on April 30, 2020. By operation of General Order 20−12, as entered on March 17, 2020, "all deadlines... are hereby extended by 21 days from the current deadline set." This includes discovery deadlines. Accordingly, other than net worth discovery, which is extended further per this order, fact discovery in this case is now scheduled to close on May 21, 2020. Mailed notice (air, ) (Entered: 03/19/2020) |
| 03/19/2020 | 450 | STIPULATION and ORDER REGARDING NET WORTH DISCOVERY Signed by the Honorable John J. Tharp, Jr on 3/19/2020. Mailed notice(air, ) (Entered: 03/19/2020) |
| 03/30/2020 | 451 | ORDER Seconded Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20−0012, entered on March 17, 2020, and General Order 20−0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket8, ) (Entered: 03/31/2020) |
| 04/17/2020 | 452 | TRANSCRIPT OF PROCEEDINGS held on March 10, 2020 before the Honorable John J. Tharp, Jr. Order Number: 38405. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 5/8/2020. Redacted Transcript Deadline set for 5/18/2020. Release of Transcript Restriction set for 7/16/2020. (Fitzgerald, Kelly) (Entered: 04/17/2020) |
| 04/24/2020 | 453 | ORDER Third Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket1, ) (Entered: 04/27/2020) |
| 05/01/2020 | 454 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for extension of time to complete discovery *Joint Motion to Extend Discovery Cutoff to July 30, 2020* (Wilmes, Christopher) (Entered: 05/01/2020) |
| 05/04/2020 | 455 | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' agreed motion to extend the fact discovery deadline 454 is granted. The deadline to complete fact discovery is now July 30, 2020. Mailed notice (air, ) (Entered: 05/04/2020) |
| 05/05/2020 | 456 | MINUTE entry before the Honorable John J. Tharp, Jr: On the Court's own motion, the status hearing set for 5/14/20 is stricken. A new status hearing date will be set when the Court is able to resume routine status hearings. Mailed notice (air, ) (Entered: 05/05/2020) |
| 05/26/2020 | 457 | ORDER ORDER Fourth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non−emergency motions, no motion may be noticed for presentment |

| | | on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket1, ) (Entered: 05/26/2020) |
|---|---|---|
| 06/17/2020 | 458 | MINUTE entry before the Honorable John J. Tharp, Jr:A telephonic status hearing is set in this case for 8/7/20 at 9:00 a.m. Directions for counsel and the parties for participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 06/17/2020) |
| 06/30/2020 | 459 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for extension of time *Parties' AGREED Motion for an Extension of Discovery Deadlines until August 31, 2020* (Williams, Christopher) (Entered: 06/30/2020) |
| 06/30/2020 | 460 | NOTICE by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer re MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for extension of time *Parties' AGREED Motion for an Extension of Discovery Deadlines until August 31, 2020* 459 (Williams, Christopher) (Entered: 06/30/2020) |
| 07/02/2020 | 461 | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' agreed motion for extension of discovery deadlines 459 is granted. No appearance on the motion is required. The deadline to complete fact discovery is now August 31, 2020. On the Court's own motion, the telephonic status hearing set for August 7, 2020 is stricken and re−set for September 1, 2020 at 9:15 a.m. Directions for counsel and the parties for participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 07/02/2020) |
| 07/06/2020 | 462 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas to enforce *deposition subpoena on third party witness Adrianna Armendariz* (Attachments: # 1 Exhibit Cover Letter and Subopoena, # 2 Exhibit Affidavit of Process Server, # 3 Exhibit Proposed Order)(Wilmes, Christopher) (Entered: 07/06/2020) |
| 07/07/2020 | 463 | MINUTE entry before the Honorable John J. Tharp, Jr.: Plaintiffs' unopposed motion to enforce the deposition subpoena on the third−party witness Adrianna Armendariz 462 is granted. Enter order. Mailed notice (air, ) (Entered: 07/07/2020) |
| 07/07/2020 | 464 | ORDER Signed by the Honorable John J. Tharp, Jr on 7/7/2020. Mailed notice(air, ) (Entered: 07/07/2020) |
| 07/09/2020 | 465 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer to enforce deposition subpoena on third party witness Judy Cruz Avalos (Attachments: # 1 Exhibit A − Subpoena for Deposition, # 2 Exhibit B − Affidavit of Service, # 3 Exhibit C − Amended Subpoena for Deposition, # 4 Exhibit D − Proof of Delivery, # 5 Exhibit E − Proposed Order)(Wilmes, Christopher) (Entered: 07/09/2020) |
| 07/10/2020 | 466 | ORDER Fifth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in−person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in−court |

| | | |
|---|---|---|
| | | proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk3, Docket) (Entered: 07/10/2020) |
| 07/10/2020 | 467 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiffs' unopposed motion to enforce the deposition subpoena on the third−party witness Judy Cruz Avalos 465 is granted. Enter order. Mailed notice (air, ) (Entered: 07/10/2020) |
| 07/10/2020 | 468 | ORDER Signed by the Honorable John J. Tharp, Jr on 7/10/2020. Mailed notice(air, ) (Entered: 07/10/2020) |
| 08/03/2020 | 469 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for rule to show cause *Plaintiffs' Petition for Rule to Show Cause Why Third−Party Witness Judy Cruz Avalos Should Not Be Held in Contempt* (Attachments: # 1 Exhibit A − Subpoena for Deposition, # 2 Exhibit B − Affidavit of Service of Subpoena, # 3 Exhibit C − Amended Subpoena for Deposition, # 4 Exhibit D − FedEx Proof of Delivery, # 5 Exhibit E − Affidavit of Service of Order, # 6 Exhibit F − Order Served by Mail, # 7 Exhibit G − Medina Dep Excerpts, # 8 Exhibit H − Martinez Dep Excerpts)(Wilmes, Christopher) (Entered: 08/03/2020) |
| 08/05/2020 | 470 | MINUTE entry before the Honorable John J. Tharp, Jr:Plaintiffs' petition for rule to show cause 469 is granted, except that the show cause hearing will be conducted by telephone hearing and the Marshal will not be appointed to serve the show cause order due to the press of other responsibilities. The telephonic hearing will be held on August 12 at 2:00 p.m. Directions for respondent Cruz Avalos to appear by telephone are included in the accompanying order. Directions for counsel and the parties for participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. In the event that respondent Cruz Avalos does not appear by telephone for the hearing, the Court will issue a writ of body attachment to secure her participation, which will be executed by the Marshal. Enter order. Mailed notice (air, ) (Entered: 08/05/2020) |
| 08/05/2020 | 471 | ORDER Signed by the Honorable John J. Tharp, Jr on 8/5/2020. Mailed notice(air, ) (Entered: 08/05/2020) |
| 08/12/2020 | 472 | MINUTE entry before the Honorable John J. Tharp, Jr: Show cause hearing held by telephone. Ms. Cruz Avalos appeared and agreed to participate in a video deposition on September 4. Enter Order. Mailed notice (air, ) (Entered: 08/13/2020) |
| 08/17/2020 | 473 | MINUTE entry before the Honorable John J. Tharp, Jr: Enter Order.Mailed notice (air, ) (Entered: 08/17/2020) |
| 08/17/2020 | 474 | ORDER Signed by the Honorable John J. Tharp, Jr on 8/17/2020. Mailed notice(air, ) (Entered: 08/17/2020) |
| 08/26/2020 | 475 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for extension of time to complete discovery *until October 2, 2020, AGREED* (Williams, Christopher) (Entered: 08/26/2020) |
| 08/26/2020 | 476 | NOTICE by Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer re MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer for extension of time to complete discovery *until October 2, 2020, AGREED* 475 (Williams, Christopher) (Entered: 08/26/2020) |
| 08/27/2020 | 477 | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' agreed motion to extend discovery deadlines 475 is granted. The deadline is now October 2, 2020. Mailed notice (air, ) (Entered: 08/27/2020) |
| 09/01/2020 | 478 | MINUTE entry before the Honorable John J. Tharp, Jr:The status hearing set for 9/1/20 is stricken. A telephone conference is reset for 10/16/20 at 9:15 a.m. Directions for counsel participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into |

| | | |
|---|---|---|
| | | the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 09/01/2020) |
| 09/11/2020 | 479 | ATTORNEY Appearance for Respondent Alternative Staffing, Inc. by Brian H Myers (Myers, Brian) (Entered: 09/11/2020) |
| 09/11/2020 | 480 | MOTION by Respondent Alternative Staffing, Inc. to quash *Vee Pak's Subpoena for Rule 30(b)(6) Deposition of ASI* (Attachments: # 1 Exhibit 1 − Vee Pak Subpoena to ASI)(Myers, Brian) (Entered: 09/11/2020) |
| 09/11/2020 | 481 | ATTORNEY Appearance for Respondent Alternative Staffing, Inc. by James H. Ryan (Attachments: # 1 Certificate of Service)(Ryan, James) (Entered: 09/11/2020) |
| 09/14/2020 | 482 | MINUTE entry before the Honorable John J. Tharp, Jr:Respondent Alternative Staffing Inc's motion for a protective order and to quash 480 is taken under advisement. Defendant Vee Pak's response is due 9/25/2020; Respondent's reply, if any, is due 10/2/2020. Mailed notice (air, ) (Entered: 09/14/2020) |
| 09/18/2020 | 483 | MOTION by Attorney Christopher J. Williams of National Legal Advocacy Network, Joseph Sellers, Shaylyn Cochran and Harini Srinivasan of Cohen Milstein Sellers & Toll PLLC, Christopher J. Wilmes and Caryn Lederer of Hughes Socol Piers Resnick & Dym, Ltd., and Miranda Huber and Mark H. Birhanu of Raise The Floor Alliance − Legal Dept. to withdraw as attorney for Brian Lucas. New address information: Brian Lucas, 641 N. Pine Ave., Chicago, IL 60644 (Attachments: # 1 Exhibit A)(Williams, Christopher) (Entered: 09/18/2020) |
| 09/23/2020 | 484 | MINUTE entry before the Honorable John J. Tharp, Jr: The motion to withdraw by counsel for Mr. Lucas 483 will be addressed during the status hearing on 10/16/20. Any objection or response to the motion is due by 10/9/20. Mailed notice (air, ) (Entered: 09/23/2020) |
| 09/24/2020 | 485 | MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for rule to show cause *Plaintiffs' Petition for Rule to Show Cause Why Third−Party Witness Priscilla Marquez Should Not Be Held in Contempt* (Attachments: # 1 Exhibit A − Wilmes Declaration and Subpoena, # 2 Exhibit B − Process Server's Affidavit and Photograph, # 3 Exhibit C − Cover Letter)(Wilmes, Christopher) (Entered: 09/24/2020) |
| 09/25/2020 | 486 | MINUTE entry before the Honorable John J. Tharp, Jr:Plaintiff's motion for rule to show cause 485 is granted. Enter Order. Mailed notice (air, ) (Entered: 09/25/2020) |
| 09/25/2020 | 487 | ORDER Signed by the Honorable John J. Tharp, Jr on 9/25/2020. Mailed notice(air, ) (Entered: 09/25/2020) |
| 09/25/2020 | 488 | RESPONSE by Vee−Pak, Inc., to MOTION by Respondent Alternative Staffing, Inc. to quash *Vee Pak's Subpoena for Rule 30(b)(6) Deposition of ASI* 480 *; and Cross−Motion to Compel Fed. R. Civ. P. 30(b)(6) Deposition of Alternative Staffing, Inc.* (Attachments: # 1 Exhibit 1 − Swerdloff Notice of Deposition, # 2 Exhibit 2 − Swerdloff Dep. Transcript Pages, # 3 Exhibit 3 − Carstensen Dep. Transcript Pages (Redacted), # 4 Exhibit 4 − Emails Between Plaintiffs & ASI, # 5 Exhibit 5 − Emails Between Plaintiffs & ASI, # 6 Exhibit 6 − Emails re Swerdloff Dep., # 7 Exhibit 7 − Notice of Subpoena, # 8 Exhibit 8 − Myerrs & Mulherin Emails, # 9 Exhibit 9 − Emails re Possible Dep. Date, # 10 Exhibit 10 − Mottell Decl. & Attached Chart)(Mulherin, Joseph) (Entered: 09/25/2020) |
| 09/28/2020 | 489 | RESPONSE by Personnel Staffing Group, LLC, Vee−Pak, Inc., to MOTION by Plaintiffs Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicoffer for Leave to Withdraw Plaintiff Hunt as a Proposed Representative of the Putative Class 400 *Defendants Personnel Staffing Group, LLC and Vee Pak, Inc.'s Response to Plaintiffs' Motion for Leave to Withdraw Plaintiff Hunt as a Proposed Representative of the Putative Class* (Attachments: # 1 Notice of Filing)(Dougherty, Michele) |

| | | (Entered: 09/28/2020) |
|---|---|---|
| 09/29/2020 | 490 | MOTION by Plaintiffs Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer − Parties' AGREED MOTION for Leave to Conduct Depositions of Two Non−Parties and a Vee Pak Witness After Close of Fact Discovery (Williams, Christopher) (Entered: 09/29/2020) |
| 09/30/2020 | 491 | MINUTE entry before the Honorable John J. Tharp, Jr:In light of defendants' response 489 agreeing to plaintiffs' requested relief, the plaintiffs' motion for Mr. Hunt to withdraw as proposed class representative 400 is granted. The parties' agreed motion 490 for leave to depose non−party witnesses Richard Wallace and Yesenia Saucedo and Vee Pak witness Mario Bolaos after the close of fact discovery is also granted. Mailed notice (air, ) (Entered: 09/30/2020) |
| 10/02/2020 | 492 | MOTION by Defendant Vee−Pak, Inc., to Withdraw Exhibit and Replace with Redacted Exhibit (Attachments: # 1 Declaration Mottel with Redacted Exhibit)(Mulherin, Joseph) (Entered: 10/02/2020) |
| 10/02/2020 | 493 | REPLY by Alternative Staffing, Inc. to MOTION by Respondent Alternative Staffing, Inc. to quash *Vee Pak's Subpoena for Rule 30(b)(6) Deposition of ASI* 480 , response to motion,,, 488 (Myers, Brian) (Entered: 10/02/2020) |
| 10/07/2020 | 494 | MINUTE entry before the Honorable John J. Tharp, Jr:Defendant Vee Pak's motion 492 to withdraw Dkt. 488's Exhibit A and replace with a redacted version is granted. Mailed notice (air, ) (Entered: 10/07/2020) |
| 10/07/2020 | 495 | MINUTE entry before the Honorable John J. Tharp, Jr:Show cause hearing held and continued to 11/13/20 at 9:00 a.m.. Ms. Priscilla Marquez failed to appear for today's hearing. The Court issues a writ of body attachment as to Ms. Priscilla Marquez for failure to appear for today's hearing. Ms. Marquez is required to appear in Courtroom 1419 in person for this hearing regardless of whether the writ has been executed and to show cause why she should not be held in contempt of Court for failure to comply with this Court's orders. Mailed notice (air, ) (Entered: 10/08/2020) |
| 10/15/2020 | 496 | MOTION by Attorney Dana Lindsay Sanders to withdraw as attorney for Vee−Pak, Inc.,. No party information provided (Mulherin, Joseph) (Entered: 10/15/2020) |
| 10/15/2020 | 497 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendant's motion 496 is granted. Attorney Dana Lindsay Sanders' appearance as counsel for Defendant Vee Pak, Inc. is terminated. Mailed notice (air, ) (Entered: 10/15/2020) |
| 10/16/2020 | 498 | MINUTE entry before the Honorable John J. Tharp, Jr: Telephone conference held and continued to the 11/13/20 hearing. Alternative Staffing's motion for protective order and to quash subpoena 480 and Vee−Pak's cross motion to compel 488 are granted in part and denied in part. Vee Pak may conduct a Rule 30(b)(6) deposition of ASI. Parties to confer and draft an agreed list of topics for a seven−hour 30(b)(6) deposition, bearing in mind that scope of this deposition should be focused and should not require extraordinary efforts to prepare the representative witness(es). Final extension of the discovery cutoff is set on 12/11/2020. No other additional discovery beyond the depositions that have been identified to date on the record will be permitted. Without objection, plaintiffs' counsel's motion for leave to withdraw from representing Brian Lucas 483 is granted. Plaintiff is granted leave to file a motion to add a substitute representative for Mr. Lucas; any such motion should include an agreed briefing schedule. Directions for counsel participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 10/18/2020) |
| 10/30/2020 | 499 | MOTION by Plaintiffs Joe Eagle, Michael Keys, James Zollicoffer to amend/correct *the Complaint* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Sellers, |

| | | Joseph) (Entered: 10/30/2020) |
|---|---|---|
| 11/02/2020 | 500 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiff's motion for leave to file a sixth amended complaint 499 is taken under advisement, and the parties' proposed briefing schedule is adopted. The defendants' response to the motion is due 11/20, and plaintiffs' reply is due 12/1. The ruling on the motion will give effect to the parties' stipulation as to the addition of Vee Pak, LLC d/b/a Voyant Beauty as a Defendant. Mailed notice (air, ) (Entered: 11/02/2020) |
| 11/13/2020 | 501 | MINUTE entry before the Honorable John J. Tharp, Jr:Show cause hearing held by phone. Ms. Priscilla Marquez appeared by telephone. Ms. Marquez is required to cooperate with plaintiff's counsel to schedule her deposition promptly. Failure to do so will result in arrest on a writ for body attachment. Mailed notice (air, ) (Entered: 11/13/2020) |
| 11/13/2020 | 502 | MINUTE entry before the Honorable John J. Tharp, Jr:A telephone status hearing is set for 12/16/20 at 9:30 a.m. Directions for counsel participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784868. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 11/13/2020) |
| 11/19/2020 | 503 | TRANSCRIPT OF PROCEEDINGS held on October 16, 2020 before the Honorable John J. Tharp, Jr. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/10/2020. Redacted Transcript Deadline set for 12/21/2020. Release of Transcript Restriction set for 2/17/2021. (Fitzgerald, Kelly) (Entered: 11/19/2020) |
| 11/20/2020 | 504 | RESPONSE by Vee−Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Michael Keys, James Zollicoffer to amend/correct *the Complaint 499 and Cross−Motion to Dismiss Name Plaintiff Brian Lucas for Failure to Prosecute Claims* (Attachments: # 1 Declaration of J. Mulherin, # 2 Exhibit 1 − 4)(Mulherin, Joseph) (Entered: 11/20/2020) |
| 11/21/2020 | 505 | MOTION by Defendant Vee−Pak, Inc., to Dismiss Named Plaintiff Brian Lucas for Failure to Prosecute His Claims (Mulherin, Joseph) (Entered: 11/21/2020) |
| 11/21/2020 | 506 | MOTION by Defendant Vee−Pak, Inc., for leave to file excess pages *for brief* (Mulherin, Joseph) (Entered: 11/21/2020) |
| 11/23/2020 | 507 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendant's motion for leave to file excess pages 506 is granted. Defendant Vee Pak has already filed a 19 page combined response in opposition to the plaintiff's motion to amend and cross−motion to dismiss Lucas for failure to prosecute his claim 504 . The plaintiff's reply due 12/1 should address the motion to dismiss Lucas as a named plaintiff for failure to prosecute; plaintiffs have leave to file a reply of up to 20 pages. Vee Pak may reply as to the cross motion by 12/11/20. Mailed notice (air, ) (Entered: 11/23/2020) |
| 12/01/2020 | 508 | RESPONSE by Joe Eagle, Antwoin Hunt, Michael Keys, Brian Lucas, James Zollicofferin Support of MOTION by Plaintiffs Joe Eagle, Michael Keys, James Zollicoffer to amend/correct *the Complaint 499 (and file Sixth Amended Complaint to* |

| | | |
|---|---|---|
| | | *Replace Brian Lucas as a Class Representative and Add Successor Entity Vee Pak, LLC as a Defendant)* (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit)(Sellers, Joseph) (Entered: 12/01/2020) |
| 12/02/2020 | <u>509</u> | MOTION by Defendant Vee–Pak, Inc., for extension of time *to depose ASI, Inc.* (Rothschild, Donald) (Entered: 12/02/2020) |
| 12/02/2020 | <u>510</u> | NOTICE of Motion by Donald S. Rothschild for presentment of extension of time <u>509</u> before Honorable John J. Tharp Jr. on 12/8/2020 at 09:00 AM. (Rothschild, Donald) (Entered: 12/02/2020) |
| 12/03/2020 | <u>511</u> | MINUTE entry before the Honorable John J. Tharp, Jr:For good cause shown, the defendant's motion for an extension of time to depose ASI, Inc. <u>509</u> is granted. Pursuant to Eighth Amended General Order 20–0012, the notice of presentment is stricken. The deposition must be completed by 1/31/2021. Mailed notice (air, ) (Entered: 12/03/2020) |
| 12/11/2020 | <u>512</u> | STATUS Report *Plaintiffs' Status Report on Expert Discovery in Advance of the December 16, 2020 Status Conference* by Joe Eagle, Michael Keys, James Zollicoffer (Lederer, Caryn) (Entered: 12/11/2020) |
| 12/11/2020 | <u>513</u> | REPLY by Vee–Pak, Inc., to MOTION by Defendant Vee–Pak, Inc., to Dismiss Named Plaintiff Brian Lucas for Failure to Prosecute His Claims <u>505</u> (Mulherin, Joseph) (Entered: 12/11/2020) |
| 12/16/2020 | <u>514</u> | *Sixth* AMENDED complaint by Joe Eagle, James Zollicoffer, Michael Keys, Evan Franklin against Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C., Vee–Pak, Inc.,, Vee Pak, LLC and terminating Brian Lucas (Attachments: # <u>1</u> Exhibit A)(Williams, Christopher) (Entered: 12/16/2020) |
| 12/16/2020 | <u>515</u> | MINUTE entry before the Honorable John J. Tharp, Jr:Telephone conference held. For reasons stated on the record and without objection, Plaintiffs' motion for leave to file a Sixth Amended Complaint is granted and defendant Vee Pak's cross–motion to dismiss named plaintiff Brian Lucas <u>505</u> , is granted. Plaintiff Brian Lucas is dismissed with prejudice. Plaintiff is directed to file a sixth amended complaint that, in addition to other requested modifications set forth in Plaintiffs' reply brief <u>508</u> , also reflects the dismissal of Mr. Lucas from this lawsuit. Evan Franklin is added as named Plaintiff and Class Representative. Any additional written discovery served on Ms. Franklin should be issued by 12/30/20; Ms. Franklin's response to that written discovery is due by 1/13/21. Evan Franklin should be available for deposition by 2/5/21. Plaintiff expects to file a motion for class certification. Parties are to confer as to a proposed schedule with respect to expert discovery and file an agreed motion, or a status report identifying the dispute, by 1/8/21. Mailed notice (air, ) (Entered: 12/17/2020) |
| 12/30/2020 | <u>516</u> | ANSWER to amended complaint by Vee–Pak, Inc.,(Rothschild, Donald) (Entered: 12/30/2020) |
| 12/30/2020 | <u>517</u> | ANSWER to amended complaint *Personnel Staffing Group, LLC's Answer and Affirmative Defenses to Plaintiffs' Sixth Amended Class Action Complaint* by MVP Workforce, LLC d/b/a Most Valuable Personnel d/b/a MVP, Personnel Staffing Group, LLC(Dougherty, Michele) (Entered: 12/30/2020) |
| 12/30/2020 | <u>518</u> | ANSWER to amended complaint *Staffing Network Holdings, LLC's Answer and Affirmative Defenses to Plaintiffs' Sixth Amended Class Action Complaint* by Staffing Network Holdings, L.L.C.(Dougherty, Michele) (Entered: 12/30/2020) |
| 12/30/2020 | <u>519</u> | ANSWER to amended complaint *Personnel Staffing Group, LLC's Answer and Affirmative Defenses to Plaintiffs' Sixth Amended Class Action Complaint* by Personnel Staffing Group, LLC(Dougherty, Michele) (Entered: 12/30/2020) |
| 01/08/2021 | <u>520</u> | STATUS Report *(Joint)* by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Cochran, Shaylyn) (Entered: 01/08/2021) |
| 01/11/2021 | <u>521</u> | MINUTE entry before the Honorable John J. Tharp, Jr: In light of the parties' joint status report <u>520</u> , the parties are directed to file an agreed motion or status report regarding a proposed expert discovery schedule by 1/15/2021. Mailed notice (air, ) (Entered: 01/11/2021) |

| 01/15/2021 | 522 | STATUS Report *on an Expert Discovery and Class Certification Schedule, JOINT* by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Williams, Christopher) (Entered: 01/15/2021) |
|---|---|---|
| 01/19/2021 | 523 | MINUTE entry before the Honorable John J. Tharp, Jr.: Upon review of the parties' joint status report 522 , the Court enters the following schedule for expert disclosures and class certification: 4/30 Plaintiffs' expert disclosures; 6/18 Deadline for the deposition of Plaintiffs' expert; 7/16 Defendants' rebuttal expert disclosures; 8/13 Deadline for deposition of Defendants' rebuttal expert; 8/27 Plaintiffs' Class Certification motion due; 10/8 Defendants' response to Class Certification motion due; 11/5 Plaintiffs' reply to Class Certification response due. Mailed notice (air, ) (Entered: 01/19/2021) |
| 01/21/2021 | 524 | TRANSCRIPT OF PROCEEDINGS held on December 16, 2020 before the Honorable John J. Tharp, Jr. Order Number: 39781. Court Reporter Contact Information: Kelly M. Fitzgerald, kmftranscripts@gmail.com, 312−818−6626.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 2/11/2021. Redacted Transcript Deadline set for 2/22/2021. Release of Transcript Restriction set for 4/21/2021. (Fitzgerald, Kelly) (Entered: 01/21/2021) |
| 01/29/2021 | 525 | MOTION by Defendant Vee−Pak, Inc., for extension of time *to Depose Alternative Staffing, Inc.* (Mulherin, Joseph) (Entered: 01/29/2021) |
| 02/01/2021 | 526 | MINUTE entry before the Honorable John J. Tharp, Jr:For good cause shown, Defendant Vee−Pak, Inc.'s motion for an extension of time 525 is granted; the Rule 30(b)(6) deposition of ASI may proceed on February 24, 2021. Mailed notice (air, ) (Entered: 02/01/2021) |
| 02/03/2021 | 527 | WAIVER OF SERVICE returned executed by Joe Eagle, James Zollicoffer, Michael Keys, Evan Franklin. Vee Pak, LLC waiver sent on 12/30/2020, answer due 3/1/2021. (Williams, Christopher) (Entered: 02/03/2021) |
| 02/16/2021 | 528 | MOTION by Attorney Shaylyn Cochran to withdraw as attorney for Joe Eagle, Michael Keys, Brian Lucas, James Zollicoffer. No party information provided (Cochran, Shaylyn) (Entered: 02/16/2021) |
| 02/17/2021 | 529 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorney Shaylyn C. Cochran's motion to withdraw 528 is granted. Her appearance on behalf of the plaintiffs is terminated. Mailed notice (air, ) (Entered: 02/17/2021) |
| 02/26/2021 | 530 | MOTION by Defendants Personnel Staffing Group, LLC, Staffing Network Holdings, L.L.C. to withdraw *Defendants Staffing Network Holdings, LLC and Personnel Staffing Group, LLC's Motion to Withdraw Appearance of J'Aimee Crockett* (Dougherty, Michele) (Entered: 02/26/2021) |
| 03/01/2021 | 531 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendants' motion to withdraw attorney J'Aimee Crockett's appearance as counsel 530 is granted; her appearance in this matter is terminated. Mailed notice (air, ) (Entered: 03/01/2021) |
| 03/01/2021 | 532 | ATTORNEY Appearance for Defendant Vee Pak, LLC by Joseph Kevin Mulherin (Mulherin, Joseph) (Entered: 03/01/2021) |
| 03/01/2021 | 533 | *Defendant Vee Pak, LLC d/b/a Voyant Beauty's* ANSWER to amended complaint *and Affirmative Defenses* by Vee Pak, LLC(Mulherin, Joseph) (Entered: 03/01/2021) |
| 03/01/2021 | 534 | NOTICE by Christopher John Williams of Change of Address (Williams, Christopher) (Entered: 03/01/2021) |
| 03/03/2021 | 535 | ATTORNEY Appearance for Defendant Vee Pak, LLC by Donald S. Rothschild (Rothschild, Donald) (Entered: 03/03/2021) |

| 03/03/2021 | <u>536</u> | ATTORNEY Appearance for Defendant Vee Pak, LLC by Brian Michael Dougherty (Dougherty, Brian) (Entered: 03/03/2021) |
|---|---|---|
| 05/24/2021 | <u>537</u> | ATTORNEY Appearance for Defendant Personnel Staffing Group, LLC by Kenneth W. Gage (Gage, Kenneth) (Entered: 05/24/2021) |
| 07/23/2021 | <u>538</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for extension of time to complete discovery *(Joint Motion for an Extension of Expert Discovery and Class Certification Deadlines)* (Sellers, Joseph) (Entered: 07/23/2021) |
| 07/27/2021 | <u>539</u> | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' joint motion for an extension of the expert discovery and class certification deadlines <u>538</u> is granted. The parties' proposed schedule is adopted: the deadline for deposition of the defendants' rebuttal experts is 9/13/2021; the plaintiffs' motion for class certification is due 9/27/2021; the defendants' response to the class certification motion is due 11/8/2021; and the plaintiffs' reply in support of class certification is due 12/6/2021. Mailed notice (air, ) (Entered: 07/27/2021) |
| 09/21/2021 | <u>540</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for leave to file *Plaintiffs' Motion for Leave to File An Expert Rebuttal Report* (Attachments: # <u>1</u> Exhibit 1 – Rebuttal Declaration, # <u>2</u> Exhibit 2 – Bendick Declaration, # <u>3</u> Exhibit 3 – Thornton Declaration, # <u>4</u> Exhibit 4 – White Review, # <u>5</u> Exhibit 5 – Anderson/Massey Declaration, # <u>6</u> Exhibit 6 – Anderson Dep Excerpts, # <u>7</u> Exhibit 7 – Thornton Dep Excerpts)(Wilmes, Christopher) (Entered: 09/21/2021) |
| 09/22/2021 | <u>541</u> | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' motion for leave to file an expert rebuttal report <u>540</u> is taken under advisement. The defendants' response is due by 10/1/2021; the plaintiffs' reply is due by 10/8/2021. Mailed notice (air, ) (Entered: 09/22/2021) |
| 09/22/2021 | <u>542</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for leave to file excess pages (Sellers, Joseph) (Entered: 09/22/2021) |
| 09/23/2021 | <u>543</u> | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' unopposed motion for leave to file excess pages <u>542</u> is granted. The plaintiffs may file a memorandum of law in support of their motion for class certification that is no more than 50 pages in length. Mailed notice (air, ) (Entered: 09/23/2021) |
| 09/27/2021 | <u>544</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class Responses due by 11/8/2021 (Attachments: # <u>1</u> Supplement Memorandum in Support, # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Exhibit, # <u>5</u> Exhibit, # <u>6</u> Exhibit, # <u>7</u> Exhibit, # <u>8</u> Exhibit, # <u>9</u> Exhibit, # <u>10</u> Exhibit, # <u>11</u> Exhibit, # <u>12</u> Exhibit, # <u>13</u> Exhibit, # <u>14</u> Exhibit, # <u>15</u> Exhibit, # <u>16</u> Exhibit, # <u>17</u> Exhibit, # <u>18</u> Exhibit, # <u>19</u> Exhibit, # <u>20</u> Exhibit, # <u>21</u> Exhibit, # <u>22</u> Exhibit, # <u>23</u> Exhibit, # <u>24</u> Exhibit, # <u>25</u> Exhibit, # <u>26</u> Exhibit, # <u>27</u> Exhibit, # <u>28</u> Exhibit, # <u>29</u> Exhibit, # <u>30</u> Exhibit, # <u>31</u> Exhibit, # <u>32</u> Exhibit, # <u>33</u> Exhibit, # <u>34</u> Exhibit, # <u>35</u> Exhibit, # <u>36</u> Exhibit, # <u>37</u> Exhibit, # <u>38</u> Exhibit, # <u>39</u> Exhibit, # <u>40</u> Exhibit, # <u>41</u> Exhibit, # <u>42</u> Exhibit, # <u>43</u> Exhibit, # <u>44</u> Exhibit, # <u>45</u> Exhibit, # <u>46</u> Exhibit)(Sellers, Joseph) (rc, ). (Attachment 5 replaced on 9/29/2021) (rc, ). (Attachment 14 replaced on 9/29/2021) (rc, ). (Attachment 34 replaced on 9/29/2021) (rc, ). (Attachment 38 replaced on 9/29/2021) (rc, ). (Attachment 43 replaced on 9/29/2021) (rc, ). Modified on 9/29/2021 (rc, ). (Entered: 09/27/2021) |
| 09/27/2021 | <u>545</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to seal *Exhibits to Motion to Certify Class* (Sellers, Joseph) (Entered: 09/27/2021) |
| 09/27/2021 | <u>546</u> | SEALED DOCUMENT by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Exhibit, # <u>5</u> Exhibit)(Sellers, Joseph) (Entered: 09/27/2021) |
| 09/28/2021 | <u>547</u> | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiff's motion for leave to file documents under seal <u>545</u> is granted. As such, plaintiff's unredacted versions of the replacement exhibits <u>546</u>, provisionally under seal pending order, are permitted to remain under seal. The Clerk is directed to remove [544−5], [544−14], [544−34], [544−38], and [544−43] from the docket. The plaintiff is given until 10/12/2021 to replace the removed documents with versions that have redacted material designated as confidential. Mailed notice (air, ) (Entered: 09/28/2021) |

| 10/01/2021 | 548 | RESPONSE by Vee Pak, LLC, Vee−Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for leave to file *Plaintiffs' Motion for Leave to File An Expert Rebuttal Report* 540 (Attachments: # 1 Exhibit 1 − Bendick Report, # 2 Exhibit 2 − Bendick Deposition, # 3 Exhibit 3 − H. Srinivasan Email, # 4 Exhibit 4 − Bendick Rebuttal, # 5 Exhibit 5 − Anderson Report, # 6 Exhibit 6 − Thornton Report, # 7 Exhibit 7 − White Report, # 8 Exhibit 8 − Anderson Deposition, # 9 Exhibit 9 − Thornton Depsotion, # 10 Exhibit 10 − White Deposition, # 11 Exhibit 11 − Bendick Article)(Mulherin, Joseph) (Attachment 5 replaced on 1/4/2022) (lma, ). (Entered: 10/01/2021) |
| 10/08/2021 | 549 | REPLY by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to motion for leave to file, 540 *Plaintiffs' Reply in Support of Their Motion to File an Expert Rebuttal Report* (Attachments: # 1 Exhibit 8)(Wilmes, Christopher) (Entered: 10/08/2021) |
| 10/12/2021 | 550 | MINUTE entry before the Honorable John J. Tharp, Jr: Plaintiff's counsel has notified the Court that the documents removed from the docket by entry 547 were misdesignated and that the documents that were sealed and should have been removed are [544−6], [544−15], [544−35], [544−39], and [544−44]. Accordingly, the Clerk is directed to remove these exhibits from the document. Plaintiff is directed to file a supplement to its class certification motion 544 that includes the documents erroneously removed from the docket pursuant to 547 as well as redacted versions of the documents that were sealed (i.e., 544−6, 544−15, 544−35, 544−39, and 544−44). Mailed notice (air, ) (Entered: 10/12/2021) |
| 10/12/2021 | 551 | NOTICE by All Plaintiffs re order on motion to seal,,, text entry,,, terminate motions,, 547 , text entry,, 550 , MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class 544 *of Filing Exhibits in Support of Class Certification* (Attachments: # 1 Exhibit 4, # 2 Exhibit 5, # 3 Exhibit 13, # 4 Exhibit 14, # 5 Exhibit 33, # 6 Exhibit 34, # 7 Exhibit 37, # 8 Exhibit 38, # 9 Exhibit 42, # 10 Exhibit 43)(Sellers, Joseph) (Entered: 10/12/2021) |
| 10/19/2021 | 552 | MOTION by Attorney Miranda Huber to withdraw as attorney for Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer. No party information provided (Birhanu, Mark) (Entered: 10/19/2021) |
| 10/19/2021 | 553 | NOTICE by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer re MOTION by Attorney Miranda Huber to withdraw as attorney for Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer. No party information provided 552 (Birhanu, Mark) (Entered: 10/19/2021) |
| 10/19/2021 | 554 | MOTION by Defendant Personnel Staffing Group, LLC to stay *Defendants' Unopposed Motion to Stay and Modify the Briefing Schedule on Plaintiff's Motion for Class Certification* (Dougherty, Michele) (Entered: 10/19/2021) |
| 10/20/2021 | 555 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiff's motion to withdraw the appearance of Attorney Miranda L. Huber as counsel 552 is granted. No appearance on the motion is required. Attorney Miranda Huber's appearance as counsel shall be terminated. Mailed notice (air, ) (Entered: 10/20/2021) |
| 11/02/2021 | 556 | MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc., to stay *[Emergency] the Class Certification Briefing Schedule or for Extension of Time* (Mulherin, Joseph) (Entered: 11/02/2021) |
| 11/02/2021 | 557 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendants' unopposed motion for an extension of time 556 is granted. The defendants' response to the class certification motion is due by 12/8/2021; the plaintiffs' reply in support of class certification is due by 1/4/2022. The defendants' motion to stay and modify the briefing schedule 554 is denied as moot. Mailed notice (air, ) (Entered: 11/02/2021) |
| 11/02/2021 | 558 | DOCUMENT ENTERED IN ERROR. (Additional attachment(s) added on 11/2/2021: # 1 Document removed) (air, ). (Entered: 11/02/2021) |
| 11/02/2021 | 559 | MINUTE entry before the Honorable John J. Tharp, Jr: Minute entry 558 is stricken. A corrected order will follow.Mailed notice (air, ) (Entered: 11/02/2021) |
| 11/02/2021 | 560 | ORDER Signed by the Honorable John J. Tharp, Jr on 11/2/2021: For the reasons set forth in the Statement below, the plaintiffs' motion for leave to file anexpert rebuttal |

| | | report 540 is granted. Mailed notice(air, ) (Entered: 11/02/2021) |
|---|---|---|
| 12/03/2021 | 561 | MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc.,to Modify the Briefing Schedule *(Joint Motion)*, MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc., for leave to file excess pages *(Unopposed)* (Mulherin, Joseph) (Entered: 12/03/2021) |
| 12/06/2021 | 562 | MINUTE entry before the Honorable John J. Tharp, Jr:The parties' motion to modify the briefing schedule and the defendants' motion to for leave to file excess pages 561 are granted. The defendants' response to the class certification motion and motions to strike Dr. Bendick's reports are due by 12/15/2021; the plaintiffs' reply in support of class certification and response to the motions to strike are due by 2/4/2022; the defendants' reply in support of their motions to strike is due by 2/25/2022. The defendants may file a response brief of up to 60 pages and motions to strike up to 35 pages in total.Mailed notice. (jlj, ) (Entered: 12/06/2021) |
| 12/13/2021 | 563 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to Reopen Discovery for Limited Purpose of Evaluating MVP's Financial Condition and Recent Asset Sale (Attachments: # 1 Exhibit Sellers Declaration, # 2 Exhibit Wilmes Declaration)(Sellers, Joseph) (Entered: 12/13/2021) |
| 12/14/2021 | 564 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' motion to reopen discovery 563 is taken under advisement. The defendants' response is due by 12/21/2021; any reply due by 12/28/21. Mailed notice (air, ) (Entered: 12/14/2021) |
| 12/15/2021 | 565 | RESPONSE by Staffing Network Holdings, L.L.C.in Opposition to MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class 544 *Defendant Staffing Network Holdings, LLC's Response in Opposition to Plaintiffs' Motion for Class Certification* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27)(Dougherty, Michele) (Entered: 12/15/2021) |
| 12/15/2021 | 566 | SEALED RESPONSE by Staffing Network Holdings, L.L.C. to MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class 544 *Defendant Staffing Network Holdings, LLC's Response in Opposition to Plaintiffs' Motion for Class Certification* (Attachments: # 1 Exhibit 17, # 2 Exhibit 18, # 3 Exhibit 19, # 4 Exhibit 24)(Dougherty, Michele) (Entered: 12/15/2021) |
| 12/15/2021 | 567 | MOTION by Defendant Staffing Network Holdings, L.L.C.file response and exhibits under seal *Defendant Staffing Network Holdings, LLC's Motion for Leave to File Under Seal its Response in Opposition to Plaintiffs' Motion for Class Certification and Certain Exhibits Thereto* (Dougherty, Michele) (Entered: 12/15/2021) |
| 12/15/2021 | 568 | MOTION by Defendant Staffing Network Holdings, L.L.C. to strike *Defendant Staffing Network Holdings, LLC's Motion to Strike Dr. Bendick's Declaration and Testimony* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17)(Dougherty, Michele) (Entered: 12/15/2021) |
| 12/15/2021 | 569 | MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc., to strike *the Expert Report and Testimony of Dr. Marc Bendick, Jr.* (Mulherin, Joseph) (Entered: 12/15/2021) |
| 12/15/2021 | 570 | MEMORANDUM by Vee Pak, LLC, Vee−Pak, Inc., in support of motion to strike 569 *Expert Report and Testimony of Dr. Marc Bendick, Jr.* (Attachments: # 1 Appendix − List of Exhibits, # 2 Exhibit A − Bendick Declaration, # 3 Exhibit B − Bendick Deposition Excerpts, # 4 Exhibit C − Swerdloff Declaration, # 5 Exhibit D − ASI Deposition Excerpts, # 6 Exhibit E − Massey Declaration, # 7 Exhibit F − Social Science Journal Article, # 8 Exhibit G − Bendick Rebuttal Declaration, # 9 Exhibit H − Knighten Depositions Excerpts, # 10 Exhibit I − Franklin Deposition Excerpts, # 11 Exhibit J − Martinez Deposition Excerpts, # 12 Exhibit K − Cruz Deposition Excerpts, # 13 Exhibit L − Zwartz Declaration)(Mulherin, Joseph) (Attachment 6 replaced on 1/4/2022) (lma, ). (Entered: 12/15/2021) |

| 12/15/2021 | <u>571</u> | RESPONSE by Vee Pak, LLC, Vee–Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class <u>544</u> *for Class Certification* (Mulherin, Joseph) (Entered: 12/15/2021) |
|---|---|---|
| 12/16/2021 | <u>572</u> | Errata to Defendants Vee Pak, Inc.'s and Vee Pak, LLC's Opposition Brief in Response to Plaintiffs' Motion for Class Certification by Vee Pak, LLC, Vee–Pak, Inc., (Mulherin, Joseph) (Entered: 12/16/2021) |
| 12/16/2021 | <u>573</u> | APPENDIX *to Defendants Vee Pak, Inc.'s and Vee Pak, LLC's Opposition Brief in Response to Plaintiffs' Motion for Class Certification* (Attachments: # <u>1</u> Exhibit A – Zwartz Deposition Excerpts, # <u>2</u> Exhibit B – Zwartz Declaration, # <u>3</u> Exhibit C – Record Marked VP010036, # <u>4</u> Exhibit D – Arteaga Deposition Excerpts, # <u>5</u> Exhibit E – Montoya Deposition Excerpts, # <u>6</u> Exhibit F – Armendariz Deposition Excerpt, # <u>7</u> Exhibit G – Medina Deposition Excerpts, # <u>8</u> Exhibit H – Castro Deposition Excerpts, # <u>9</u> Exhibit I – ASI Deposition Excerpts, # <u>10</u> Exhibit J – Martinez Deposition Excerpts, # <u>11</u> Exhibit K – Cruz Deposition Excerpts, # <u>12</u> Exhibit L – Franklin Deposition Excerpts, # <u>13</u> Exhibit M – Declaration of Anderson & Massey, # <u>14</u> Exhibit N – Robles Deposition Excerpts, # <u>15</u> Exhibit O – Swerdloff Deposition Excerpts, # <u>16</u> Exhibit P – Record Marked VP0652522–065253, # <u>17</u> Exhibit Q – Record Marked VP065254 – 56, # <u>18</u> Exhibit R – Gonzalez Deposition Excerpts, # <u>19</u> Exhibit S – Record Marked SN00834, # <u>20</u> Exhibit T – Record Marked VP032327, # <u>21</u> Exhibit U – Record Marked SN04790, # <u>22</u> Exhibit V – Tracey Deposition Excerpts, # <u>23</u> Exhibit W – Carstensen Deposition Excerpts, # <u>24</u> Exhibit X – Deposition Exhibit 6 and Records, # <u>25</u> Exhibit Y – Eagle Deposition Excerpts, # <u>26</u> Exhibit Z – Keys Deposition Excerpts, # <u>27</u> Exhibit AA – Galarza Deposition Excerpts, # <u>28</u> Exhibit BB – Saucedo Deposition Excerpts, # <u>29</u> Exhibit CC – Saucedo Deposition Excerpts, # <u>30</u> Exhibit DD – Knighten Deposition Excerpts, # <u>31</u> Exhibit EE – Zollicoffer Deposition Excerpts, # <u>32</u> Exhibit HH – Carstensen Declaration, # <u>33</u> Exhibit II – Hernandez Deposition Excerpts, # <u>34</u> Exhibit JJ – Hernandez Deposition Exhibit 2, # <u>35</u> Exhibit KK – Connell Declaration, # <u>36</u> Exhibit LL – ASI Settlement Statement)(Mulherin, Joseph) (Attachment 13 replaced on 1/4/2022) (lma, ). (Entered: 12/16/2021) |
| 12/17/2021 | <u>574</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to supplement *motion to re–open discovery* (Attachments: # <u>1</u> Exhibit)(Sellers, Joseph) (Entered: 12/17/2021) |
| 12/20/2021 | <u>575</u> | MINUTE entry before the Honorable John J. Tharp, Jr: The plaintiffs' motion for leave to supplement their motion to re–open discovery <u>574</u> is granted. The Court will take the attached decision and transcript under advisement. Defendant MVP's response should address, inter alia, why the motion should not be granted in light of the fact that the requested discovery will be conducted in the Gold Standard Baking case regardless. Mailed notice (air, ) (Entered: 12/20/2021) |
| 12/23/2021 | <u>576</u> | MINUTE entry before the Honorable John J. Tharp, Jr:Upon notice from the parties that Defendant MVP does not oppose the plaintiffs' motion to reopen discovery <u>563</u> , that motion is granted and the Court strikes the briefing schedule for the motion. The parties shall file a joint status report by 3/30/22 on the status of the financial condition of MVP or any successor. A telephone status hearing is set for 4/6/22 at 9:45 a.m. Directions for counsel and the parties for participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877–848–7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded that this is a court proceeding and should be treated as such; phones should be muted at all times unless you are authorized to participate in the hearing. In addition, the general prohibition against photographing, recording, and rebroadcasting of court proceedings applies. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.Mailed notice (air, ) (Entered: 12/23/2021) |
| 12/23/2021 | <u>577</u> | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for leave to file excess pages *and to Modify the Briefing Schedule (UNOPPOSED)* (Sellers, Joseph) (Entered: 12/23/2021) |

| 12/27/2021 | 578 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' unopposed motion for leave to file excess pages and to modify the briefing schedule 577 is granted. The plaintiffs may file a reply brief in support of their motion for class certification of up to 40 pages and a response brief in opposition to the defendants' motion to strike Dr. Bendick's reports and exclude his testimony of up to 30 pages. The plaintiffs' briefs in reply and response are due by 2/18/2022; the defendants' reply brief in support of their motions to strike are due by 3/11/2022. Mailed notice (air, ) (Entered: 12/27/2021) |
|---|---|---|
| 01/13/2022 | 579 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendant Staffing Network stated that it would deliver Exhibit 11 to its response to the plaintiffs' motion for class certification via flash drive. The Court has not yet received this exhibit and directs Defendant Staffing Network to deliver the exhibit by 1/20/2022. Mailed notice (air, ) (Entered: 01/13/2022) |
| 01/17/2022 | 580 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Personnel Staffing Group, LLC *Personnel Staffing Group, LLC's Disclosure Statement and Notification as to Affiliates* (Korey, Carter) (Entered: 01/17/2022) |
| 02/16/2022 | 581 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for extension of time *Plaintiffs' Unopposed Motion for One−Week Extension of Time* (Wilmes, Christopher) (Entered: 02/16/2022) |
| 02/17/2022 | 582 | MINUTE entry before the Honorable John J. Tharp, Jr: The plaintiffs' motion for an extension of time 581 is granted. The plaintiffs' response and reply are due by 2/25/2022; defendants' reply is due by 3/25/2022.Mailed notice (air, ) (Entered: 02/17/2022) |
| 02/23/2022 | 583 | MINUTE entry before the Honorable John J. Tharp, Jr: The defendant's motion to file its response and certain exhibits under seal 567 is granted in part and denied in part. Exhibit 11, filed provisionally under seal, may remain under seal. The motion is denied as to Exhibit 24; the Court finds that Defendant Staffing Network's employment policies in its handbook are not confidential. The Clerk is directed to lift the seal on Exhibit 24. As to Exhibits 17, 18, and 19, the defendant is directed to file a supplementary motion explaining what confidential information it seeks to seal and why that information should be considered confidential given that the exhibits are transcripts of the depositions of a named plaintiff. The motion should be filed by 3/9/2022; Exhibits 17, 18, and 19 may remain provisionally under seal.Mailed notice (air, ) (Entered: 02/23/2022) |
| 02/25/2022 | 584 | RESPONSE by Joe Eagle, Evan Franklin, Michael Keys, James Zollicofferin Opposition to MOTION by Defendant Staffing Network Holdings, L.L.C. to strike *Defendant Staffing Network Holdings, LLC's Motion to Strike Dr. Bendick's Declaration and Testimony* 568 , MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc., to strike *the Expert Report and Testimony of Dr. Marc Bendick, Jr.* 569 *Plaintiffs' Response in Opposition to Defendants' Motions to Strike the Expert Reports and Testimony of Dr. Marc Bendick, Jr.* (Attachments: # 1 Exhibit A − Anderson Dep Excerpts, # 2 Exhibit B − White Dep Excerpts, # 3 Exhibit C − Correspondence re ASI Production)(Wilmes, Christopher) (Entered: 02/25/2022) |
| 02/25/2022 | 585 | REPLY by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer in Support of MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to certify class 544 . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Sellers, Joseph) Docket Text Modified by Clerk's Office on 2/28/2022 (jh, ). (Entered: 02/25/2022) |
| 02/25/2022 | 586 | SEALED EXHIBIT by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer regarding response in support of motion, 585 (Attachments: # 1 Exhibit Unredacted − SEALED)(Sellers, Joseph) (Entered: 02/25/2022) |
| 02/28/2022 | 587 | MINUTE entry before the Honorable John J. Tharp, Jr: The plaintiff's motion for leave to file its exhibit under seal 586 is granted. The exhibit provisionally filed under seal at [586−1] may remain under seal. Mailed notice (air, ) (Entered: 02/28/2022) |
| 03/09/2022 | 588 | MOTION by Defendant Staffing Network Holdings, L.L.C.File Exhibits Under Seal *Defendant Staffing Network Holdings, LLC's Supplemental Motion for Leave to File Under Seal Certain Exhibits to its Response in Opposition to Plaintiffs' Motion for Class Certification* (Dougherty, Michele) (Entered: 03/09/2022) |

| | | |
|---|---|---|
| 03/09/2022 | 589 | MOTION by Plaintiff James Zollicoffer to Maintain Parts of Plaintiff Zollicoffer's Deposition Transcripts Attached to Defendant Staffing Network's Response in Opposition to Plaintiffs' Motion for Class Certification as Confidential (Williams, Christopher) (Entered: 03/09/2022) |
| 03/10/2022 | 590 | MINUTE entry before the Honorable John J. Tharp, Jr:Defendant Staffing Network Holdings LLC's supplemental motion for leave to file exhibits under seal 588 and Plaintiff Zollicoffer's motion to maintain parts of his deposition under seal 589 are granted. The parties are directed to convene and discuss appropriate redactions as described in the plaintiff's motion. The Court also advises the parties that the portion of Exhibit 19 not described in Plaintiff Zollicoffer's motion but discussed as confidential in the transcript may also remain under seal and be redacted. The defendant is directed to file redacted versions of these exhibits. Mailed notice (air, ) (Entered: 03/10/2022) |
| 03/16/2022 | 591 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to stay *JOINT Motion to Stay Discovery* (Williams, Christopher) (Entered: 03/16/2022) |
| 03/16/2022 | 592 | NOTICE by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer re MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to stay *JOINT Motion to Stay Discovery* 591 (Williams, Christopher) (Entered: 03/16/2022) |
| 03/17/2022 | 593 | MINUTE entry before the Honorable John J. Tharp, Jr:The joint motion by the plaintiffs and Personnel Staffing Group, LLC, to stay discovery and motion practice related to Personnel Staffing Group other than the motion for class certification 591 is granted. The parties are directed to file a join status report by 5/16/2022. Mailed notice (air, ) (Entered: 03/17/2022) |
| 03/18/2022 | 594 | Redacted Exhibits 17, 18 & 19 by Staffing Network Holdings, L.L.C. *Defendant Staffing Network Holdings, LLC's Redacted Exhibits 17, 18, & 19 for Response to Plaintiffs' Motion for Class Certification* (Dougherty, Michele) (Entered: 03/18/2022) |
| 03/25/2022 | 595 | REPLY by Defendant Staffing Network Holdings, L.L.C. to motion to strike,, 568 *Staffing Network Holdings, LLC's Reply in Support of its Motion to Strike the Declaration and Testimony of Dr. Marc Bendick, Jr.* (Dougherty, Michele) (Entered: 03/25/2022) |
| 03/25/2022 | 596 | MOTION by Defendants Vee Pak, LLC, Vee−Pak, Inc., for leave to file *Sur−Reply in Response to Plaintiff's Motion for Class Certification* (Attachments: # 1 Exhibit A − Defendants Vee Pak, Inc.'s and Vee Pak, LLC's Sur−Reply in Response to Plaintiffs' Motion for Class Certification)(Mulherin, Joseph) (Entered: 03/25/2022) |
| 03/25/2022 | 597 | REPLY by Defendants Vee Pak, LLC, Vee−Pak, Inc., to motion to strike 569 *Reply in Support of Motion to Strike the Expert Report and Testimony of Dr. Marc Bendick, Jr.* (Attachments: # 1 Exhibit 1)(Mulherin, Joseph) (Entered: 03/25/2022) |
| 03/29/2022 | 598 | MINUTE entry before the Honorable John J. Tharp, Jr: Defendants Vee Pak, Inc., and Vee Pak, LLC's motion for leave to file a sur−reply 596 is granted. The defendants are directed to file the sur−reply separately on the docket. Mailed notice (ef, ) (Entered: 03/29/2022) |
| 03/29/2022 | 599 | SUR−REPLY by Defendants Vee Pak, LLC, Vee−Pak, Inc., to motion to certify class,,,, 544 (Mulherin, Joseph) (Entered: 03/29/2022) |
| 04/01/2022 | 600 | MOTION by Defendant Staffing Network Holdings, L.L.C. to join *Staffing Network Holdings, LLC's Motion to Join Defendants Vee Pak, Inc. and Vee Pak, LLC's Sur−Reply in Response to Plaintiffs' Motion for Class Certification* (Dougherty, Michele) (Entered: 04/01/2022) |
| 04/04/2022 | 601 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for leave to file *a response to VeePak's Motion to Strike Plaintiffs' Evidentiary Summary Under Federal Rule of Evidence 1006* (Attachments: # 1 Exhibit)(Sellers, Joseph) (Entered: 04/04/2022) |
| 04/04/2022 | 602 | MINUTE entry before the Honorable John J. Tharp, Jr:Defendant Staffing Network Holdings, L.L.C.'s motion to join the sur−reply 600 is granted.Mailed notice (air, ) (Entered: 04/04/2022) |

| 04/06/2022 | 603 | REPLY by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to sur–reply 599 (Sellers, Joseph) (Entered: 04/06/2022) |
|---|---|---|
| 04/06/2022 | 604 | MINUTE entry before the Honorable John J. Tharp, Jr:Telephone conference held. Plaintiffs' motion for leave to file a response to Vee Pak's motion to strike 601 is granted. The response is to be filed as a separate docket entry. No further briefing on the pending class certification and expert motions will be permitted. Mailed notice (air, ) (Entered: 04/06/2022) |
| 05/16/2022 | 605 | STATUS Report *on Settlement, Joint by Plaintiff and Defendant Personnel Staffing Group, LLC* by James Zollicoffer (Williams, Christopher) (Entered: 05/16/2022) |
| 05/17/2022 | 606 | MINUTE entry before the Honorable John J. Tharp, Jr: Upon review of the plaintiffs' and Defendant Personnel Staffing Group, LLC's status report 605 , the parties are directed to file another status report by 7/18/2022. Mailed notice (air, ) (Entered: 05/17/2022) |
| 06/15/2022 | 607 | MOTION by Attorney Elliot S. Richardson, Carter A. Korey, Michele D. Dougherty, Ryan D. Gibson to withdraw as attorney for Personnel Staffing Group, LLC. No party information provided (Dougherty, Michele) (Entered: 06/15/2022) |
| 06/16/2022 | 608 | MINUTE entry before the Honorable John J. Tharp, Jr:Attorneys Elliot S. Richardson, Carter A. Korey, Ryan D. Gibson, and Michele D. Dougherty's motion to withdraw 607 is granted. Their appearances are terminated. Mailed notice (air, ) (Entered: 06/16/2022) |
| 07/18/2022 | 609 | STATUS Report *(JOINT) on Settlement* by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Sellers, Joseph) (Entered: 07/18/2022) |
| 07/19/2022 | 610 | MINUTE entry before the Honorable John J. Tharp, Jr: Upon review of the plaintiffs' and Defendant Personnel Staffing Group, LLC's status report 609 , the parties are directed to file another status report by 8/16/2022. Mailed notice (air, ) (Entered: 07/19/2022) |
| 07/26/2022 | 611 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for settlement *(Unopposed Motion for Preliminary Approval of Partial PSG Settlement)* (Attachments: # 1 Supplement Memorandum in Support, # 2 Exhibit, # 3 Exhibit)(Sellers, Joseph) (Entered: 07/26/2022) |
| 07/26/2022 | 612 | SEALED EXHIBIT by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer regarding MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for settlement *(Unopposed Motion for Preliminary Approval of Partial PSG Settlement)* 611 (Sellers, Joseph) (Entered: 07/26/2022) |
| 07/26/2022 | 613 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to seal document exhibit, 612 (Sellers, Joseph) (Entered: 07/26/2022) |
| 07/28/2022 | 614 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiff's unopposed motion for preliminary approval of the settlement agreement 611 is taken under advisement. The parties are directed to submit the proposed order to the Court's Proposed Order Inbox (proposed_order_tharp@ilnd.uscourts.gov). The motion to seal 613 is granted. The document provisionally filed under seal at 612 may remain under seal. The plaintiff is directed to file a redacted version of the attachment by 8/3/2022.Mailed notice (air, ) (Entered: 07/28/2022) |
| 08/01/2022 | 615 | MINUTE entry before the Honorable John J. Tharp, Jr:A telephone hearing on the motion for preliminary approval of the settlement agreement between plaintiff Zollicoffer and defendant MVP 611 will be held on August 3, 2022, at 10:00 a.m. Mailed notice (air, ) (Entered: 08/01/2022) |
| 08/01/2022 | 616 | MINUTE entry before the Honorable John J. Tharp, Jr:Directions for counsel and the parties for participating in the telephonic hearing on the 8/3/22 at 10:00 a.m. will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877–848–7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded that this is a court proceeding and should be treated as such; phones should be muted at all times unless you are authorized to |

| | | |
|---|---|---|
| | | participate in the hearing. In addition, the general prohibition against photographing, recording, and rebroadcasting of court proceedings applies. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 08/01/2022) |
| 08/03/2022 | 617 | EXHIBIT by Plaintiffs Joe Eagle, Evan Franklin, Antwoin Hunt, Michael Keys, James Zollicoffer *(REDACTED)* regarding MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for settlement *(Unopposed Motion for Preliminary Approval of Partial PSG Settlement)* 611 (Sellers, Joseph) (Entered: 08/03/2022) |
| 08/03/2022 | 618 | MINUTE entry before the Honorable John J. Tharp, Jr: Telephone hearing held. Plaintiff's motion for preliminary approval order 611 is taken under advisement. Filing of any objections to motion are due by 8/10/22; Plaintiff's reply and a proposed order for timetable to issue notice is due by 8/24/22. Mailed notice (air, ) (Entered: 08/03/2022) |
| 08/10/2022 | 619 | RESPONSE by Vee Pak, LLC, Vee–Pak, Inc.,in Opposition to MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer for settlement *(Unopposed Motion for Preliminary Approval of Partial PSG Settlement)* 611 (Mulherin, Joseph) (Entered: 08/10/2022) |
| 08/16/2022 | 620 | STATUS Report *(JOINT)* by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Sellers, Joseph) (Entered: 08/16/2022) |
| 08/24/2022 | 621 | MEMORANDUM by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer *in Support of Proposed Order to Delay Ruling on Plaintiff's Motion for Preliminary Approval of Partial Settlement with Personnel Staffing Group* (Sellers, Joseph) (Entered: 08/24/2022) |
| 08/26/2022 | 622 | ORDER Signed by the Honorable John J. Tharp, Jr on 8/26/2022. Mailed notice(air, ) (Entered: 08/29/2022) |
| 09/19/2022 | 623 | Notice that Stay has Been Lifted in Zollicoffer v. GSB by Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer (Attachments: # 1 Exhibit)(Sellers, Joseph) (Entered: 09/19/2022) |
| 09/22/2022 | 624 | MINUTE entry before the Honorable John J. Tharp, Jr: The Court has received plaintiff Zollicoffer's notice that the stay has been lifted in bankruptcy court 623 . Plaintiff Zollicoffer's reply to Vee Pak, LLC and Vee Pak, Inc.'s Opposition to the Motion for Preliminary Approval is due by 9/30/2022. Plaintiff Zollicoffer is to submit a proposed order entering the proposed timeline for notice to the Court's proposed order inbox (Proposed_Order_Tharp@ilnd.uscourts.gov) in Word format. Mailed notice (air, ) (Entered: 09/22/2022) |
| 09/30/2022 | 625 | MOTION by Plaintiff James Zollicoffer for extension of time to file *his reply to Vee Pak's brief in opposition to Plaintiff's Motion for Preliminary Approval of the Class Action Settlement with PSG, UNOPPOSED* (Williams, Christopher) (Entered: 09/30/2022) |
| 09/30/2022 | 626 | NOTICE by James Zollicoffer re MOTION by Plaintiff James Zollicoffer for extension of time to file *his reply to Vee Pak's brief in opposition to Plaintiff's Motion for Preliminary Approval of the Class Action Settlement with PSG, UNOPPOSED* 625 (Williams, Christopher) (Entered: 09/30/2022) |
| 10/03/2022 | 627 | MINUTE entry before the Honorable John J. Tharp, Jr:For the reasons stated in the motion, plaintiff's unopposed motion for an extension to file his reply 625 is granted. Plaintiff is directed to file his reply by 10/7/2022. Mailed notice (air, ) (Entered: 10/03/2022) |
| 10/07/2022 | 628 | REPLY by Plaintiff James Zollicoffer to motion for settlement, 611 *in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Partial PSG Settlement)* (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3, # 4 Exhibit Attachment 4)(Williams, Christopher) (Entered: 10/07/2022) |

| 10/26/2022 | 629 | MOTION by Plaintiff James Zollicoffer to continue *and delay ruling on Plaintiff's motion for preliminary approval of partial class settlement with PSG, UNOPPOSED* (Williams, Christopher) (Entered: 10/26/2022) |
|---|---|---|
| 10/26/2022 | 630 | NOTICE by James Zollicoffer re MOTION by Plaintiff James Zollicoffer to continue *and delay ruling on Plaintiff's motion for preliminary approval of partial class settlement with PSG, UNOPPOSED* 629 (Williams, Christopher) (Entered: 10/26/2022) |
| 10/27/2022 | 631 | MINUTE entry before the Honorable John J. Tharp, Jr:The Court grants plaintiff's unopposed motion to delay ruling on plaintiff's motion for preliminary approval of partial settlement with Personnel Staffing Group 629 . The parties are to file the amended agreement with the Court once it is executed. Mailed notice (air, ) (Entered: 10/27/2022) |
| 11/09/2022 | 632 | NOTICE by James Zollicoffer *PLAINTIFF'S NOTICE OF FILING OF THE AMENDED PARTIAL SETTLEMENT AGREEMENT WITH PSG, ONLY* (Attachments: # 1 Exhibit, # 2 Exhibit)(Srinivasan, Harini) (Entered: 11/09/2022) |
| 11/30/2022 | 633 | MOTION by Plaintiff James Zollicoffer FOR PRELIMINARY APPROVAL OF THE PARTIAL CLASS ACTION SETTLEMENT AGREEMENT WITH PSG OR, IN THE ALTERNATIVE, TO APPEAR TO UPDATE THE COURT ON THE STATUS OF SETTLEMENT IN RELATED GOLD STANDARD BAKING, INC. MATTER AND POTENTIAL INTERCONNECTION WITH PARTIAL CLASS SETTLEMENT IN THIS MATTER (Williams, Christopher) (Entered: 11/30/2022) |
| 11/30/2022 | 634 | NOTICE by James Zollicoffer re MOTION by Plaintiff James Zollicoffer FOR PRELIMINARY APPROVAL OF THE PARTIAL CLASS ACTION SETTLEMENT AGREEMENT WITH PSG OR, IN THE ALTERNATIVE, TO APPEAR TO UPDATE THE COURT ON THE STATUS OF SETTLEMENT IN RELATED GOLD STANDARD BAKING, INC. MATTER AND P 633 (Williams, Christopher) (Entered: 11/30/2022) |
| 12/01/2022 | 635 | MINUTE entry before the Honorable John J. Tharp, Jr:A telephone status hearing on plaintiff's motion for preliminary approval of the class action settlement 633 will be held on 12/7/2022 at 9:30 a.m. Directions for counsel and the parties for participating in the telephonic hearing will be provided by email prior to the hearing. Counsel are instructed to use those directions, which require logging into the call via a web site. Members of the public and media who wish to listen to this hearing may call in to the hearing by dialing 877−848−7030 and, upon prompting, entering the access code: 5784864. Persons granted remote access to proceedings are reminded that this is a court proceeding and should be treated as such; phones should be muted at all times unless you are authorized to participate in the hearing. In addition, the general prohibition against photographing, recording, and rebroadcasting of court proceedings applies. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 12/01/2022) |
| 12/07/2022 | 636 | MINUTE entry before the Honorable John J. Tharp, Jr:Telephone status hearing held. For reasons stated on the record, the Court grants Plaintiff James Zollicoffer's motion for preliminary approval of the class action settlement with PSG 633 611 . Final Approval hearing will be held on Friday, April 7, 2023 at 2:00 p.m. (CDT). Enter Order. Mailed notice (air, ) (Entered: 12/07/2022) |
| 12/07/2022 | 637 | PRELIMINARY Approval Order of Partial Settlement With PSG Signed by the Honorable John J. Tharp, Jr on 12/7/2022. (Attachments: # 1 Exhibit One)Mailed notice (air, ) (Entered: 12/07/2022) |
| 12/29/2022 | 638 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement |

| | | |
|---|---|---|
| | | their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 02/21/2023 | 639 | MINUTE entry before the Honorable John J. Tharp, Jr: For the reasons set forth in the accompanying Memorandum Opinion and Order, the Court denies defendants' motions to strike Dr. Bendick's declaration and testimony 568 569 and grants plaintiffs' motion for class certification 544 . A telephone status hearing will be held on 3/7/2023 at 9:15 a.m. For instructions regarding participation in, or access to, the telephone hearing, see the standing order on telephone hearings on Judge Tharp's web page (https://www.ilnd.uscourts.gov/judge−info.aspx?79eF+7uiX7ewBj/ITKrjoA==). Mailed notice (air, ) (Entered: 02/21/2023) |
| 02/21/2023 | 640 | MEMORANDUM Opinion and Order Signed by the Honorable John J. Tharp, Jr on 2/21/2023. Mailed notice(air, ) (Entered: 02/21/2023) |
| 02/22/2023 | 641 | MOTION by Plaintiffs Joe Eagle, Evan Franklin, Michael Keys, James Zollicoffer to amend/correct memorandum opinion and order 640 (Unopposed) (Srinivasan, Harini) (Entered: 02/22/2023) |
| 02/23/2023 | 642 | MINUTE entry before the Honorable John J. Tharp, Jr:The plaintiffs' unopposed motion to correct a typographic error in the Court's Memorandum Opinion and Order 641 is granted. Enter Amended Memorandum Opinion and Order. Mailed notice (air, ) (Entered: 02/23/2023) |
| 02/23/2023 | 643 | AMENDED Memorandum Opinion and Order Signed by the Honorable John J. Tharp, Jr on 2/23/2023. Mailed notice(air, ) (Entered: 02/23/2023) |
| 03/06/2023 | 644 | ATTORNEY Appearance for Defendants Vee Pak, LLC, Vee−Pak, Inc., by Jean Morrow Edmonds (Edmonds, Jean) (Entered: 03/06/2023) |
| 03/07/2023 | 645 | MINUTE entry before the Honorable John J. Tharp, Jr: Upon the Court's own motion, the telephone status hearing scheduled for 3/7/2023 is reset for 3/21/23 at 9:15 a.m. No hearing will be heard on today. For instructions regarding participation in, or access to, the telephone hearing, see the standing order on telephone hearings on Judge Tharp's web page (https://www.ilnd.uscourts.gov/judge−info.aspx?79eF+7uiX7ewBj/ITKrjoA==). Mailed notice (air, ) (Entered: 03/07/2023) |